1
2
3
4
5
6
7
8

Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1901 S. Bascom Avenue, Suite 350
Campbell, CA 95008
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com

(Co-counsel listed on signature page)

*Attorneys for Plaintiff*

E-filing

FILED

MAR 2 9 2012

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

ADR

DMR

9

## IN THE UNITED STATES DISTRICT COURT

10

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

## OAKLAND DIVISION

12
13
14
15
16
17
18
19

MARKUS WILSON, individually and on
behalf of all others similarly situated,

          Plaintiff,

v.

FRITO-LAY NORTH AMERICA, INC.
and PEPSICO, INC.,

          Defendants.

Case No. **C12-01586**

**CLASS ACTION AND REPRESENTATIVE ACTION**

**COMPLAINT FOR DAMAGES, EQUITABLE AND INJUNCTIVE RELIEF**

**JURY TRIAL DEMANDED**

20
21
22
23
24
25
26
27
28

          Plaintiff, through his undersigned attorneys, brings this lawsuit against Defendants as to his own acts upon personal knowledge, and as to all other matters upon information and belief. In order to remedy the harm arising from Defendants' illegal conduct, which has resulted in unjust profits, Plaintiff brings this action on behalf of a class of California consumers who, within the last fours years, purchased Defendants' potato chips labeled "0 grams Trans Fat" but which contained more than 13 grams of fat per 50 grams (referred to herein as "Misbranded Food Products").

*Class Action Complaint*

**INTRODUCTION**

1.      Every day, millions of Americans purchase and consume packaged foods. Identical federal and California laws require truthful, accurate information on the labels of packaged foods. This case is about companies that flout those laws. The law is clear: misbranded food cannot legally be manufactured, held, advertised, distributed or sold. Misbranded food is worthless as a matter of law, and purchasers of misbranded food are entitled to a refund of their purchase price.

2.      Defendant Frito-Lay North America, Inc. ("Frito-Lay") is a wholly owned subsidiary of Defendant PepsiCo, Inc. ("PepsiCo"). Defendants manufacture, market and sell a variety of "snack" foods, including Misbranded Food Products. Frito-Lay is a business unit within Pepsi Co, and is a self-described market leader in the snack food industry. Historically, snack foods have not been viewed as being a form of health food but as consumer preferences have begun to favor healthier options, Defendants have chosen to implement a health and wellness strategy to reposition their products as a healthy option. In furtherance of their health and wellness strategy Defendants claim that "Frito-Lay continues to help meet consumers' ever-changing snack needs, most notably in the areas of weight management and positive nutrition, which along with heart health, comprise our focus in well-being." As part of this health and wellness strategy Defendants make a number of claims about their products.

3.      Defendants' reason for doing so was driven by their pecuniary interests. As stated by Defendant Frito-Lay's parent company, Defendant PepsiCo, in the Risk Factors section of the most recent annual report it filed with the S.E.C.:

> We are a consumer products company operating in highly competitive categories and rely on continued demand for our products. To generate revenues and profits, we must sell products that appeal to our customers and to consumers. Any significant changes in consumer preferences or any inability on our part to anticipate or react to such changes could result in reduced demand for our products and erosion of our competitive and financial position. Our success depends on: our ability to anticipate and respond to shifts in consumer trends, including increased demand for products that meet the needs of consumers who are increasingly concerned with health and wellness.

1    4.    For example, Defendants have made the following claims in connection with their

2 potato chips:

3        Lay's® potato chips are prepared with healthier oils, which are 85% unsaturated,
4        making it a source of healthier mono- and polyunsaturated fats.

5        Frito-Lay's products start with simple ingredients: potatoes or corn, healthier oils,
6        salt and sometimes seasoning are added for great taste.

7        All of Frito-Lay's snack chips contain 0 grams Trans Fat, are low in saturated fat
8        and cholesterol-free.

9        You might be surprised at how much good stuff goes into your favorite snack.
10       Good stuff like potatoes, which naturally contain vitamin C and essential
        minerals. Or corn, one of the world's most popular grains, packed with Thiamin,
11       vitamin B6, and Phosphorous – all necessary for healthy bones, teeth, nerves and
        muscles.
12

13       And it's not just the obvious ingredients. Our all-natural sunflower, canola, corn
        and soybean oils are considered to be healthier oils by the FDA because they
14       contain good polyunsaturated and monounsaturated fats, which help lower total
        and LDL "bad" cholesterol and maintain HDL "good" cholesterol levels. They
15       also contain <20% of the bad saturated fat, which raises LDL, cholesterol and 0g
        of trans fat. Even salt, when eaten in moderation as part of a balanced diet,
16       provides sodium which is essential for the body.

17       You can think of the three different types of fats as the Good, the Bad and the
        Ugly. Good fats are unsaturated - monounsaturated and polyunsaturated fats.
18       You'll find high levels of these good fats in nuts, fish and vegetable oils such as
        corn, soybean, canola, and sunflower oils to name a few. They've been shown to
19       reduce levels of LDL (bad) cholesterol, and maintain HDL (good) cholesterol.
        Frito-Lay snack chips and nuts contain mostly good fats.
20

21       Snacking is an important part of a healthy diet, whether you want to lose weight,
        sustain energy or simply live a better lifestyle.
22

23       Evidence suggests that snacking is inversely related to body weight and may
        promote a healthier diet. Snacks may benefit special populations including people
24       with diabetes, children and adolescents, older adults, and pregnant women.

25     5.    Defendants recognize that health claims drive food sales, and actively promote the

26 purported health benefits of their Misbranded Food Products, notwithstanding the fact that such

27 promotion violates California and federal law. For example, Defendants tout the healthiness of

28 Lay's Classic Potato Chips, as follows:

*Class Action Complaint*



6. If a manufacturer is going to make a claim on a food label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled. As described more fully below, Defendants have made, and continue to make, false and deceptive claims in violation of federal and California laws that govern the types of representations that can be made on food labels. These laws recognize that reasonable consumers are likely to choose products claiming to have a health or nutritional benefit over otherwise similar food products that do not claim such benefits. More importantly, these laws recognize that the failure to disclose the presence of risk-increasing nutrients is deceptive because it conveys to consumers the net impression that a food makes only positive contributions to a diet,

1    or does not contain any nutrients at levels that raise the risk of diet-related disease or health-

2    related condition.

