GIBSON, DUNN & CRUTCHER LLP
ANDREW S. TULUMELLO, SBN 196484
atulumello@gibsondunn.com
1050 Connecticut Avenue, N.W.
Washington, DC  20036
Telephone: 202.955.8500
Facsimile:  202.467.0539

CHRISTOPHER CHORBA, SBN 216692
cchorba@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071
Telephone: 213.229.7000
Facsimile:  213.229.7520

*Attorneys for Defendants Frito-Lay North America, Inc.
and PepsiCo., Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| MARKUS WILSON and DOUG CAMPEN, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>FRITO-LAY NORTH AMERICA, INC. and PEPSICO, INC.,<br><br>                    Defendants. | Case No. C12-01586-SC<br>Assigned to the Honorable Samuel Conti<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>**REQUEST FOR JUDICIAL NOTICE FILED CONCURRENTLY UNDER SEPARATE COVER**<br><br>HEARING**:**<br>Date:          Friday, February 8, 2013<br>Time:         10:00 a.m.<br>Place:         Courtroom 1 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE THAT on Friday, February 8, 2013, at 10:00 a.m., or as soon thereafter as they may be heard by the Honorable Samuel Conti, in Courtroom 1 of this Court, Defendants Frito-Lay North America, Inc. ("Frito-Lay") and PepsiCo, Inc. ("PepsiCo Inc.") (together "Defendants") will and hereby do move this Court pursuant to Rules 8(a), 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing all of the claims contained in the First Amended Complaint for Damages, Equitable and Injunctive Relief (the "FAC").

Defendants bring this motion on grounds that (i) Plaintiffs lack standing to pursue claims relating to products and advertisements that they did not purchase, (ii) Plaintiffs fail to allege sufficient facts to state a claim against Frito-Lay's parent company, PepsiCo, (iii) Plaintiffs fail to state any plausible claim upon which relief may be granted, (iv) Plaintiffs' claims are preempted, and (v) Plaintiffs fails to plead their claims grounded in fraud with the required particularity.   For the reasons set forth in greater detail in the accompanying Memorandum of Points and Authorities, the FAC should be dismissed in its entirety, with prejudice.

This motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Request for Judicial Notice, the Regulatory Appendix, and the Declaration of Jason R. Meltzer filed concurrently herewith, and on such other written and oral arguments as may be presented to the Court.

# TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ........................................................................................... 3

    A.    Allegations in the First Amended Complaint ................................................ 3

    B.    The Frito-Lay Products at Issue ...................................................................... 3

    C.    Procedural History ........................................................................................... 5

    D.    Plaintiffs' Claims For Relief ........................................................................... 5

STANDARDS GOVERNING THIS MOTION ........................................................... 5

ARGUMENT ................................................................................................................... 6

I.    ALL CLAIMS RELATING TO PRODUCTS THAT PLAINTIFFS DID NOT PURCHASE SHOULD BE DISMISSED FOR LACK OF STANDING .............................. 6

II.    ALL CLAIMS AGAINST PEPSICO, INC. SHOULD BE DISMISSED ............................... 7

III.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM ..................................................................................................... 7

    A.    Plaintiffs Fail to Plausibly Allege That Any Reasonable Consumer Is Likely to Be Deceived or Harmed by the Challenged Labeling ................................... 7

    B.    Plaintiffs' Fraud and False Advertising Claims Fail to Meet the Heightened Rule 9(b) Pleading Standard ........................................................................ 19

IV.    PLAINTIFFS' UNJUST ENRICHMENT AND QUASI-CONTRACT CLAIMS FAIL AS A MATTER OF LAW .............................................................................. 21

V.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FEDERAL MAGNUSON-MOSS WARRANTY ACT ("MMWA") .......................................................... 22

VI.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE SONG-BEVERLY CONSUMER WARRANTY ACT .................................................................... 23

VII.    DISMISSAL WITH PREJUDICE IS APPROPRIATE ......................................................... 24

CONCLUSION ............................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Adamson v. Ortho-McNeil Pharms., Inc.,*
    463 F. Supp. 2d 496 (D.N.J. 2006) ........................................................ 21

*Aguiar v. California Sierra Exp., Inc.,*
    No. 2:11-cv-02827, 2012 WL 1593202 (E.D. Cal. May 4, 2012) .............................................. 25

*Ascon Properties, Inc. v. Mobil Oil Co.,*
    866 F. 2d 1149 (9th Cir. 1989) ........................................................ 24

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ........................................................ 2, 5

*Astiana v. Dreyer's Grand Ice Cream, Inc.,*
    No. C-11-2910 (Docket No. 53) (N.D. Cal. July 20, 2012) ........................................................ 23

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................ 5, 6

*Carrea v. Dreyer's Grand Ice Cream, Inc.,* No. C 10–01044, 2011 WL 159380 (N.D. Cal.
    Jan. 10, 2011), *aff'd,* 475 F. App'x 113 (9th Cir. 2012) ........................................ 7, 12, 13

*Collins v. eMachines, Inc.,*
    202 Cal. App. 4th 249 (Ct. App. 2011) ........................................................ 22

*Delacruz v. Cytosport, Inc.,*
    No. C 11–3532, 2012 WL 2563857 (N.D. Cal. June 28, 2012) ................................ 8, 12, 13, 20

*Durell v. Sharp Healthcare,*
    183 Cal. App. 4th 1350 (2010) ........................................................ 21

*Freeman v. The Time, Inc.,*
    68 F.3d 285 (9th Cir. 1995) ........................................................ 18

*Garcia v. Sony Computer Entmt. Am., LLC,*
    859 F. Supp. 2d 1056 (N.D. Cal. May 8, 2012) ........................................................ 8

*Gerlinger v. Amazon.com, Inc.,*
    311 F. Supp. 2d 838 (N.D. Cal. 2004) ........................................................ 22

*Grp. Health Plan, Inc. v. Philip Morris, Inc.,*
    68 F. Supp. 2d 1064 (D. Minn. 1999) ........................................................ 21

*Hairston v. South Beach Beverage Co., Inc.,*
    No. CV 12-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ...................... 8, 18, 19, 23, 24, 25

*In re Apple & AT&T iPad Unlimited Data Plan Litig.,*
    802 F. Supp. 2d 1070 (N.D. Cal. 2011) ........................................................ 20

*In re iPhone Application Litig.,*
    No. 11–MD–02250–LHK, 2012 WL 2126351 (N.D. Cal. June 12, 2012) ................................ 21

*In re Tobacco II Cases,*

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

46 Cal. 4th 298 (Cal. 2009) .................................................................................. 8

*Johns v. Bayer Corp.*, No. 09-cv-1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ........................... 7

*Kanter v. Warner-Lambert Co.*,
   99 Cal. App. 4th 780 (2002) ............................................................................. 23

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................ 2, 6, 19, 20, 21

*Lam v. General Mills*,
   859 F. Supp. 2d 1097 (N.D. Cal. 2012) ...................................................... 6, 13, 15, 18

*Larsen v. Trader Joes*,
   11-cv-05188-SI (N.D. Cal. Jun. 14, 2012) ............................................................. 7

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496, 129 Cal. Rptr. 2d 486 (2003) ................................................... 8

*Littlehale v. The Hain Celestial Group, Inc.*,
   No. C 11-6342 PJH (N.D. Cal. July 2, 2012) .......................................................... 23

*Loreto v. Procter & Gamble Co.*,
   737 F. Supp. 2d 909 (S.D. Ohio 2010) ................................................................. 9

*Mason v. Coca-Cola Co.*,
   774 F. Supp. 2d 699 (D.N.J. 2011) ................................................................. 8, 10

*McKinnis v. Kellogg USA*,
   No. CV 07–2611 ABC (RCx), 2007 WL 4766060 (C.D. Cal. Sept.19, 2007) ............................. 8

*Pantoja v. Countrywide Home Loans, Inc.*,
   640 F. Supp. 2d 1177 (N.D. Cal. 2009) ................................................................ 7

*Pappas v. Naked Juice Co. of Glendora, Inc.*,
   No. LA CV11–08276, 2012 WL 1925598  (C.D. Cal. May 14, 2012) ............................. 8, 10, 13

*Paracor Fin. v. G.E. Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996) ......................................................................... 22

*Polk v. KV Pharm. Co.*,
   No. 4:09–CV–00588, 2011 WL 6257466 (E.D. Mo. Dec. 15, 2011) ....................................... 9

*Red v. Kraft Foods, Inc.*,
   No. 10-1028, ECF No. 258 (C.D. Cal. Oct. 25, 2012) ............................................... 18, 19

*Rheem Mfg. Co. v. United States*,
   371 P.2d 578 (Cal. 1962) ............................................................................. 21

*Rhynes v. Stryker Corp.*,
   No. 10-5619, 2011 WL 2149095 (N.D. Cal. May 31, 2011) ............................................... 22

*Rooney v. Cumberland Packing Corp.*,
   No. 12–CV–0033, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) ........................................... 18

# TABLE OF AUTHORITIES
(Continued)

Page(s)