3         7.      Identical federal and California laws regulate the content of labels on packaged

4    food. The requirements of the federal Food Drug & Cosmetic Act ("FDCA") were adopted by

5    the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law").

6    California Health & Safety Code § 109875, *et seq*. Under FDCA section 403(a), food is

7    "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain

8    certain information on its label or its labeling. 21 U.S.C. § 343(a).

9         8.      Under the FDCA, the term "false" has its usual meaning of "untruthful," while the

10    term "misleading" is a term of art. Misbranding reaches not only false claims, but also those

11    claims that might be technically true, but still misleading. If any one representation in the

12    labeling is misleading, the entire food is misbranded, nor can any other statement in the labeling

13    cure a misleading statement. "Misleading" is judged in reference to "the ignorant, the unthinking

14    and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-*

15    *Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove

16    that anyone was actually misled.

17         9.      In promoting the health benefits of their Misbranded Food Products, Defendants

18    have adopted "Responsible Marketing and Advertising" policies. Defendants claim to understand

19    the importance of communicating responsibly about their products. Nevertheless, Defendants

20    have made, and continue to make, false and deceptive claims on their Misbranded Food Products

21    in violation of federal and California laws that govern the types of representations that can be

22    made on food labels. In particular, in making their improper "0 grams Trans Fat" claims on their

23    Misbranded Food Products, Defendants have violated nutrient content labeling regulations

24    mandated by federal and California law which require a disclosure of nutrients (fat, saturated fat,

25    cholesterol, and sodium) present in a food at a level that the FDA has concluded increases the risk

26    of diet-related disease or health-related condition, required whenever a nutrient content claim is

27    made.

28

10.     Defendants have made, and continue to make, improper nutrient content claims on food labels of their Misbranded Food Products that are prohibited by federal and California law and which render these products misbranded.  Under federal and California law, Defendants' Misbranded Food Products cannot legally be manufactured, advertised, distributed, held or sold. Defendants' false and misleading labeling practices stem from their global marketing strategy. Thus, the violations and misrepresentations are similar across product labels and product lines.

11.     Defendants' violations of law are numerous and include: (1) the illegal advertising, marketing, distribution, delivery and sale of misbranded Defendants' Misbranded Food Products to consumers in California;  (2) the failure to properly disclose the high levels of fat in their Misbranded Food Products on the Misbranded Food Products' packaging and labeling as required by law; and  (3) the failure to include statements on the Misbranded Food Products packaging and labeling that are mandated by law.

**PARTIES**

12.     Plaintiff Markus Wilson is a resident of Santa Rosa, California who purchased Defendants' Misbranded Food Products, including Lay's Classic Potato Chips, in California during the four (4) years prior to the filing of this Complaint (the "Class Period").  Attached hereto as Exhibit 1 are copies of photographs of package labels on products purchased by Plaintiff.

13.     Defendant Frito-Lay North America, Inc. is a Texas corporation with its principle place of business at 7701 Legacy Drive, Plano, Texas.

14.     Defendant PepsiCo, Inc. is a North Carolina corporation with its principal place of business at 700 Anderson Hill Road, Purchase, New York.  Defendants are leading producers of retail food products, including Misbranded Food Products. They sell their food products to consumers through grocery and other retail stores throughout California.

**JURISDICTION AND VENUE**

14.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which:  (1) there are over 100 members in the proposed class;

1  (2) members of the proposed class have a different citizenship from Defendants; and (3) the

2  claims of the proposed class members exceed $5,000,000 in the aggregate.

3      15.    The Court has jurisdiction over the federal claim alleged herein pursuant to 28

4  U.S.C. § 1331, because it arises under the laws of the United States.

5      16.    The Court has jurisdiction over the California claims alleged herein pursuant to 28

6  U.S.C. § 1367, because they form part of the same case or controversy under Article III of the

7  United States Constitution.

8      17.    Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to

9  28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is

10  between citizens of different states.

11      18.    The Court has personal jurisdiction over Defendants because a substantial portion

12  of the wrongdoing alleged in this Complaint occurred in California, Defendants are authorized to

13  do business in California, have sufficient minimum contacts with California, and otherwise

14  intentionally avail themselves of the markets in California through the promotion, marketing and

15  sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible

16  under traditional notions of fair play and substantial justice.

17      19.    Because a substantial part of the events or omissions giving rise to these claims

18  occurred in this District and because the Court has personal jurisdiction over Defendants, venue is

19  proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

20                          **FACTUAL ALLEGATIONS**

21  A.   **Identical California And Federal Laws Regulate Food Labeling**

22      20.    Food manufacturers are required to comply with identical federal and state laws

23  and regulations that govern the labeling of food products.  First and foremost among these is the

24  Federal Food, Drug and Cosmetics Act ("FDCA") and its labeling regulations, including those set

25  forth in 21 C.F.R. § 101.

26      21.    Pursuant to the Sherman Law, California has expressly adopted the federal

27  labeling requirements as its own and indicated that "[a]ll food labeling regulations and any

28  amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993,

1 or adopted on or after that date shall be the food regulations of this state." California Health &

2 Safety Code § 110100.

3  22. In addition to its blanket adoption of federal labeling requirements, California has

4 also enacted a number of laws and regulations that adopt and incorporate specific enumerated

5 federal food laws and regulations. For example, food products are misbranded under California

6 Health & Safety Code § 110660 if their labeling is false and misleading in one or more

7 particulars; are misbranded under California Health & Safety Code § 110665 if their labeling fails

8 to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and

9 regulations adopted thereto; are misbranded under California Health & Safety Code § 110670 if

10 their labeling fails to conform with the requirements for nutrient content and health claims set

11 forth in 21 U.S.C. § 343(r) and regulations adopted thereto; are misbranded under California

12 Health & Safety Code § 110705 if words, statements and other information required by the

13 Sherman Law to appear on their labeling are either missing or not sufficiently conspicuous; are

14 misbranded under California Health & Safety Code § 110735 if they are represented as having

15 special dietary uses but fail to bear labeling that adequately informs consumers of their value for

16 that use; and are misbranded under California Health & Safety Code § 110740 if they contain

17 artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose

18 that fact on their labeling.