*Sensible Foods, LLC v. World Gourmet, Inc.*,
 No. 11-2819, 2012 WL 566304 (N.D. Cal. Feb. 21, 2012) ........................................ 25

*Sokoloff v. Town Sports Int'l*,
 6 A.D.3d 185 (N.Y. App. Div. 2004)....................................................................... 21

*Sonora Diamond Corp. v. Super. Ct.*,
 83 Cal. App. 4th 523 (2000) ...................................................................................... 7

*Summers v. Earth Island Institute*,
 555 U.S. 488 (2009)................................................................................................... 6

*Swartz v. KPMG LLP*,
 476 F.3d 756 (9th Cir. 2007)..................................................................................... 6

*Truth in Labeling Campaign v. Shalala*,
 999 F. Supp. 1289 (E.D. Mo. 1998)................................................................. 14, 15

*United States v. Bestfoods*,
 524 U.S. 51 (1998) ..................................................................................................... 7

*Vess v. Ciba-Geigy Corp. USA*,
 317 F.3d 1097 (9th Cir. 2003) .................................................................................. 6

*Werbel ex rel. v. PepsiCo, Inc.*,
 No. 09-04456, 2010 WL 2673860 (N.D. Cal. July 2, 2010)...................................... 8

*Williams v. Gerber*,
 552 F.3d 934 (9th Cir. 2008)............................................................................. 12, 19

**Statutes**

15 U.S.C. § 2301 ............................................................................................................ 3, 5

15 U.S.C. § 2301(6) .......................................................................................................... 22

15 U.S.C. § 2310(d)(1)...................................................................................................... 22

15 U.S.C. § 2310(e) .......................................................................................................... 23

15 U.S.C. § 2311(d) .......................................................................................................... 23

21 U.S.C. § 301 .................................................................................................................. 2

21 U.S.C. § 343-1(a) .......................................................................................................... 2

Cal. Bus. & Prof. Code § 17200 ........................................................................................ 5

Cal. Bus. & Prof. Code § 17500 ........................................................................................ 5

Cal. Civ. Code § 1750 ........................................................................................................ 5

Cal. Civ. Code § 1790 ..................................................................................................... 3, 5

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

Cal. Civ. Code § 1791(a) ................................................................................................. 24

Cal. Civ. Code § 1791(d) ................................................................................................. 24

Cal. Civ. Code § 1791.2 .................................................................................................. 23

**Rules**

Fed. R. Civ. P. 8(a) ..................................................................................................... 2, 6

Fed. R. Civ. P. 9(b) ............................................................................... 1, 2, 6, 19, 20

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 5

**Regulations**

21 C.F.R. § 101.13(h)(1) ................................................................................................. 9

21 C.F.R. § 101.22(h)(5) ......................................................................................... 14, 15

21 C.F.R. § 101.22(h)(7) ............................................................................................... 14

21 C.F.R. § 101.61 ........................................................................................................ 15

21 C.F.R. § 101.61(b)(4) ......................................................................................... 15, 16

21 C.F.R. § 101.74 ........................................................................................................ 15

21 C.F.R. § 102.22 ........................................................................................................ 14

21 C.F.R. § 172.896 ...................................................................................................... 14

21 C.F.R. § 184.1983 .................................................................................................... 14

## STATEMENT OF ISSUES TO BE DECIDED CIVIL L.R. 7-4(A)(3)

1.      ***Standing***.  Whether Plaintiffs lack standing to bring claims relating to Frito-Lay products that Plaintiffs did not purchase.

2.      ***Parent Liability.***  Whether Plaintiffs fail to allege facts sufficient to hold PepsiCo, Inc., liable as the parent company of Frito-Lay North America, Inc.

3.      ***Plausibility (UCL, FAL, CLRA).***  Whether Plaintiffs fail to state a plausible claim for relief under California's consumer protection statutes given the implausible nature of falsity, reliance, and injury associated with Plaintiffs' challenges to Frito-Lay's labeling.

4.      ***Preemption.*** Whether Plaintiffs' state law claims regarding MSG and 0 grams Trans Fat labels are preempted by the federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.* (the "FDCA"), because they purport to impose requirements not identical to the FDA's requirements.

5.      ***Particularity (UCL, FAL, CLRA).***  Whether Plaintiffs have pleaded with the particularity required by Federal Rule of Civil Procedure 9(b) for their claims sounding in fraud.

6.      ***Restitution (Unjust Enrichment/Quasi Contract).*** Whether Plaintiffs' equitable claim for restitution based on unjust enrichment or breach of quasi-contract should be dismissed because California does not recognize an independent claim for restitution or unjust enrichment, Plaintiffs have not pleaded the required elements of a restitution claim based on quasi-contract, and Plaintiffs fail to plead that they lack an adequate remedy at law.

7.      ***Magnusson-Moss Warranty Act.***  Whether Plaintiffs fail to state a plausible claim for relief under the Magnuson-Moss Warranty Act, where the challenged labels are not "written warranties" within the meaning of the statute, and Plaintiffs have not pleaded the required statutory elements.

8.      ***Song-Beverly Consumer Warranty Act.***  Whether Plaintiffs fail to state a plausible claim for relief under the Song-Beverly Warranty Act, where consumables are specifically excluded from the scope of the Act's coverage, and where Plaintiffs have not pleaded the required statutory elements.

## MEMORANDUM OF POINTS AND AUTHORITIES

This case is one of 24 separate food labeling class actions filed by the same plaintiffs' lawyers in the Northern District of California in the last eight months.[1]  Whatever the reason may be for the avalanche of court filings in this District, *this* case purports to identify highly technical infractions of FDA food labeling regulations and then use those *alleged* regulatory violations as a basis for seeking damages and injunctive relief under California's consumer protection statutes.  Specifically, the plaintiffs—two residents of Santa Rosa, California—allege, on behalf of a California class of consumers, that Frito-Lay North America, Inc. ("Frito-Lay") has violated FDA regulations by using labels stating "0 grams Trans Fat," "No MSG," "Low Sodium," "healthy," "made with all natural ingredients," and "other claims" on Frito-Lay snack products.  *See* FAC ¶ 2.  Yet a disciplined reading of the First Amended Complaint ("FAC") demonstrates that the named Plaintiffs purchased only a few Frito-Lay products—and that, ***even as to those products***, they were not deceived and did not suffer any injury as a matter of law because the labels comply with FDA regulations and because any "daylight" between what the labels say, and what the FAC alleges they ***should*** say, could not possibly deceive or injure a reasonable consumer under a common sense application of California law.  Moreover, many of the statements Plaintiffs challenge do not appear *at all* on any of the products.  Plaintiffs' FAC accordingly should be dismissed with prejudice for several independent reasons.

First, Plaintiffs lack standing to assert ***any*** claims relating to products they did not purchase. Plaintiffs purport to bring claims against some unspecified collection of Frito-Lay "snack" foods, but the FAC alleges only that the Plaintiffs purchased five Frito-Lay products.  *See* FAC ¶¶ 16 (Lay's Classic Potato Chips), 17 (Lay's Classic Potato Chips, Lay's Honey Barbecue Potato Chips, Lay's Kettle Cooked Mesquite BBQ Potato Chips, Cheetos Puffs, and Fritos Original Corn Chips).  The same is true of the FAC's challenges to advertising:  Plaintiffs challenge statements they allege to be "advertising," but they did ***not*** identify the specific products being advertised and they did not allege—as required by Rule 9(b)—how, where, or when they saw and relied upon which

---

[1]  Exhibit ("Ex.") A to Defendants' Request for Judicial Notice lists the 24 cases filed by the same consortium of plaintiffs' attorneys in the past few months.

advertisements.   *See* FAC ¶ 43.   Under federal and California law, Plaintiffs lack standing to challenge products they have not purchased and advertisements they have not seen.

Second, Plaintiffs have failed to allege facts establishing that PepsiCo, Inc. ("PepsiCo") is a proper defendant in this case.   No portion of the FAC alleges wrongdoing by PepsiCo, and Plaintiffs have not asserted claims of "alter ego" liability.   The mere fact that PepsiCo is the parent corporation of Frito-Lay is insufficient to make PepsiCo a defendant.   All claims against PepsiCo therefore should be dismissed.

Third, Plaintiffs have failed to plausibly plead injury, reliance, or deception on their core claims as required by Federal Rule of Civil Procedure 8(a).   *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948-49 (2009).   Plaintiffs' "misbranding" claims implausibly depend upon the suspension of common sense and practical wisdom in evaluating federal regulations and determining when reasonable consumers are deceived or harmed by product labeling.   Nor have Plaintiffs pleaded their claims with the particularity required under Rule 9(b).   The FAC alleges a unified course of fraudulent and misleading conduct and is therefore subject to Rule 9(b)'s heightened pleading standard.   *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009).   Plaintiffs, however, failed to plead the required "who, what, where, when, and how" of their purchases, reliance, and injuries.   This is amply demonstrated by Plaintiffs' claims relating to advertisements, which are virtually never specifically identified by name, time, or location.   Accordingly, Plaintiffs' FAC should be dismissed for failure to state a claim.