19 **B.** **Defendants' Food Products Are Misbranded**

20  23. Pursuant to Section 403 of the FDCA, a claim that characterizes the level of a

21 nutrient in a food is a "nutrient content claim" that must be made in accordance with the

22 regulations that authorize the use of such claims. 21 U.S.C. § 343(r)(1)(A). California expressly

23 adopted the requirements of 21 U.S.C. § 343(r) in § 110670 of the Sherman Law.

24  24. Nutrient content claims are claims about specific nutrients contained in a product.

25 They are typically made on the front of packaging in a font large enough to be read by the

26 average consumer. Because these claims are relied upon by consumers when making purchasing

27 decisions, the regulations govern what claims can be made in order to prevent misleading claims.

28

25.     Section 403(r)(1)(A) of the FDCA governs the use of expressed and implied nutrient content claims on labels of food products that are intended for sale for human consumption. *See* 21 C.F.R. § 101.13.

26.     21 C.F.R. § 101.13 provides the general requirements for nutrient content claims, which California has expressly adopted.  *See* California Health & Safety Code § 110100.  21 C.F.R. § 101.13 requires that manufacturers include certain disclosures when a nutrient claim is made and, at the same time, the product contains unhealthy components, such as fat, saturated fat, cholesterol and sodium at levels that the FDA has concluded increases the risk of diet-related disease or health related condition.  It also sets forth the manner in which that disclosure must be made, as follows:

> (4)(i) The disclosure statement "See nutrition information for ___ content" shall be in easily legible boldface print or type, in distinct contrast to other printed or graphic matter, and in a size no less than that required by §101.105(i) for the net quantity of contents statement, except where the size of the claim is less than two times the required size of the net quantity of contents statement, in which case the disclosure statement shall be no less than one-half the size of the claim but no smaller than one-sixteenth of an inch, unless the package complies with §101.2(c)(2), in which case the disclosure statement may be in type of not less than one thirty-second of an inch.

> (ii) The disclosure statement shall be immediately adjacent to the nutrient content claim and may have no intervening material other than, if applicable, other information in the statement of identity or any other information that is required to be presented with the claim under this section (e.g., see paragraph (j)(2) of this section) or under a regulation in subpart D of this part (e.g., see §§101.54 and 101.62). If the nutrient content claim appears on more than one panel of the label, the disclosure statement shall be adjacent to the claim on each panel except for the panel that bears the nutrition information where it may be omitted.

27.     An "expressed nutrient content claim" is defined as any direct statement about the level (or range) of a nutrient in the food (*e.g.*, "low sodium" or "contains 100 calories"). *See* 21 C.F.R. § 101.13(b)(1).

28.     An "implied nutrient content claim" is defined as any claim that: (i) describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (*e.g.*, "high in oat bran"); or (ii) suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an

1  explicit claim or statement about a nutrient (*e.g.*, "healthy, contains 3 grams (g) of fat").   21

2  C.F.R. § 101.13(b)(2)(i-ii).

3  **C.    Defendants Make Improper Nutrient Content Claims**

4          29.    To appeal to consumer preferences, Defendants have repeatedly made improper

5  nutrient content claims on products containing disqualifying levels of fat, saturated fat,

6  cholesterol or sodium.   These nutrient content claims were improper because they have failed to

7  include disclosure statements required by law that are designed to inform consumers of the

8  inherently unhealthy nature of those products in violation of 21 C.F.R. § 101.13(h), which has

9  been incorporated in California's Sherman Law.

10         30.    21 C.F.R. § 101.13 (h)(l) provides that:

11
         If a food … contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams
12       (mg) of cholesterol, or 480 mg of sodium per reference amount customarily
         consumed, per labeled serving, or, for a food with a reference amount customarily
13       consumed of 30 g or less … per 50 g … then that food must bear a statement
         disclosing that the nutrient exceeding the specified level is present in the food as
14       follows: "See nutrition information for __ content" with the blank filled in with
         the identity of the nutrient exceeding the specified level, e.g., "See nutrition
15       information for fat content."

16         31.    Defendants repeatedly violate this provision. Defendants' Misbranded Food

17  Products' packaging prominently makes "0 grams Trans Fat" claims despite disqualifying levels

18  of fat that far exceed the 13 gram disclosure threshold.  Moreover, some of the Misbranded Food

19  Products' packaging bearing the improper "0 grams Trans Fat" claim not only fails to bear the

20  mandated warning about total fat, but also bears a statement telling consumers to "see nutrition

21  facts for saturated fat info," thus misdirecting consumers to a nutrient in which the product is low,

22  while failing to draw their attention to the harmful levels of the nutrient (total fat) they are

23  mandated by law to disclose.

24         32.    Pursuant to 21 C.F.R.  § 101.13(h), Defendants are prohibited from making the

25  unqualified nutrient claims of "0 grams Trans Fat" on their food products if their products contain

26  fat in excess of 13 grams, saturated fat in excess of 4 grams, cholesterol in excess of 60

27  milligrams, or sodium in excess of 480mg per 50 grams, unless the product also displays a

28  disclosure statement that informs consumers of the product's fat, saturated fat and sodium levels.

33.     These regulations are intended to ensure that consumers are not misled to believe that a product that claims, for instance, to be low in trans fat, but actually has other unhealthy fat levels, is a healthy choice, because of the lack of trans fats.

34.     Nevertheless, Defendants' product labels state that the product contains "0 grams Trans Fat" without such a disclosure even though their Misbranded Food Products contain fat in excess of 13 grams.