Fourth, Plaintiffs' claims as to MSG and 0 grams Trans Fat labeling are preempted by the federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.* (the "FDCA").   The FDCA preempts state law-based claims that seek to impose labeling requirements that are not "identical" to what the FDA has mandated.   *See* 21 U.S.C. § 343-1(a) (Regulatory Appendix, Tab 1).   Plaintiffs seek a ruling on MSG and 0 grams Trans Fat labeling that contradicts what FDA regulations require.

Fifth, Plaintiffs' restitution claim fails because Plaintiffs do not allege that they lack an adequate remedy at law, California does not recognize an independent claim for restitution or unjust enrichment, and Plaintiffs have not pleaded the required elements of a quasi-contract claim.

Sixth, Plaintiffs' Magnuson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.*) ("MMWA") claim fails because the challenged labeling does not constitute a written warranty within the meaning of the MMWA, and Plaintiffs have not stated an actionable claim under the statute, as every court to consider a MMWA claim on a food or beverage product has determined.

Seventh, Plaintiffs' Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790 *et seq.*) ("SBA") claim fails because "consumables" are specifically excluded from the SBA's scope. Furthermore, the challenged labels do not constitute "express warranties" under the SBA.

*     *     *

Plaintiffs already have amended their complaint once after Defendants answered.  This is their second bite at the apple.  They have pleaded multiple legal claims layered on a foundation of invalid legal theories and wholly non-specific factual allegations.  The First Amended Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

### A.     Allegations in the First Amended Complaint

Plaintiffs Markus Wilson and Doug Campen ("Plaintiffs") purport to bring claims on behalf of California consumers of Frito-Lay "potato chips and other snack food products" purportedly labeled and/or marketed as: "0 grams Trans Fat"; "No MSG"; "made with all natural ingredients"; "Low Sodium"; and "healthy." *See* FAC ¶¶ 1-2.  The FAC devotes separate sections to challenging "made with all natural ingredient" claims (*see* FAC ¶¶ 41-58); "No MSG" claims (*see* FAC ¶¶ 59-72); "0 grams Trans Fat" claims (*see* FAC ¶¶ 82-99); "Low Sodium" claims (*see* FAC ¶¶ 100-109); and "other" purportedly "Unlawful Nutrient Content Claims" (*see* FAC ¶¶ 110-119).

### B.     The Frito-Lay Products at Issue

The FAC alleges that named plaintiff Markus Wilson purchased one product:  Lay's Classic Potato Chips (*see* FAC ¶ 16).  It also alleges that named plaintiff Doug Campen purchased the following products:  Lay's Classic Potato Chips, Lay's Honey Barbeque Potato Chips, Lay's Kettle Cooked Mesquite BBQ Chips, Cheetos Puffs, and Fritos Original Corn Chips (*see* FAC ¶ 17).  In total, the named plaintiffs purchased five Frito-Lay products.  Both plaintiffs allege that they purchased other "Misbranded Food Products" but do *not* allege what those products might be.  *See id.*

The FAC acknowledges that Frito-Lay sells a "variety" of snack foods.  *See* FAC ¶ 2.

Because the pertinent FDA regulations apply to a product's labeling, it is helpful to demonstrate what those product labels show.  Accordingly, Defendants request that the Court take judicial notice of the packaging for the specific products.  *See* Defendants' Request For Judicial Notice ("RJN").  The product labeling demonstrates that only a few of Plaintiffs' substantive allegations are applicable to the challenged products.

**Lay's Potato Chips: Classic, Honey Barbecue, & Kettle Cooked Mesquite BBQ:**  Certain Lay's potato chips carry statements that appear in the products' "label or labeling" as the FDA defines those terms, including: (1) "0 grams Trans Fat / SEE NUTRITION FACTS FOR SATURATED FAT INFO"; (2) "made with all natural ingredients"; and (3) "No MSG."  RJN, Exs. B-D.  Nothing in the product labels declares that these products are "healthy," low in sodium, or low fat, and nothing suggests that they provide significant levels of essential nutrients.  *See id.*

**Cheetos Puffs:**  This product is a cheese-flavored corn-based snack unrelated to potato chips.  The labeling on some Cheetos Puffs packages carries the statement:  "0 grams Trans Fat / SEE NUTRITION FACTS FOR SATURATED FAT INFO."  The labeling contains no claims regarding MSG, sodium, natural ingredients, low fat, or the presence of healthy nutrients.  *See* RJN, Ex. E.

**Fritos Original Corn Chips:**  This product is a corn chip unrelated to potato chips.  The labeling on some Fritos Original Corn Chips packages includes the phrase: "0 grams Trans Fat / SEE NUTRITION FACTS FOR SATURATED FAT INFO."  Some packages include in the labeling "made with all natural ingredients" and "No MSG" statements.  *See* RJN, Ex. F.  The labeling contains no claims regarding sodium, low fat, or the presence of healthy nutrients.  *See* RJN, Ex. F.

*     *     *

To summarize, the five challenged products include "0 grams Trans Fat / SEE NUTRITION FACTS FOR SATURATED FAT INFO" in their labeling.  Some products include "No MSG" and "made with all natural ingredients" on their labels.  *None* of the products described in the FAC make any claim on the labeling as to "low sodium," "low fat," or the presence of healthy nutrients.

### C.      Procedural History

In the original 37-page complaint (the "Original Complaint"), Plaintiff Markus Wilson alleged that Defendants' potato chip products were misbranded and "legally worthless" because the packaging stated that the chips contained "0 grams Trans Fat" without referring consumers to "Total Fat" content in the Nutrition Facts panel on the back of the package.  ECF No. 1 at 1.  The Original Complaint indicated that Wilson intended to file an amended complaint to add a CLRA claim for damages.  Original Complaint at ¶¶ 122, 123.  PepsiCo and Frito-Lay suggested that Wilson file his amended complaint before they filed a responsive pleading (in order to avoid multiple pleading responses and challenges), but Plaintiff refused.  *See* Decl. of J. Meltzer ¶ 2.  Accordingly, PepsiCo and Frito-Lay answered the Original Complaint.  *See* ECF No. 17.  On August 16, 2012, the FAC was filed (ECF No. 18), adding an additional named Plaintiff and five new categories of labeling and advertising claims relating to numerous other products (both specified and unspecified).  *See* FAC at ¶¶ 16-17, 41-134.

### D.      Plaintiffs' Claims For Relief

Plaintiffs assert nine claims for relief, eight purportedly based on state laws and one on federal law, namely: (i) California's Unfair Competition Law's (Cal. Bus. & Prof. Code § 17200) ("UCL") "unlawful" prong, (ii) the UCL's "unfair" prong, (iii) the UCL's "fraudulent" prong, (iv) deceptive advertising under the False Advertising Law (Cal. Bus. & Prof. Code § 17500) ("FAL"), (v) untrue advertising under the FAL, (vi) the Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq*.) (CLRA), (vii) restitution based on unjust enrichment/quasi-contract, (viii) the Song-Beverly Consumer Warranty Act (Cal. Civ. Code § 1790), and (ix) the Magnuson-Moss Warranty Act (15 U.S.C. § 2301).  FAC at ¶¶ 42-52.

### STANDARDS GOVERNING THIS MOTION

A complaint must be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1948-49 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although the Court must accept factual allegations as true, this tenet is "inapplicable to legal conclusions."  *Id.*  After stripping the "conclusory statements" in the complaint,

the remaining factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (quotations omitted); *see also* Fed. R. Civ. P. 8(a).

All of Plaintiffs' claims are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b) because the FAC is "grounded in fraud." *See Kearns*, 567 F.3d at 1124-25 (9th Cir. 2009). Indeed, Plaintiffs allege that Frito-Lay "knew" and was "aware" that its labeling claims were false, deceptive, and likely to mislead reasonable consumers (*id.* ¶¶ 42, 60, 102, 125, 127), and that Frito-Lay acted with intent. *Id.* ¶¶ 192-198. Rule 9(b) requires that the allegations be "specific enough to give defendants notice of the particular misconduct," including "'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (Rule 9(b) "requires more specificity [than Rule 8,] including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties . . . .'").