35.     In addition to failing to make mandated disclosures informing consumers that their Misbranded Food Products contained unhealthy components, such as fat, saturated fat, cholesterol and sodium at levels that the FDA has concluded increases the risk of diet-related disease or health-related condition, the Defendants also disseminated materials designed to convince consumers that the unhealthy levels of fat in their products were not a problem, notwithstanding the FDA position that such high levels of fat were unhealthy and increased the risk of diet-related disease or health-related condition. Defendants claimed their Misbranded Food Products contained "mostly good fats" and were low in "bad fats." Similarly, Defendants claimed that, far from being a problem, high levels of fat could actually play a role in a healthy diet, stating:

**The Role of Fat in a Healthy Diet**

- Fat has gotten a bad reputation over the last few decades due to a misconception that all types of fat have a negative impact on health, such as increasing the risk for chronic conditions like heart disease. Now scientists are switching the focus from total fat to type of fat because type of fat may have the greatest impact on health. Research in this area has prompted government agencies and health organizations to revise dietary recommendations for fat intake to emphasize the quality of fat in the diet rather than the quantity of fat.

36.     Based on the fat, saturated fat, cholesterol and sodium content of Defendants' products, pursuant to federal and California law, Defendants must include a warning statement adjacent to the trans fat nutrient claim that informs consumers of the high levels of fat, saturated fat, cholesterol or sodium.   No such disclosure statement currently exists on Defendants' Misbranded Food Products.  Therefore, they are misbranded as a matter of federal and California law and cannot be sold because they are legally worthless.

37.     In October 2009, the FDA issued a Guidance For Industry: Letter regarding Point Of Purchase Food Labeling ("2009 FOP Guidance"), to address its concerns about front of package labels. The 2009 FOP Guidance advised the food industry: FDA's research has found that with FOP labeling, people are less likely to check the Nutrition Facts label on the information panel of foods (usually, the back or side of the package). It is thus essential that both the criteria and symbols used in front-of-package and shelf-labeling systems be nutritionally sound, well-designed to help consumers make informed and healthy food choices, and not be false or misleading. The agency is currently analyzing FOP labels that appear to be misleading.  The agency is also looking for symbols that either expressly or by implication are nutrient content claims. We are assessing the criteria established by food manufacturers for such symbols and comparing them to our regulatory criteria.

> It is important to note that nutrition-related FOP and shelf labeling, while currently voluntary, is subject to the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. Therefore, FOP and shelf labeling that is used in a manner that is false or misleading misbrands the products it accompanies. Similarly, a food that bears FOP or shelf labeling with a nutrient content claim that does not comply with the regulatory criteria for the claim as defined in Title 21 Code of Federal Regulations (CFR) 101.13 and Subpart D of Part 101 is misbranded. We will consider enforcement actions against clear violations of these established labeling requirements. . .

> … Accurate food labeling information can assist consumers in making healthy nutritional choices. FDA intends to monitor and evaluate the various FOP labeling systems and their effect on consumers' food choices and perceptions. FDA recommends that manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA laws and regulations. FDA will proceed with enforcement action against products that bear FOP labeling that are explicit or implied nutrient content claims and that are not consistent with current nutrient content claim requirements. FDA will also proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading.

38.     Despite the issuance of the 2009 FOP Guidance, Defendants did not remove the improper and misleading "0 grams Trans Fat" nutrient content claims from their Misbranded Food Products.

39.     On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA Commissioner] Dr. Hamburg" (hereinafter, "Open Letter").

40.     The Open Letter reiterated the FDA's concern regarding false and misleading labeling by food manufacturers. In pertinent part the letter stated:

> In the early 1990s, the Food and Drug Administration (FDA) and the food industry worked together to create a uniform national system of nutrition labeling, which includes the now-iconic Nutrition Facts panel on most food packages. Our citizens appreciate that effort, and many use this nutrition information to make food choices. Today, ready access to reliable information about the calorie and nutrient content of food is even more important, given the prevalence of obesity and diet-related diseases in the United States. This need is highlighted by the announcement recently by the First Lady of a coordinated national campaign to reduce the incidence of obesity among our citizens, particularly our children.

> With that in mind, I have made improving the scientific accuracy and usefulness of food labeling one of my priorities as Commissioner of Food and Drugs. The latest focus in this area, of course, is on information provided on the principal display panel of food packages and commonly referred to as "front-of-pack" labeling. The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections. …

> As we move forward in those areas, I must note, however, that there is one area in which more progress is needed. As you will recall, we recently expressed concern, in a "Dear Industry" letter, about the number and variety of label claims that may not help consumers distinguish healthy food choices from less healthy ones and, indeed, may be false or misleading.

> At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990. Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.

> To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace. While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices. For example:

- Nutrient content claims that FDA has authorized for use on foods for adults are not permitted on foods for children under two. Such claims are highly inappropriate when they appear on food for infants and toddlers because it is well known that the nutritional needs of the very young are different than those of adults.
- Claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat, and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel.
- Products that claim to treat or mitigate disease are considered to be drugs and must meet the regulatory requirements for drugs, including the requirement to prove that the product is safe and effective for its intended use.
- Misleading "healthy" claims continue to appear on foods that do not meet the long- and well-established definition for use of that term.
- Juice products that mislead consumers into believing they consist entirely of a single juice are still on the market. Despite numerous admonitions from FDA over the years, we continue to see juice blends being inaccurately labeled as single-juice products.

These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole. In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products. That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.

I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling. I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

41.     Notwithstanding the Open Letter, Defendants continue to utilize improper trans fat nutrient content claims, despite the express guidance of the FDA in the Open Letter that "claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat [or sodium, cholesterol or total fat], and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel."

42.     Defendants also continue to ignore the FDA's Guidance for Industry, A Food Labeling Guide, which detailed the FDA's guidance on how to make nutrient content claims about food products that contain "one or more nutrients [like total fat at levels] in the food that may increase the risk of disease or health related condition that is diet related."  Defendants continue to utilize improper trans fat nutrient claims on the labels of their Misbranded Food Products.   As such, Defendants' Misbranded Food Products continue to run afoul of FDA guidance as well as California and federal law.