## ARGUMENT

## I. ALL CLAIMS RELATING TO PRODUCTS THAT PLAINTIFFS DID NOT PURCHASE SHOULD BE DISMISSED FOR LACK OF STANDING

As a threshold matter, the Court should dismiss for lack of standing all claims with respect to products that Plaintiffs did not purchase. Plaintiffs purport to bring claims on behalf of purchasers of unspecified Frito-Lay products (FAC at ¶ 1; *see also id.* ¶¶ 94, 103-104, 112-112a, 114, 127-28), but the FAC alleges only that Plaintiffs have purchased five products: Lay's Classic Potato Chips (*id.* ¶¶ 16-17), Lay's Honey Barbecue Potato Chips (*id.* ¶¶ 17, 45, 68, 95, 105, 150), Lay's Kettle Cooked Mesquite BBQ (*id.* ¶¶ 17, 45, 68, 95, 105, 150), Cheetos Puffs (*id.* ¶¶ 17, 95, 150), and Fritos Original Corn Chips (*id.* ¶¶ 17, 95, 105, 150). Plaintiffs lack standing to bring claims as to any other products. To satisfy Article III, a plaintiff must demonstrate that he has a "'personal stake . . . so as to warrant *his* invocation of federal-court jurisdiction.'" *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009) (citation omitted). A person who fails to purchase the products on which his claims are based has no such "personal stake" – even if he purchased a similar product made by the same manufacturer. This Court has recently affirmed that principle. *See Lam v. General Mills*, 859 F. Supp. 2d 1097, 1101 (N.D. Cal. 2012) ("The company should not have to guess at which of these

other brands are the subject of this suit"); *see also Larsen v. Trader Joes*, 11-cv-05188-SI (N.D. Cal. Jun. 14, 2012) (dismissing plaintiffs' claims relating to products they did not purchase for lack of Article III standing); *Carrea v. Dreyer's Grand Ice Cream, Inc.*, No. 10-01044-JSW, 2011 WL 159380, at *3 (N.D. Cal. Jan. 10, 2011) (consumer who purchased defendant's Drumstick ice cream product did not have standing to challenge the label on defendant's Dibs products); *Johns v. Bayer Corp.*, No. 09-cv-1935-DMS, 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010) (plaintiff "cannot expand the scope of his claims to include a product he did not purchase or advertisements relating to a product that he did not rely upon").

## II.     ALL CLAIMS AGAINST PEPSICO, INC. SHOULD BE DISMISSED

Similarly, Plaintiffs have alleged no facts establishing that PepsiCo is a proper defendant in this case.  Indeed, PepsiCo is referenced in only three paragraphs: FAC ¶¶ 2, 3, and 19.  None of those paragraphs alleges wrongdoing by PepsiCo.  None of the products at issue mentions PepsiCo (*see* RJN, Exs. B-F), and Plaintiffs have attributed none of the allegedly improper promotional materials challenged in the FAC to PepsiCo.  Nor are there "indirect" claims against PepsiCo. Plaintiffs have not asserted claims of "alter ego" liability and could not reasonably do so in good faith.  *See Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 539 (2000) (noting "[a]lter ego is an extreme remedy, sparingly used").  The mere fact that PepsiCo is Frito-Lay's parent company does not make it liable for Plaintiffs' alleged harm.  *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries."); *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1192 (N.D. Cal. 2009) (dismissing claims against a parent company where the plaintiff alleged only that there was a "financial link" between the parent and subsidiary).  Consequently, all claims against PepsiCo also should be dismissed.

## III.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

### A.     Plaintiffs Fail to Plausibly Allege That Any Reasonable Consumer Is Likely to Be Deceived or Harmed by the Challenged Labeling

To state a claim under the UCL, FAL, or CLRA for false advertising, a plaintiff must "show that members of the public are likely to be deceived" and that the label is such that "it is probable that

a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co*., 105 Cal. App. 4th 496, 508, 129 Cal. Rptr. 2d 486 (2003); *In re Tobacco II Cases*, 46 Cal. 4th 298 (Cal. 2009). In assessing the plausibility of Plaintiffs' allegations, the Court may examine the labels and decide as a matter of law if a reasonable consumer would be misled. *See, e.g*., *Werbel ex rel. v. PepsiCo, Inc*., No. 09-04456, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (dismissing UCL, FAL, and CLRA claims after "review of the product packaging").[2]

Plaintiffs' claims challenge six categories of statements: (1) 0 grams Trans Fat; (2) MSG content; (3) sodium content; (4) "made with all natural ingredients"; (5) various nutrient claims; and (6) various health claims. In each instance, a close review of the applicable FDA requirements and the pertinent Frito-Lay labeling demonstrates that Plaintiffs fail to state a valid claim for relief.

   **1.     0 grams Trans Fat Claims.**   The most straightforward place to begin the analysis of the FAC is the 0 grams Trans Fat claim that initiated this litigation. This claim exemplifies Plaintiffs' attempt to manufacture technical regulatory issues into civil lawsuits. But as several courts have held, "not every regulatory violation amounts to an act of consumer fraud." *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 705 n.4 (D.N.J. 2011) ("It is simply not plausible that consumers would be aware of FDA regulations regarding 'nutrient content' and restrictions on the enhancement of snack foods."); *see also Pappas v. Naked Juice Co. of Glendora, Inc.*, No. LA CV11–08276, 2012 WL 1925598, at *2 (C.D. Cal. May 14, 2012) (holding consumers could not state a claim for relief against a beverage label stating "with other ingredients" when the applicable regulation required the label to read "with added ingredients"); *Delacruz v. Cytosport, Inc.*, No. C 11–3532, 2012 WL 2563857, at *9 (N.D. Cal. June 28, 2012) (holding that actual reliance on the alleged violation is necessary to

---

[2] Though the question of whether a reasonable consumer is likely to be misled is often a question of fact, the issue is not triable if a plaintiff "cannot first identify a plausible misrepresentation." *Garcia v. Sony Computer Entmt. Am., LLC*, 859 F. Supp. 2d 1056, 1066 (N.D. Cal. May 8, 2012); *see also Hairston v. South Beach Beverage Co., Inc.*, No. CV 12-1429, 2012 WL 1893818, at *4-5 (C.D. Cal. May 18, 2012) ("where a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate."); *McKinnis v. Kellogg USA,* No. CV 07–2611 ABC (RCx), 2007 WL 4766060, at *3 (C.D. Cal. Sept.19, 2007) ("If an alleged misrepresentation would not deceive a reasonable consumer ... then any cause of action having deception as an element may be addressed, as a matter of law, on a motion to dismiss.").

state a claim under California law).  These common-sense legal principles control this case.[3]

Plaintiffs contend that Frito-Lay violated FDA labeling regulations by using a 0 grams Trans Fat statement.  In the traditional consumer deception case, one might expect Plaintiffs' claim to be that Frito-Lay used a 0 grams Trans Fat statement and that consumers were deceived because there *are* trans fats in the product.  But that is *not* Plaintiffs' theory:  Plaintiffs do *not* allege that Frito-Lay products contain trans fat.  Nor do they challenge the truth of the 0 grams Trans Fat statement.

Instead, Plaintiffs contend that it is deceptive to use a 0 grams Trans Fat statement on the label *without* the reference statement "see nutrition facts for <u>fat</u> info."  FAC ¶ 87.  *See* 21 C.F.R § 101.13(h)(1) (Regulatory Appendix, Tab 2).  According to Plaintiffs, the claim flows from a regulation directing food companies under certain conditions to include statements referring consumers to the Nutrition Facts panel when they make a 0 grams Trans Fat claim.  *See id.* (Regulatory Appendix, Tab 2).

Here, Plaintiffs admit that Frito-Lay refers consumers to the Nutrition Facts panel.  Plaintiffs *acknowledge* that Frito-Lay's packages say "see Nutrition Facts for <u>saturated fat</u> info."  FAC ¶ 84. Plaintiffs contend, however, that the reference statement should refer to "fat" content instead of "saturated fat" content.  This is a one-word difference.  According to Plaintiffs, this one-word difference is a sufficient basis to render Frito-Lay's products "misbranded" and "legally worthless," and to entitle them to be paid the entire purchase price of every single bag of Lay's Classic Potato chips sold in the state of California over the last four years.  *See* FAC ¶¶ 99, 197, 205, 213, 230.

This is not a viable or plausible claim under California law.  The relevant disclosures, and the Nutrition Facts panel, appear as follows on a representative bag of Lay's Classic Potato Chips:[4]

---

[3]  *See also Polk v. KV Pharm. Co.*, No. 4:09–CV–00588, 2011 WL 6257466, at *5-*6 (E.D. Mo. Dec. 15, 2011) (a technical violation of the FDA's "good manufacturing practices" does not justify a cause of action under California law without an "actual manifestation of a defect" (quotation omitted)); *Loreto v. Procter & Gamble Co.*, 737 F. Supp. 2d 909, 920-21, (S.D. Ohio 2010) ("merely recit[ing] FDA determinations and alleged violations of the FDCA" is insufficient to establish that the statements at issue were false or misleading).

[4]  The labeling of the other relevant products can be found at RJN, Exs. B-F.

---



As the pictures illustrate, the Saturated Fat disclosure is directly below the Total Fat disclosure in the Nutrition Facts panel.  The product's Total Fat content is reflected in bold.  It is simply not plausible to contend that consumers are likely to be deceived or misled as to a product's fat content where they are advised to review the Nutrition Facts panel for more information, *especially* on a theory that consumers would somehow be unable or unwilling to review the <u>Total</u> Fat disclosure one line immediately above and adjacent to the <u>Saturated</u> Fat disclosure.  *See Mason*, 774 F. Supp. 2d at 705 n.4; *Pappas*, 2012 WL 1925598, at *2.