43.     In addition to its guidance to industry, the FDA has sent warning letters to the industry, including many of Defendants' peer food manufacturers, for the same types of improper 0 grams Trans Fat nutrient content claims described above.  In these letters the FDA indicated that as a result of the same type of 0 gram trans fat claims utilized by Defendants, products were in "violation of the Federal Food, Drug, and Cosmetic Act … and the applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 CFR 101)" and "misbranded within the meaning of section 403 because the product label bears a nutrient content claim but does not meet the requirements to make the claim."

44.     The warning letters were hardly isolated, as the FDA has issued at least nine other warning letters to other companies for the same type of improper 0 grams Trans Fat nutrient content claims at issue in this case.

45.     Despite the FDA's numerous warnings to industry, Defendants have continued to sell products bearing improper "0 grams Trans Fat" nutrient content claims without meeting the requirements to make them.

46.     Plaintiff did not know, and had no reason to know, that Defendants' Misbranded Food Products were misbranded, and bore nutrient claims despite failing to meet the requirements to make those nutrient claims. Plaintiff was equally unaware that Defendants' Misbranded Food Products contained one or more nutrients like total fat at levels in the food that, according to the FDA, "may increase the risk of disease or health related condition that is diet related."

**D.    Defendants Have Violated California Law**

47.    Defendants have violated California Health & Safety Code § 110390 which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

48.    Defendants have violated California Health & Safety Code § 110395 which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

49.    Defendants have violated California Health & Safety Code §§ 110398 and 110400 which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

50.    Defendants have violated California Health & Safety Code § 110660 because their labeling is false and misleading in one or more ways, as follows:

a.    Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110665 because their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and the regulations adopted thereto;

b.    Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110670 because their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted thereto; and

c.    Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110705 because words, statements and other information required by the Sherman Law to appear on their labeling either are missing or not sufficiently conspicuous.

51.    Defendants have violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

52.    Defendants' Misbranded Food Products are misbranded under California Health & Safety Code § 110755 because they purport to be or are represented for special dietary uses, and their labels fail to bear such information concerning their vitamin, mineral, and other dietary

- 16 -
*Class Action Complaint*

properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

53.     Defendants have violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

54.     Defendants have violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for deliver any such food.

55.     Defendants have violated the standard set by 21 C.F.R. § 101.13(h), which has been incorporated by reference in the Sherman Law, by failing to include on their product labels the nutritional information required by law.

**E.     Plaintiff Purchased Defendants' Misbranded Food Products**

58.     Plaintiff cares about the nutritional content of food and seeks to maintain a healthy diet.

59.     Plaintiff purchased Defendants' Misbranded Food Products, including Lay's Classic Potato Chips, on occasions during the Class Period.

60.     Plaintiff read the labels on Defendants' Misbranded Food Products, including the "0 grams Trans Fat" nutrient content label, before purchasing them.  Defendants' failure to disclose the presence of risk-increasing nutrients in connection with its "0 grams Trans Fat" nutrient content claim was deceptive because it falsely conveyed to the Plaintiff the net impression that the Misbranded Food Products he bought made only positive contributions to a diet, and did not contain any nutrients at levels that raised the risk of diet-related disease or health- related condition.

61.     Plaintiff relied on Defendants' package labeling including the "0 grams Trans Fat" nutrient content claim, and based and justified the decision to purchase Defendants' products in substantial part on Defendants' package labeling including the "0 grams Trans Fat" nutrient content claim.

62.     At point of sale, Plaintiff did not know, and had no reason to know, that Defendants' products were misbranded as set forth herein, and would not have bought the products had he known the truth about them.

63.     At point of sale, Plaintiff did not know, and had no reason to know, that Defendants' "0 grams Trans Fat" nutrient content claim was improper and unauthorized as set forth herein, and would not have bought the products absent the improper "0 grams Trans Fat" nutrient content claim.

64.     As a result of Defendants improper "0 grams Trans Fat" nutrient content claims, Plaintiff and thousands of others in California purchased the Misbranded Food Products at issue.

65.     Defendants' labeling, advertising and marketing as alleged herein are false and misleading and were designed to increase sales of the products at issue.   Defendants' misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach importance to Defendants' misrepresentations in determining whether to purchase the products at issue.

66.     A reasonable person would also attach importance to whether Defendants' products were legally salable, and capable of legal possession, and to Defendants' representations about these issues in determining whether to purchase the products at issue. Plaintiff would not have purchased Defendants' Misbranded Food Products had he known they were not capable of being legally sold or held.

## CLASS ACTION ALLEGATIONS

67.     Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in California who, within the last four years, purchased Frito-Lay potato chips labeled "0 grams Trans Fat" but which contained more than 13 grams of fat per 50 grams (the "Class").

68.     The following persons are expressly excluded from the Class:  (1) Defendants and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

69.     This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

70.     <u>Numerosity</u>:  Based upon Defendants' publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that joinder of all Class members is impracticable.

71.     <u>Common Questions Predominate</u>:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, just for example:

    a.      Whether Defendants engaged in unlawful, unfair or deceptive business practices by failing to properly package and label their Misbranded Food Products sold to consumers;

    b.      Whether the food products at issue were misbranded as a matter of law;

    c.      Whether Defendants made improper and misleading nutrient content claims with respect to their food products sold to consumers;

    d.      Whether Defendants violated California Bus. & Prof. Code § 17200, *et seq*., California Bus. & Prof. Code § 17500 *et seq*., the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq*., and the Sherman Law;

    e.      Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

    f.      Whether Defendants' unlawful, unfair and/or deceptive practices harmed Plaintiff and the Class; and

    g.      Whether Defendants were unjustly enriched by their deceptive practices.

72.     <u>Typicality</u>:   Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendants' Misbranded Food Products during the Class Period.  Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein

1  irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar

2  injuries arising out of Defendants' conduct in violation of California law. The injuries of each

3  member of the Class were caused directly by Defendants' wrongful conduct. In addition, the

4  factual underpinning of Defendants' misconduct is common to all Class members and represents

5  a common thread of misconduct resulting in injury to all members of the Class. Plaintiff's claims

6  arise from the same practices and course of conduct that give rise to the claims of the Class

7  members and are based on the same legal theories.