Moreover, Plaintiffs' theory is even more implausible when the regulatory background for the 0 grams Trans Fat label is considered.  *See* "Trans Fat Now Listed With Saturated Fat and

Cholesterol" (Regulatory Appendix, Tab 3).  In 2006, the FDA began to require trans fat disclosures in the Nutrition Facts panel.  According to the FDA, "[i]dentifying saturated fat, *trans fat*, and cholesterol on the food label gives consumers information to make heart-healthy food choices that help them reduce their risk of CHD [coronary heart disease]."  *Id*.  The FDA guidance advises consumers that *not* all fats are the same, and that "Saturated and trans fat raise LDL (or "bad") cholesterol levels in the blood, thereby increasing the risk of heart disease."  *Id.* at 1-2. ("Are All Fats the Same?").  The FDA guidance concludes, "Therefore, it is advisable to choose foods low in saturated fat, *trans* fat, and cholesterol as part of a healthful diet."  *Id*.

Against this backdrop, it is implausible for Plaintiffs to contend that they were harmed or deceived by Frito-Lay labels that referred them to the Nutrition Facts panel for "saturated" fat information as opposed to "total" fat content.  Indeed, the very FDA "Open Letter to Industry" that the FAC quotes over three pages (*see* FAC ¶¶ 33-34) speaks directly to this issue and provides that "claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in <u>saturated fat</u>, and especially so when the claim is <u>not</u> accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel."  *See* "Open Letter to Industry" (Mar. 3, 2010) (Regulatory Appendix, Tab 4) (emphasis added). Here, the challenged Frito-Lay products include a reference statement directing the consumer to the Nutrition Facts panel for information about *saturated* fat—the fat that can raise LDL and increase the risk of heart disease, according to the FDA. And if consumers need "more complete information" about Total Fat on the Nutrition Facts panel, they have been directed to it.[5]

The FAC alleges also that "the FDA has sent warning letters to the industry, including many of Defendants' peer food manufacturers."  FAC ¶ 35.  Notably, the FAC does *not* allege that the FDA has ever sent a warning letter to Frito-Lay or PepsiCo on this issue.  The FDA has never sent a

---

[5]  Notably, Plaintiffs quote the FDA's Open Letter to Industry at paragraph 88.  But rather than quote the letter verbatim, Plaintiffs change the sentence from "claims can be misleading when a product is high in *saturated* fat" to the following:  "claims be misleading when a product is high in saturated fat [or sodium, cholesterol, or total fat.]."  The bracketed language appears nowhere in the *actual* Open Letter to Industry.  Plaintiffs have inserted it.  *See* "Open Letter to Industry" (Tab 4).

warning letter to a food manufacturer making a 0 grams Trans Fat claim that includes a reference statement to the Nutrition Facts panel as far as Frito-Lay can tell.  *See, e.g.*, FDA Warning Letters (Regulatory Appendix, Tab 5).  Instead, the warning letters state that an isolated, stand-alone 0 grams Trans Fat claim on the front of a package can in certain circumstances be misleading.  But that is not the case here.  None of the letters support Plaintiffs' theory; they support Frito-Lay's position that Plaintiffs have failed to plead plausible theories of deception or harm.

Plaintiffs contend that, because they were referred only to Saturated Fat content rather than to the line above it when buying their Lays, Cheetos, and Fritos, they were (somehow) deprived of their ability to buy healthy food products.  *See* FAC ¶ 98.  This claim is foreclosed by precedent.  In *Delacruz*, 2012 WL 2563857, at *10, the district court dismissed claims against a product that made a 0 grams Trans Fat claim and did *not* have a statement referring customers to the Nutrition Facts panel.  The plaintiff alleged that the 0 grams Trans Fat label was deceptive because it "distracts consumers from the product's unhealthy fat and saturated fat content." *Id.* at *8.  The district court rejected that argument because any "alleged distraction" is neither a false statement nor a misrepresentation.  Similarly, in *Carrea*, the court rejected plaintiff's claim that a "0 grams Trans Fat" label is "misleading and deceptive" because it suggests that ice cream is nutritious and healthy. 2011 WL 159380, at *8-9, *aff'd*, 475 F. App'x 113 (9th Cir. 2012); *see also Williams v. Gerber*, 552 F.3d 934, 939–40 (9th Cir. 2008) ("[R]easonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.").

Furthermore, under *Carrea*, Plaintiffs' claim in this respect is also preempted by federal law. Like Plaintiffs here, the *Carrea* plaintiff alleged that the defendant's use of "0 grams Trans Fat" was "deceptive and misleading" and "misbranded" because it did not include an appropriate reference statement, *and* the FDA had issued a warning letter calling the product misbranded.  *See* Second Amended Complaint, *Carrea*, No. C 10–01044 (N.D. Cal. Jan. 10, 2011), ECF No. 33, ¶ 28; *Carrea*, 2011 WL 159380, at *3-4; *see also* Regulatory Appendix, Tab 5.  The district court concluded (and the Ninth Circuit affirmed) that this claim was preempted.  *Carrea*, 2011 WL 159380, at *4 ("[T]he '0g Trans Fat' statement on Defendant's . . . packaging, outside the Nutrition Facts box, is a nutrient

1    content claim subject to the express preemption provision of the NLEA."), *aff'd*, 475 F. App'x 113

2    (9th Cir. 2012).  This Court should conclude the same.

3          Under *Delacruz* and *Carrea*, Plaintiffs' claims must be dismissed.  If a 0 grams Trans Fat

4    disclosure *without* a reference statement does not "distract[] consumers from the product's unhealthy

5    fat and saturated fat content" (*Delacruz*, 2012 WL 2563857, at *8), or convey misleading and

6    deceptive claims about whether a product is healthy (*see Carrea*, 2011 WL 159380, at * 8-9), then an

7    indisputably true 0 grams Trans Fat disclosure that directs consumers to the Nutrition Facts panel for

8    saturated fat content cannot give rise to a claim of deception or injury.  A reasonable consumer will

9    view the trans fat label in coordination with the Nutrition Facts panel and see total and saturated fat

10   content, and thus will not be misled.  Plaintiffs' 0 grams Trans Fat claims are implausible and should

11   be dismissed.  *See Pappas*, 2012 WL 1925598, at *2 (dismissing claim where disclosure stated

12   "100% juice with other ingredients" as opposed to the regulation-required "100% juice with added

13   ingredients" because "the representation would not deceive a reasonable consumer" as a matter of

14   law).  It is also preempted for the same reason that the identical claim in *Carrea* was deemed

15   preempted by the Ninth Circuit.

16         **2.    Claims relating to MSG content.**    Plaintiffs next allege that Frito-Lay's product

17   labels are misleading because the labels state that the products contain "No MSG."  Plaintiffs base

18   their entire MSG challenge on the purchase of two products:  Lay's Honey Barbeque Potato Chips

19   and Lay's Kettle Cooked Mesquite BBQ Potato Chips.  FAC ¶ 68.  Plaintiffs do not raise an MSG

20   challenge to any other identified products.  *See* FAC ¶¶ 59-72.  Moreover, just as with the 0 grams

21   Trans Fat claim, Plaintiffs do <u>not</u> allege that Lay's Honey Barbeque and Lay's Mesquite BBQ chips

22   are falsely labeled because they <u>do</u> contain MSG.  *See* FAC ¶ 68.  Instead, Plaintiffs contend that the

23   products are mislabeled because they contain yeast extract, which is a "source of MSG."  FAC ¶ 68.

24   According to Plaintiffs, the presence of yeast extract renders the "No MSG" claim misleading.  Like

25   the claims regarding 0 grams Trans Fat labels, Plaintiffs' "No MSG" claims are squarely preempted.

26         As this Court knows, plaintiffs may not use state-law suits to impose labeling requirements

27   that are not identical to those imposed by the FDCA.  *See Lam v. General Mills*, 859 F. Supp. 2d

28   1097, 1102 (N.D. Cal. 2012) (noting that the NLEA "expressly preempts state laws addressing

certain subjects that are 'not identical to' various standards set forth by the FDCA, including the labeling requirements . . .").  Federal regulations plainly require a food company to label MSG by its common name when it is present in a product.  *See* 21 C.F.R. § 101.22(h)(5) (Regulatory Appendix, Tab 6).  Federal regulations also require what plaintiffs call the "sources of MSG" to be labeled according to their common names when they are present in a food product, *see, e.g.*, *id.* §§ 101.22(h)(7) (Tab 6) (protein hydrolysates), 184.1983 (Regulatory Appendix, Tab 7) (baker's yeast extract), and make clear that these ingredients are safe for consumption, *see id.* § 172.896 (torula yeast) (Regulatory Appendix, Tab 8).  Where Defendants' products contain monosodium glutamate or yeast extract, the ingredient is clearly identified on the product's ingredient label in accordance with these requirements.  *See* RJN, Exs. B-F.