8      73.    Adequacy:  Plaintiff will fairly and adequately protect the interests of the Class.

9  Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to

10  the interests of the Class members. Plaintiff has retained highly competent and experienced class

11  action attorneys to represent his interests and those of the members of the Class. Plaintiff and

12  Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate

13  this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class

14  members and will diligently discharge those duties by vigorously seeking the maximum possible

15  recovery for the Class.

16      74.    Superiority:   There is no plain, speedy or adequate remedy other than by

17  maintenance of this class action. The prosecution of individual remedies by members of the

18  Class will tend to establish inconsistent standards of conduct for Defendants and result in the

19  impairment of Class members' rights and the disposition of their interests through actions to

20  which they were not parties. Class action treatment will permit a large number of similarly

21  situated persons to prosecute their common claims in a single forum simultaneously, efficiently

22  and without the unnecessary duplication of effort and expense that numerous individual actions

23  would engender. Further, as the damages suffered by individual members of the Class may be

24  relatively small, the expense and burden of individual litigation would make it difficult or

25  impossible for individual members of the Class to redress the wrongs done to them, while an

26  important public interest will be served by addressing the matter as a class action. Class

27  treatment of common questions of law and fact would also be superior to multiple individual

28

actions or piecemeal litigation in that class treatment will conserve the resources of the Court and the litigants, and will promote consistency and efficiency of adjudication.

75.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

76.     The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

77.     Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### Unlawful Business Acts and Practices

78.     Plaintiff incorporates by reference each allegation set forth above.

79.     Defendants' conduct constitutes unlawful business acts and practices.

80.     Defendants sold Misbranded Food Products in California during the Class Period.

81.     Defendants are corporations and, therefore, each is a "person" within the meaning of the Sherman Law.

82.     Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

83.     Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

84.     Defendants' business practices are unlawful under § 17200, *et seq.* by virtue of Defendants' violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

85.     Defendants sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold, or held legally and which were legally worthless.

86.     As a result of Defendants' illegal business practices, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and to restore to any Class Member any money paid for the Misbranded Food Products.

87.     Defendants' unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiff and the Class.

88.     As a result of Defendants' conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

**SECOND CAUSE OF ACTION**
**Business and Professions Code § 17200, *et seq.***
**<u>Unfair Business Acts and Practices</u>**

89.     Plaintiff incorporates by reference each allegation set forth above.

90.     Defendants' conduct as set forth herein constitutes unfair business acts and practices.

91.     Defendants sold Misbranded Food Products in California during the Class Period.

92.     Plaintiff and members of the Class suffered a substantial injury by virtue of buying Defendants' Misbranded Food Products that they would not have purchased absent Defendants' illegal conduct.

93.     Defendants' deceptive marketing, advertising, packaging and labeling of their Misbranded Food Products and their sale of unsalable misbranded products that were illegal to

- 22 -
*Class Action Complaint*

1   possess was of no benefit to consumers, and the harm to consumers and competition is

2   substantial.

3        94.   Defendants sold Plaintiff and the Class Misbranded Food Products that were not

4   capable of being legally sold or held and that were legally worthless.

5        95.   Plaintiff and the Class who purchased Defendants' Misbranded Food Products had

6   no way of reasonably knowing that the products were misbranded and were not properly

7   marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the

8   injury each of them suffered.

9        96.   The consequences of Defendants' conduct as set forth herein outweigh any

10  justification, motive or reason therefor.  Defendants' conduct is and continues to be immoral,

11  unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and

12  the Class.

13       97.   As a result of Defendants' conduct, Plaintiff and the Class, pursuant to Business

14  and Professions Code § 17203, are entitled to an order enjoining such future conduct by

15  Defendants, and such other orders and judgments which may be necessary to disgorge

16  Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food

17  Products by Plaintiff and the Class.

18                        **THIRD CAUSE OF ACTION**
                  **Business and Professions Code § 17200, *et seq.***
19                **<u>Fraudulent Business Acts and Practices</u>**

20

21       98.   Plaintiff incorporates by reference each allegation set forth above.

22       99.   Defendants' conduct as set forth herein constitutes fraudulent business practices

23  under California Business and Professions Code sections § 17200, *et seq.*

24       100.  Defendants sold Misbranded Food Products in California during the Class Period.

25       101.  Defendants' misleading marketing, advertising, packaging and labeling of the

26  Misbranded Food Products and misrepresentation that the products were salable, capable of

27  possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiff

28

1  and members of the Class were deceived. Defendants have engaged in fraudulent business acts
2  and practices.

3      102. Defendants' fraud and deception caused Plaintiff and the Class to purchase
4  Defendants Misbranded Food Products that they would otherwise not have purchased had they
5  known the true nature of those products.

6      103. Defendants sold Plaintiff and the Class Misbranded Food Products that were not
7  capable of being sold or held legally and that were legally worthless.

8      104. As a result of Defendants' conduct as set forth herein, Plaintiff and the Class,
9  pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future
10 conduct by Defendants, and such other orders and judgments which may be necessary to disgorge
11 Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food
12 Products by Plaintiff and the Class.

13                  **FOURTH CAUSE OF ACTION**
14         **Business and Professions Code § 17500, *et seq.***
           <u>**Misleading and Deceptive Advertising**</u>

15

16     105. Plaintiff incorporates by reference each allegation set forth above.

17     106. Plaintiff asserts this cause of action for violations of California Business and
18 Professions Code § 17500, *et seq.* for misleading and deceptive advertising against Defendants.

19     107. Defendants sold Misbranded Food Products in California during the Class Period.