The FDA acknowledges that yeast extract is <u>not</u> monosodium glutamate.  *See* 21 C.F.R. §§ 101.22(h)(5) (Tab 6), 184.1983 (Tab 7), 102.22 (Tab 9); *see also* FDA, "Food Ingredients and Colors" (Tab 10) (indicating "autolyzed yeast extract" may be listed on a label separately from MSG).  Nevertheless, Plaintiffs suggest that a 1995 FDA pamphlet on a proposed FDA rulemaking effort renders Frito-Lay's "No MSG" labels impermissible.  *See* FAC ¶ 64.  At that time, the FDA considered whether to prohibit a "No MSG" label if a product contained other ingredients that contained a particular compound known as free glutamates.  But the FDA ultimately did <u>not</u> adopt that rule.  <u>The FDA's final rule on MSG disclosure does not require that food labels declare yeast extract as sources of free glutamates or as MSG</u>.  Rather, it merely requires a disclosure if the product contained monosodium glutamate.  *See* 21 C.F.R. § 101.22(h)(5) (Tab 6) ("Any monosodium glutamate used as an ingredient in food shall be declared by its common or usual name, 'monosodium glutamate'").

Indeed, other groups of plaintiffs have sought – unsuccessfully – to challenge the FDA's MSG labeling regulations.  *See Truth in Labeling Campaign v. Shalala*, 999 F. Supp. 1289 (E.D. Mo. 1998) (rejecting plaintiffs' challenge to FDA's failure to require MSG labels where hydrolyzed proteins were added as components of other food products).  In *Shalala*, plaintiffs contended that the FDA's then-current MSG labeling regime was misleading because it did not require all free glutamates to be labeled as MSG—the very position Plaintiffs advance here.  *See* 999 F. Supp. at

1291.   Plaintiffs in *Shalala* had petitioned the FDA to amend its MSG regulations to require disclosure of ingredients containing "free glutamic acid," such as "hydrolyzed protein" and "yeast extract," as "contain[ing] MSG" on product labels.  *See* Compl., Aug. 26, 1995, *Shalala*, No 4:95-cv-01633TCM (E.D. Mo.) (RJN Ex. G), ¶¶ 41, 51.  The FDA refused to act on the petition, and plaintiffs filed a complaint challenging its decision.  *Id.* ¶¶ 52-54.  Surveying the 24-volume administrative record, the court concluded that "there is also evidence in the record that a label requiring that any free glutamate present in a manufactured or processed food be identified as MSG . . . would not be accurate."  *Id.* at 1299.  The court rejected plaintiffs' claims, holding that "the present regulations neither mislead nor misbrand within the meaning of the statutes."  *Id.* at 1300.

Plaintiffs' FAC ultimately is directed at current FDA regulations.  Frito-Lay has complied fully with the regulations now in force, which define MSG to refer to monosodium glutamate, not yeast extract.  *See* 21 C.F.R. § 101.22(h)(5) (Tab 6).  By challenging a "No MSG" label on the ground that other ingredients (such as yeast extract) are "sources" of free glutamates, the Plaintiffs are advancing a position the FDA has not adopted, and which has been rejected upon judicial challenge.  Plaintiffs' claims purport to impose requirements beyond those mandated by the FDA, and, accordingly, are preempted by the FDCA.  *See Lam*, 859 F. Supp. 2d at 1102.

Plaintiffs' claims are also facially implausible, as Plaintiffs do not contend that the products actually <u>do</u> contain MSG, and "yeast extract" is specifically disclosed in the ingredient lists for the products.  *See infra*, pg. 17 (image of Kettle Cooked Mesquite BBQ Potato chips); RJN, Ex. D.  Wholly apart from preemption, no reasonable consumer could be misled by the product packaging.

**3.**     <u>**Claims relating to sodium content.**</u>  Without citing any details, Plaintiffs next allege that Frito-Lay has misled consumers about the sodium content of the challenged products by stating that the products are low in sodium.  *See* FAC ¶¶ 100-109.  But contrary to Plaintiffs' allegations, none of the labeling on any of the products at issue indicates that the products are "low sodium."

A "low sodium" claim is governed by the FDCA and the FDA's implementing regulations codified at 21 C.F.R. §§ 101.13 (Regulatory Appendix, Tab 2), 101.61 (Regulatory Appendix, Tab 11), and 101.74 (Regulatory Appendix, Tab 12).  In particular, § 101.61(b)(4) provides that "'low sodium' may be used on the label or in the labeling of foods" if the sodium content is below a

particular threshold.  The five Frito-Lay products discussed in the FAC – Lay's Classic Potato Chips, Lay's Honey Barbecue Potato Chips, Lay's Kettle Cooked Mesquite BBQ Potato Chips, Cheetos Puffs, and Frito's Original Corn Chips – are *not* described as "low sodium" on any label or labeling. *See* RJN, Exs. B-F.  Accordingly, the "low sodium" claims relating to these products should be dismissed.

Plaintiffs' "low sodium" claim appears to rely entirely on a statement Plaintiffs attribute to Frito-Lay, without specifying its source, medium, or any other identifying information.  *See* FAC ¶ 103 ("Snack chips are actually not as high in sodium as most people think . . .") There is no allegation that this statement about "snack chips" refers to the actual products Plaintiffs purchased. And Plaintiffs did not even allege that this statement appears on the labeling of the products challenged here.  There is simply no dispute that Frito-Lay has complied fully with the requirements of § 101.61(b)(4) by properly listing the products' sodium content.  Plaintiffs' sodium claims accordingly should be dismissed.

**4.    Claims related to nutrient content.**  Plaintiffs next contend that Frito-Lay makes unlawful claims as to the nutrient content of its products.  *See* FAC ¶¶ 110-119.  Without providing any details, Plaintiffs allege that Frito-Lay holds out its products as "contain[ing] mostly good fats," and as a "source" of various nutrients.  *See* FAC ¶¶ 112-112a.  No specific advertisements or websites or labels are identified in the FAC.  *See* FAC ¶¶ 110-119.  Again, none of the products at issue in this litigation makes any of the claims that Plaintiffs challenge on their labels.  Frito-Lay does not label the challenged products as a "good source" of nutrients.  *See* RJN, Exs. B-F. Accordingly, these claims should all be dismissed.

**5.    Claims related to "healthy".**  Plaintiffs next contend that Frito-Lay misused the term "healthy" on its product labels and advertisements.  *See* FAC ¶¶ 120-134.  As is typical of this FAC, Plaintiffs did not allege the specifics of where these allegedly misleading claims appear.  Plaintiffs refer vaguely to "marketing materials" (FAC ¶ 125) and "labeling and website" sources (FAC ¶ 127). But again, they did not refer to any Lay's product or advertisement by name, nor did they allege that the term "healthy" appears on any of the products they purchased.

Plaintiffs' claims as to "healthy" descriptions fail for the same reasons as their "low sodium"

claims.  None of the five products identified in the FAC are labeled as "healthy."  *See* RJN, Exs. B-F.  Accordingly, claims challenging purported "healthy" claims on these products should be dismissed.

**6.**  **Claims Relating to "All Natural" Ingredients.**  Plaintiffs assert that "all natural" claims on Lay's Honey Barbecue and Lay's Kettle Cooked Mesquite BBQ are false and caused the products to be "misbranded" because the products contained purportedly unnatural ingredients, including caramel, maltodextrin, and citric acid.  *See* FAC ¶ 45.  This claim fails for multiple reasons.

As an initial matter, the claim fails for the basic reason that the product packaging correctly states that the products are "made with all natural ingredients":



There is no question that the products' labels are true.  The challenged potato chip products were made with "all natural" ingredients—the primary ingredients are potatoes and vegetable oil (which Plaintiffs do not allege are unnatural).  Indeed, if the labels simply stated "made with all natural

1  potatoes," Plaintiffs concededly would not have a claim.  The statement "made with all natural

2  ingredients" should be treated similarly.

3         It is axiomatic that a "plaintiff's selective interpretation of individual words or phrases from a

4  product's labeling cannot support a CLRA, FAL, or UCL claim."  *Hairston*, 2012 WL 1893818, at

5  *4-5.   Here, Plaintiffs implausibly suggest that a consumer would <u>not</u> see—or ascribe any

6  significance to—the "made with" qualifier in the phrase "made with all natural ingredients."

7  According to the Plaintiffs, consumers who read the labels in this manner would be deceived into

8  believing that there would never be a single non-natural ingredient in a product "made with all

9  natural ingredients."  That is not a fair application of the reasonable consumer test.  *See id*. ("[N]o

10  reasonable consumer would read the 'all natural' language as modifying the 'with vitamins' language

11  and believe that the added vitamins are suppose[d] to be 'all natural vitamins.'"); *see also Red v.*

12  *Kraft Foods, Inc.*, No. 10-1028, ECF No. 258 (C.D. Cal. Oct. 25, 2012) ("Tentative Final Ruling")

13  ("[I]t strains credulity to imagine that a reasonable consumer will be deceived into thinking a box of

14  crackers . . . contains huge amounts of vegetables simply because there are pictures of vegetables and

15  the true phrase 'Made with Real Vegetables' on the box."); *Lam*, 859 F. Supp. 2d at 1103 ("The

16  Court finds the statement 'gluten free' cannot support Plaintiff's claims under the UCL, CLRA, or

17  FAL.  The statement is objectively true and communicates nothing more than the absence of gluten in

18  the product …").