20     108. Defendants engaged in a scheme of offering Defendants Misbranded Food
21 Products for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging
22 and labeling, and other promotional materials. These materials misrepresented and/or omitted the
23 true contents and nature of Defendants Misbranded Food Products. Defendants' advertisements
24 and inducements were made within California and come within the definition of advertising as
25 contained in Business and Professions Code §17500, *et seq.* in that such product packaging and
26 labeling, and promotional materials were intended as inducements to purchase Defendants'
27 Misbranded Food Products and are statements disseminated by Defendants to Plaintiff and the
28 Class that were intended to reach members of the Class. Defendants knew, or in the exercise of

1  reasonable care should have known, that these statements were misleading and deceptive as set

2  forth herein.

3      109.   In furtherance of their plan and scheme, Defendants prepared and distributed

4  within California and nationwide via product packaging and labeling, and other promotional

5  materials, statements that misleadingly and deceptively represented the composition and the

6  nature of Defendants' Misbranded Food Products. Plaintiff and the Class necessarily and

7  reasonably relied on Defendants' materials, and were the intended targets of such representations.

8      110.   Defendants' conduct in disseminating misleading and deceptive statements in

9  California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable

10  consumers by obfuscating the true composition and nature of Defendants Misbranded Food

11  Products in violation of the "misleading prong" of California Business and Professions Code §

12  17500, et seq.

13      111.   As a result of Defendants' violations of the "misleading prong" of California

14  Business and Professions Code § 17500, et seq., Defendants have been unjustly enriched at the

15  expense of Plaintiff and the Class. Misbranded products cannot be legally sold or held and are

16  legally worthless.

17      112.   Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are

18  entitled to an order enjoining such future conduct by Defendants, and such other orders and

19  judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any

20  money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

21                   **FIFTH CAUSE OF ACTION**

22           **Business and Professions Code § 17500, *et seq.***
                   **<u>Untrue Advertising</u>**

23

24      113.   Plaintiff incorporates by reference each allegation set forth above.

25      114.   Plaintiff asserts this cause of action against Defendants for violations of California

26  Business and Professions Code § 17500, et seq., regarding untrue advertising.

27      115.   Defendants sold Misbranded Food Products in California during the Class Period.

28

116.   Defendants engaged in a scheme of offering Defendants' Misbranded Food Products for sale to Plaintiff and the Class by way of product packaging and labeling, and other promotional materials.   These materials misrepresented and/or omitted the true contents and nature of Defendants' Misbranded Food Products.   Defendants' advertisements and inducements were made in California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendants' Misbranded Food Products, and are statements disseminated by Defendants to Plaintiff and the Class.   Defendants knew, or in the exercise of reasonable care should have known, that these statements were untrue.

117.   In furtherance of their plan and scheme, Defendants prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendants' Misbranded Food Products, and falsely misrepresented the nature of those products.   Plaintiff and the Class were the intended targets of such representations and would reasonably be deceived by Defendants' materials.

118.   Defendants' conduct in disseminating untrue advertising throughout California deceived Plaintiff and members of the Class by obfuscating the contents, nature and quality of Defendants' Misbranded Food Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

119.   As a result of Defendants' violations of the "untrue prong" of California Business and Professions Code § 17500, *et seq.*, Defendants have been unjustly enriched at the expense of Plaintiff and the Class.   Misbranded products cannot be legally sold or held and are legally worthless.

120.   Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendants, and such other orders and judgments which may be necessary to disgorge Defendants' ill-gotten gains and restore any money paid for Defendants' Misbranded Food Products by Plaintiff and the Class.

## SIXTH CAUSE OF ACTION
## Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*

121. Plaintiff incorporates by reference each allegation set forth above.

122. This cause of action is brought pursuant to the CLRA. This cause of action does not currently seek monetary damages and is limited solely to injunctive relief. Plaintiff intends to amend this Complaint to seek damages in accordance with the CLRA after providing Defendants with notice pursuant to Cal. Civ. Code § 1782.

123. At the time of any amendment seeking damages under the CLRA, Plaintiff will demonstrate that the violations of the CLRA by Defendants were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

124. Consequently, Plaintiff and the Class will be entitled to actual and punitive damages against Defendants for their violations of the CLRA. In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

125. Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

126. Defendants sold Misbranded Food Products in California during the Class Period.

127. Plaintiff and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

128. Defendants' Misbranded Food Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

129. By engaging in the conduct set forth herein, Defendants violated and continue to violate Sections 1770(a)(5) of the CLRA, (because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

130.   By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(7) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

131.   By engaging in the conduct set forth herein, Defendants violated and continue to violate Section 1770(a)(9) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they advertise goods with the intent not to sell the goods as advertised.

132.   By engaging in the conduct set forth herein, Defendants have violated and continue to violate Section 1770(a)(16) of the CLRA, because Defendants' conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

133.   Plaintiff requests that the Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If Defendants are not restrained from engaging in these practices in the future, Plaintiff and the Class will continue to suffer harm.

## SEVENTH CAUSE OF ACTION
### Restitution Based on Unjust Enrichment/Quasi-Contract

134.   Plaintiff incorporates by reference each allegation set forth above.

135.   As a result of Defendants' fraudulent and misleading labeling, advertising, marketing and sales of Defendants' Misbranded Food Products Defendants were enriched at the expense of Plaintiff and the Class.

136.   Defendants sold Misbranded Food Products to Plaintiff and the Class that were not capable of being sold or held legally and which were legally worthless.  It would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits they received from Plaintiff and the Class, in light of the fact that the products were not what Defendants purported them to be.  Thus, it would be unjust and inequitable for Defendants to retain the

benefit without restitution to Plaintiff and the Class of all monies paid to Defendants for the products at issue.

137.    As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
## Beverly-Song Act (Cal. Civ. Code § 1790, et seq.)

138.    Plaintiff incorporates by reference each allegation set forth above.

139.    Plaintiff and members of the Class are "buyers" as defined by Cal. Civ. Code § 1791(b).

140.    Defendants are "manufacturers" and "sellers" as defined by Cal. Civ. Code § 1791(j) & (l).

141.    Defendants' food products are "consumables" as defined by Cal. Civ. Code § 1791(d).

142.    Defendants' nutrient and health content claims constitute "express warranties" as defined by Cal. Civ. Code § 1791.2.