19         Moreover, to the extent there were any ambiguity with respect to the meaning of the "made

20  with all natural ingredients" statement, it is further clarified by the detailed information contained in

21  the ingredient list, which explains the exact contents of the products.  *See id*; *Freeman v. The Time,*

22  *Inc.,* 68 F.3d 285, 287 (9th Cir. 1995) ("Any ambiguity that [plaintiff] would read into any particular

23  statement is dispelled by the promotion as a whole"); *Rooney v. Cumberland Packing Corp.*, No. 12–

24  CV–0033, 2012 WL 1512106 (S.D. Cal. Apr. 16, 2012) (holding that no reasonable consumer could

25  be deceived by the label "Sugar in the Raw" because the package stated in several places that the

26  sugar was turbinado-sugar (a processed sugar)).  "As the Ninth Circuit held in *Williams v. Gerber*,

27  'reasonable consumers expect that the ingredient list contains more detailed information about the

28  product that confirms other representations on the packaging.'"  *Hairston*, 2012 WL 1893818, at *5

(quoting *Williams v. Gerber*, 552 F.3d 934, 939–40 (9th Cir. 2008)).  The FDA has similarly explained that consumers receive protection from being misled by "Natural" labels because the FDCA "requires that all ingredients used in a food be declared on the food's label . . . [s]o . . . the consumer would know from the label whether the product contains [a specific ingredient]").[6]  This is not to say that a *misrepresentation* on the front of a label can be corrected by appropriate disclosure in the ingredient statement, as *Gerber* concluded.  522 F.3d at 935.  But when a statement such as "made with all natural ingredients" is indisputably true, <u>an ingredient statement that both confirms and is consistent with the front of the label defeats the "deception" claim the plaintiffs are trying to manufacture here</u>.  In this case, the ingredient list is clearly consistent with the front label statement of "made with all natural ingredients." *See Hairston*, 2012 WL 1893818, at *5; *see also Red*, No. 10-1028, ECF No. 258, at *4.  Moreover, the circle around the "made with all natural ingredients" statement, which states "No MSG," "No Preservatives," and "No Artificial Flavors," also provides context to the representation.  It precludes any misinterpretation, for example, as Plaintiffs suggest (FAC ¶ 45), that the label signified that the products contained no added colors or processed ingredients.

Therefore, a lawsuit about whether minor ingredients (such as citric acid or caramel) in these products are "natural" in some epistemological sense is beside the point.[7]  The objective and contextual truth of the "made with all natural ingredients" statement establishes that it could not plausibly mislead a reasonable consumer.  "Accordingly, the Court [should] conclude[] that the challenge to the [] language on Defendants' [products] is not deceptive as a matter of law." *Hairston*, 2012 WL 1893818, at *5.

### B.    Plaintiffs' Fraud and False Advertising Claims Fail to Meet the Heightened Rule 9(b) Pleading Standard

The FAC clearly sounds in fraud and accordingly is subject to Rule 9(b)'s heightened pleading standards.  *Kearns*, 567 F.3d at 1124-25.  Plaintiffs allege that Frito-Lay "knew" and was

---

[6]  *See* September 16, 2010 Letter from Michael M. Landa, Acting Director, Center for Food Safety and Applied Nutrition, to the Honorable Jerome B. Simandle, *Coyle*, No. 08-cv-02797 (D.N.J.) (Dkt. No. 119) (Regulatory Appendix, Tab 13).

[7]  Defendants do not concede that these ingredients are not "natural."

---

"aware" that its labeling claims were false, deceptive, and likely to mislead reasonable consumers. FAC ¶¶ 42, 60, 102, 125, 127.  Plaintiffs also allege "false and deceptive" practices coupled with "unfair and/or fraudulent" business practices.  *Id.* ¶¶ 12, 166, 192-198.  "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 567 F.3d at 1124-25 (citation omitted); *see also In re Apple & AT&T iPad Unlimited Data Plan Litig*., 802 F. Supp. 2d 1070, 1075 (N.D. Cal. 2011) (applying Rule 9(b) particularity requirements to FAL, UCL, and CLRA claims).  In *Kearns*, the Ninth Circuit rejected allegations under the UCL and CLRA as insufficient to satisfy Rule 9(b) where the complaint failed to identify what the advertisements stated, when the plaintiff was exposed to them, and the sales materials upon which the plaintiff relied.  567 F.3d at 1126.  In *Delacruz*, this court recently held that merely alleging that a plaintiff was "exposed to" advertising merits dismissal, unless the plaintiff has also alleged that he read and relied on "specific, purported misrepresentations."  2012 WL 1215243, at *8-9 (N.D. Cal. Apr. 11, 2012).  Plaintiffs' claims have failed entirely to meet Rule 9(b)'s requirements:

**Advertisements and Website.**  Although Plaintiffs generally allege misleading advertising, the FAC offers no allegations as to **who** (which Plaintiff) saw **what** advertisements.  Plaintiffs did not identify **when** they viewed any advertisements, and apart from a vague allegation that they "read" or "viewed" Defendants' "website," they did not specify **where** they saw any advertising or identify the sections of the website they purportedly viewed and when.  Instead, the FAC is littered with vague references to "advertising and marketing materials" (FAC ¶ 42), "promotional materials" (*id.* ¶¶ 60, 102, 117), and an "integrated marketing campaign" (*id.* ¶¶ 43, 65).

**Purchases.**  The FAC alleges that Plaintiff Wilson purchased Lays' Classic Potato Chips and Plaintiff Campen purchased Lay's Classic, Lay's Honey Barbecue, Lay's Kettle Cooked Mesquite BBQ, Cheetos Puffs, and Fritos Corn Chips.  *See* FAC ¶¶ 16-17.  But neither Plaintiff states where in California, at which stores, or how frequently he bought Frito-Lay products.  Neither Plaintiff states how much he paid for the products, and neither alleged any purchase dates.  In only one paragraph do Plaintiffs actually allege reading *some* of Defendants' labels, though they claim to have read an "all natural" label that did not appear on the products, and in any case never allege when they read these labels.  *See* FAC ¶ 151.  In 252 paragraphs, Plaintiffs *never* allege actually reading a label related to

sodium content or anything related to "healthy" qualities of the products.[8]   And Plaintiffs never specify **who** saw **what** labeling claims **when.**

*        *        *

Plaintiffs allege unlawful advertising practices without specifying which materials Plaintiffs saw when.  The FAC vaguely refers to advertisements and "Defendants' website" but never identifies the page on the website, or the time, place, or manner of the advertisements, which is *dispositive* here given that many of the challenged claims (*e.g.*, "low sodium," "healthy") do not appear on the products themselves.   *See* FAC ¶¶ 43, 65, 130, 152, 195, 203, 212).  If Plaintiffs intended to mount a challenge to "advertising" and website statements that do not appear on product packaging, they should have done so with particularity.  *See Kearns*, 567 F.3d at 1125.  The same holds true for Plaintiffs' purchases that allegedly were driven by the complained-of advertising.  Without the "who, what, when, where, and how," Plaintiffs claims all fail as a matter of law.  *Id.* at 1124-25.

## IV.   PLAINTIFFS' UNJUST ENRICHMENT AND QUASI-CONTRACT CLAIMS FAIL AS A MATTER OF LAW

Plaintiffs' seventh cause of action for restitution based on unjust enrichment/quasi-contract also fails for several reasons.  First, "there is no cause of action in California for unjust enrichment." *Durell v. Sharp Healthcare,* 183 Cal. App. 4th 1350, 1370 (2010); *see also In re iPhone Application Litig.*, No. 11–MD–02250–LHK, 2012 WL 2126351, at *27-28 (N.D. Cal. June 12, 2012) ("[L]ike unjust enrichment, California does not recognize a cause of action for restitution.").   Moreover, Plaintiffs "have not identified a benefit unjustly conferred upon Defendants which would warrant Plaintiffs receiving redress."  *Grp. Health Plan, Inc. v. Philip Morris, Inc.*, 68 F. Supp. 2d 1064, 1071 (D. Minn. 1999).  Plaintiffs received the chips for which they paid and have not alleged that those chips were ineffective or defective in any way.[9]

---

[8]  Plaintiffs claim that they "relied on" Defendants' sodium claims (FAC ¶ 108) and package labeling (FAC ¶ 151) but never state explicitly that they "read" any labels apart from those identified in ¶ 151.