143.    Defendants, through their package labels, create express warranties by making the affirmation of fact and promising that their Misbranded Food Products comply with food labeling regulations under federal and California law.

144.    Despite Defendants' express warranties regarding their food products, they do not comply with food labeling regulations under federal and California law.

145.    Defendants breached their express warranties regarding their Misbranded Food Products in violation of Cal. Civ. Code § 1790, et seq.

146.    Defendants sold Plaintiff and members of the Class Defendants' Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless.

147.    As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial pursuant to Cal. Civ. Code § 1794.

148.    Defendants' breaches of warranty were willful, warranting the recovery of civil penalties pursuant to Cal. Civ. Code § 1794.

## NINTH CAUSE OF ACTION
## Magnuson-Moss Act (15 U.S.C. § 2301, *et seq.*)

149.    Plaintiff incorporates by reference each allegation set forth above.

150.    Plaintiff and members of the Class are "consumers" as defined by 15 U.S.C. § 2301(3).

151.    Defendants are "suppliers" and "warrantors" as defined by 15 U.S.C. § 2301(4) & (5).

152.    Defendants' food products are "consumer products" as defined by 15   U.S.C. § 2301(1).

153.    Defendants' nutrient and health content claims constitute "express warranties."

154.    Defendants, through their package labels, create express warranties by making the affirmation of fact and promising that their Misbranded Food Products comply with food labeling regulations under federal and California law.

155.    Despite Defendants' express warranties regarding their food products, they do not comply with food labeling regulations under federal and California law.

156.    Defendants breached their express warranties regarding their Misbranded Food Products in violation of 15 U.S.C. §§ 2301, *et seq.*

157.    Defendants sold Plaintiff and members of the Class Misbranded Food Products that were not capable of being sold or held legally and which were legally worthless.

158.    As a direct and proximate result of Defendants' actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

### JURY DEMAND

Plaintiff hereby demands a trial by jury of his claims.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, prays for judgment against Defendants as follows:

A.    For an order certifying this case as a class action and appointing Plaintiff and his counsel to represent the Class;

B.     For an order awarding, as appropriate, damages, restitution or disgorgement to Plaintiff and the Class for all causes of action other than the CLRA, as Plaintiff does not seek monetary relief under the CLRA, but intends to amend his Complaint to seek such relief;

C.     For an order requiring Defendants to immediately cease and desist from selling their Misbranded Food Products listed in violation of law; enjoining Defendants from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendants to engage in corrective action;

D.     For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

E.     For an order awarding attorneys' fees and costs;

F.     For an order awarding punitive damages;

G.     For an order awarding pre-and post-judgment interest; and

H.     For an order providing such further relief as this Court deems proper.

Dated: March 28, 2012          Respectfully submitted,

*Pierce Gore*

Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1901 S. Bascom Avenue, Suite 350
Campbell, CA 95008
Telephone: (408) 429-6506
Fax: (408) 369-0752
pgore@prattattorneys.com

Jay Nelkin (*Pro Hac Vice Motion to be filed*)
Carol Nelkin (*Pro Hac Vice Motion to be filed*)
Stuart Nelkin (*Pro Hac Vice Motion to be filed*)
NELKIN & NELKIN, P.C.
5417 Chaucer
P.O. Box 25303
Houston, Texas 77005
Telephone: (713) 526-4500
Facsimile: (713) 526-8915
jnelkin@nelkinpc.com
cnelkin@nelkinpc.com
snelkin@nelkinpc.com

Don Barrett (*Pro Hac Vice Motion to be filed*)
David McMullan, Jr. (*Pro Hac Vice Motion to be filed*)
Brian Herrington (*Pro Hac Vice Motion to be filed*)
Katherine B. Riley (*Pro Hac Vice Motion to be filed*)
Barrett Law Group, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095
Telephone: (662) 834-2488
Toll Free: (877) 816-4443
Fax: (662) 834-2628
dbarrett@barrettlawgroup.com
donbarrettpa@yahoo.com
bherrington@barrettlawgroup.com
kbriley@barrettlawgroup.com
kbriphone@yahoo.com
dmcmullan@barrettlawgroup.com

Charles Barrett (*Pro Hac Vice Motion to be filed*)
Charles Barrett, P.C.
6518 Hwy. 100, Suite 210
Nashville, TN 37205
Telephone: (615) 515-3393
Fax: (615) 515-3395
charles@cfbfirm.com

Richard Barrett (*Pro Hac Vice Motion to be filed*)
Law Offices of Richard R. Barrett, PLLC
2086 Old Taylor Road, Suite 1011
Oxford, MS 38655
Telephone: (662) 380-5018
Fax: (866) 430-5459
rrb@rrblawfirm.net

J. Price Coleman (*Pro Hac Vice Motion to be filed*)
Coleman Law Firm
1100 Tyler Avenue, Suite 102
Oxford, MS 38655
Telephone: (662) 236-0047
Fax: (662) 513-0072
colemanlawfirmpa@bellsouth.net

Dewitt M. Lovelace (*Pro Hac Vice Motion to be filed*)
Alex Peet (*Pro Hac Vice Motion to be filed*)
Lovelace Law Firm, P.A.
12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL 32550
Telephone: (850) 837-6020
Fax: (850) 837-4093
dml@lovelacelaw.com

David Shelton (*Pro Hac Vice Motion to be filed*)
Attorney at Law
1223 Jackson Avenue East, Suite 202
Oxford, MS 38655
Telephone: (662) 281-1212
Fax: (662-281-1312
david@davidsheltonpllc.com

Keith M. Fleischman (*Pro Hac Vice Motion to be filed*)
Frank Karam  (*Pro Hac Vice Motion to be filed*)
Ananda  N. Chaudhuri (*Pro Hac Vice Motion to be filed*)
FLEISCHMAN LAW FIRM
565 Fifth Avenue, 7th Floor
New York, New York  10017
Telephone:  212-880-9571
keith@fleischmanlawfirm.com
frank@fkaramlaw.com
achaudhuri@fleischmanlawfirm.com

*Attorneys for Plaintiff*