[9]  *See Adamson v. Ortho-McNeil Pharms., Inc.*, 463 F. Supp. 2d 496, 504-05 (D.N.J. 2006) (New Jersey unjust enrichment claim against pharmaceutical manufacturer failed where, notwithstanding allegation of misrepresentations, plaintiff "purchased and paid for" "and received" the disputed drug); *Sokoloff v. Town Sports Int'l*, 6 A.D.3d 185, 186 (N.Y. App. Div. 2004) (New York unjust enrichment claim against health club failed where plaintiff received health club access bargained for); *Rheem Mfg. Co. v. United States*, 371 P.2d 578, 581 (Cal. 1962) (proof of payment of fair market value in exchange for property "tends to show that there was no unjust enrichment").

Furthermore, Plaintiffs cannot allege a claim for the quasi-contractual remedy of unjust enrichment because they allege that the parties' rights are governed by a binding agreement—an express warranty.  If an "enforceable binding agreement" exists, as Plaintiffs assert is the case, unjust enrichment is unavailable.  *See Paracor Fin. v. G.E. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).  Nor may Plaintiffs amend the FAC to allege unjust enrichment in the alternative.  *See*, *e.g.*, *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) ("Even though Rule 8(e)(2) of the Federal Rules of Civil Procedure allows a party to state multiple, even inconsistent claims, it does not alter a substantive right between the parties and accordingly does not allow a plaintiff invoking state law to an unjust enrichment claim while also alleging an express contract.").

Finally, Plaintiffs seek equitable relief, which is available only where there is no adequate remedy at law.  *See Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 260 (Ct. App. 2011) (where CLRA, UCL and common law fraud claims were adequate, claim for restitution was unnecessary). Since Plaintiffs seek damages under the Song-Beverly Act, Magnuson-Moss Act, and CLRA, their failure to allege that their requested remedies at law are inadequate dooms their claim for restitution based on unjust enrichment/quasi contract.  *See Rhynes v. Stryker Corp.*, No. 10-5619, 2011 WL 2149095, at *3-*4 (N.D. Cal. May 31, 2011) ("Where the claims plead[ed] by a plaintiff *may* entitle her to an adequate remedy at law, equitable relief is unavailable.").  This claim should be dismissed.

## V.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FEDERAL MAGNUSON-MOSS WARRANTY ACT ("MMWA")

Plaintiffs' ninth cause of action alleges various violations of the MMWA, 15 U.S.C. § 2310(d)(1), due to allegedly "express warranties" made by Defendants' "package labels."  FAC ¶ 248.  Specifically, Plaintiffs identify Defendants' "all natural" and "No MSG" labeling as express warranties.[10]  These claims should be dismissed for several independently sufficient reasons.  First, the MMWA applies to "any written affirmation of fact or written promise" that "affirms or promises that such material or workmanship is *defect free* or will meet a *specified level of performance over a specified period of time*."  15 U.S.C. § 2301(6) (emphases added).  Courts have held uniformly that

---

[10]  Plaintiffs vaguely reference "other health and nutrient content claims."  FAC ¶ 247.  Putting aside that Plaintiffs have not pleaded these allegations with the necessary particularity, they fail for the same reason Plaintiffs' MMWA claim fails as to "all natural" and "no MSG" labeling.

food labels do not constitute "written warranties" under the MMWA.  For example, *Hairston v. South Beach Beverage Company* held that labels and advertising that use the terms "natural," "all natural" or "100% natural" cannot be subject to a MMWA suit because such statements are "product descriptions rather than promises that [the product] is defect-free or guarantees of specific performance levels," and thus fall outside of the MMWA's written warranty protections.  No. CV 12-1429-JFW (DTBx), 2012 WL 1893818, at *6 (C.D. Cal. May 18, 2012); *see also Littlehale v. The Hain Celestial Group, Inc.*, No. C 11-6342 PJH (N.D. Cal. July 2, 2012), ECF No. 48; *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910 (Docket No. 53) (N.D. Cal. July 20, 2012).  Furthermore, under the MMWA's plain terms, that statute is "inapplicable to any written warranty the making or content of which is otherwise governed by Federal law."  15 U.S.C. § 2311(d); *see Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 797 (2002).  If Defendants' labels constitute a "warranty"—which they clearly do not—that "warranty" would fall squarely within the FDA's purview under the FDCA, and would thus be "otherwise governed by Federal Law."  *See Hairston*, 2012 WL 1893818, at *5.  The MMWA does not apply to Defendants' labels,[11] and as a result, Plaintiffs' ninth cause of action should be dismissed.

## VI.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE SONG-BEVERLY CONSUMER WARRANTY ACT

Plaintiffs allege that the labels on the Challenged Products constitute "express warranties" as defined by Cal. Civ. Code § 1791.2 (FAC ¶ 236), but Section 1791.2 of the SBA defines "[e]xpress warranty" as "[a] written statement arising out of a sale to the consumer of a *consumer good* pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or provide compensation if there is a failure in utility or performance[.]"  Cal. Civ. Code § 1791.2 (emphasis added).  "Consumer goods" are expressly defined to _exclude_ "consumables," which include "any product that is intended for consumption by individuals, or use by individuals for purposes of personal care or in the performance of services ordinarily rendered within the household, and that usually is consumed or expended in the course of

---

[11]  Even if it did apply, dismissal would still be warranted, as Plaintiffs have not complied with the MMWA pre-litigation notice requirement.  *See* 15 U.S.C. § 2310(e).

consumption or use." *See* Cal. Civ. Code § 1791(d) (defining consumables); *see also* Cal. Civ. Code § 1791(a) (defining consumer goods as "any new product or part thereof that is used, bought, or leased for use primarily for personal, family, or household purposes, except for clothing and consumables") (emphasis added).  Accordingly, by the express terms of the SBA, the "express warranty" provision invoked by Plaintiffs does not apply to food labels like those at issue in this case.  Likewise, Plaintiffs' claim that the package labels "create express warranties" is unsupported by the statute and California case law.  FAC ¶¶ 236-39.  The Court should dismiss Plaintiffs' SBA claim.

## VII.  DISMISSAL WITH PREJUDICE IS APPROPRIATE

The Court should dismiss all of Plaintiffs' claims *with prejudice*.  Dismissal with prejudice is appropriate where amendment would either "cause the opposing undue party prejudice" or "constitute an exercise in futility." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F. 2d 1149, 1160 (9th Cir. 1989); *see also Hairston*, 2012 WL 1893818, at *3 ("A Court does not need to grant leave to amend in cases where the Court determines that permitting a plaintiff to amend would be an exercise in futility.").  Here, both factors apply.

Plaintiffs have already had two opportunities to amend their complaint.  First, when the Original Complaint (only challenging 0 grams Trans Fat statements) noted Wilson's intention to file an amended complaint to add a CLRA claim for damages (Original Complaint at ¶¶ 122-23), Defendants suggested that Wilson amend his complaint before they filed a responsive pleading in order to avoid duplicative filings.  *See* Decl. of J. Meltzer ¶ 2.  Wilson refused, and Defendants proceeded to answer the Original Complaint.  *See* ECF No. 17.  Plaintiffs then proceeded to file the FAC, a true "kitchen sink" complaint, adding a new named plaintiff and five new categories of labeling challenges to numerous additional specified and unspecified products.  This type of "wait and see" and then "throw everything at the wall" approach to pleading should not be condoned.  Defendants have already been required to file an Answer, and now a subsequent Motion to Dismiss, incurring great expense and time address Plaintiffs' claims which clearly fail to satisfy Rules 8 and 9(b).  Requiring Defendants to respond a third time to a new complaint would be prejudicial given the futility of amendment, as the labeling Plaintiffs challenge could not deceive a reasonable as a

matter of law.  Plaintiffs should not be given a third chance to salvage invalid legal theories of regulatory infractions relating to new products.[12]

## CONCLUSION

For the forgoing reasons, Defendants respectfully request that this Court dismiss the FAC in its entirety, with prejudice.

Dated:  November 9, 2012          Gibson, Dunn & Crutcher LLP

By:  /s/ Andrew S. Tulumello
        Andrew S. Tulumello

Andrew S. Tulumello
1050 Connecticut Avenue, N.W.
Washington, DC  20036
Telephone:  202.955.8500
Facsimile:  202.467.0539

Christopher Chorba
333 South Grand Avenue
Los Angeles, CA  90071
Telephone:  213.229.7000
Facsimile:  213.229.7520

*Attorneys for Defendants Frito-Lay North America, Inc. and PepsiCo, Inc.*

---

[12]  Federal courts in California often dismiss with prejudice after a single amendment.  *E.g.*, *Hairston*, 2012 WL 1893818 at 6 (dismissing with prejudice FAC's food labeling claims brought under the UCL, FAL and CRLA due to futility of amendment); *Aguiar v. California Sierra Exp., Inc.*, No. 2:11-cv-02827, 2012 WL 1593202 (E.D. Cal. May 4, 2012) (dismissing with prejudice FAC's claims due to futility of amendment); *Sensible Foods, LLC v. World Gourmet, Inc.*, No. 11-2819, 2012 WL 566304 (N.D. Cal. Feb. 21, 2012) (Conti, J.) (dismissing with prejudice FAC's false advertising, misrepresentation, and unfair competition claims due to futility of amendment).