**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MARKUS WILSON and DOUG CAMPEN, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>FRITO-LAY NORTH AMERICA, INC. and PEPSICO, INC.,<br><br>        Defendants. | ) Case No. 12-1586 SC<br>)<br>) ORDER GRANTING IN PART AND<br>) DENYING IN PART DEFENDANTS'<br>) MOTION TO DISMISS PLAINTIFFS'<br>) <u>FIRST AMENDED COMPLAINT</u><br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## I.  **INTRODUCTION**

Now before the Court is Defendants Frito-Lay North America, Inc. ("Frito-Lay") and PepsiCo, Inc.'s ("PepsiCo") (collectively "Defendants") motion to dismiss Plaintiffs Markus Wilson and Doug Campen's ("Plaintiffs") first amended complaint.  ECF Nos. 18 ("FAC"), 27 ("MTD").  The motion is fully briefed, ECF Nos. 34 ("Opp'n"),[1] 38 ("Reply"), and suitable for decision without oral argument, Civ. L.R. 7-1(b).  For the reasons explained below, the Court GRANTS in part and DENIES in part Defendants' motion.

---

[1] Plaintiffs are instructed to review Civil Local Rule 3-4(c)(2), as the Court will strike portions of future filings that do not adhere to length limits or type size restrictions.

**II.    BACKGROUND**

The following facts are taken from Plaintiffs' FAC. Defendants are producers of retail food products.  FAC ¶ 19. Plaintiffs are two California consumers who purchased a variety of Defendants' food products between March 29, 2012 and March 29, 2008 (the "Class Period").  Id. ¶¶ 16-17.  Plaintiff Wilson bought "Lay's Classic Potato Chips" and Plaintiff Campen bought "Lay's Classic Potato Chips, Lay's Honey Barbeque Potato Chips, Lay's Kettle Cooked Mesquite BBQ Potato Chips, Cheetos Puffs, and Fritos Original Corn Chips" (collectively the "Named Products").  Id. ¶ 17.  Plaintiffs allege that they bought other food products from Defendants during the Class Period, but they do not specify what these other products were.  See id.  Plaintiffs, on behalf of themselves and others similarly situated, filed this putative class action against Defendants, alleging that Defendants' website, advertisements, and products contain deceptive and misleading labeling information, in violation of state and federal law.  Id. ¶¶ 1-15.

The crucial factual background in this case concerns the specific labeling practices that Plaintiffs claim are misleading.[2] The only labels actually put before the Court -- described further below -- are two versions of a Lay's Classic Potato Chips bag and labels for the Named Products as they appeared at the time

---

[2] Defendants filed a Request for Judicial Notice in this matter, per Federal Rule of Evidence 201.  ECF No. 28 ("Def.'s RJN").  The Court GRANTS Defendants' request as to Exhibits B-F, per the incorporation by reference doctrine, and DENIES Defendants' request as to Exhibits A and G, because those exhibits are irrelevant per Federal Rule of Evidence 402.  The Court notes that Defendants' RJN shows only the labels as they appeared at the time of Defendants' RJN's filing, not the labels as they appeared to Plaintiffs before or at the time of their filing the FAC.

**United States District Court**
For the Northern District of California

1    Defendants filed their RJN. Plaintiffs' allegations that

2    Defendants' labels are misleading and deceptive are based on

3    Defendants' labeling and advertising of their food products (1) as

4    being "All Natural" despite containing artificial or unnatural

5    ingredients, flavoring, coloring, or preservatives; (2) as having

6    "0 Grams Trans Fat" content despite having more than thirteen grams

7    of fat per fifty grams of food product; (3) as having "No MSG"

8    despite containing MSG; (4) as being "low sodium" despite having

9    more than 140 milligrams of sodium per serving size and per fifty

10   grams of food product; (5) as being "healthy despite containing

11   disqualifying nutrient levels"; and (6) as including assertions

12   about other unauthorized health claims. See id. ¶ 2.

13       Plaintiffs assert that they "care about the nutritional

14   content of food and seek to maintain a healthy diet." Id. ¶ 149.

15   They also allege that they bought Defendants' Named Products and

16   other products throughout the Class Period, that they relied on

17   Defendants' labeling and other statements in making their

18   purchases, and that they would not have purchased Defendants'

19   products had they known the truth about them. See, e.g., id. ¶¶

20   150-157.

21       Based on these facts, Plaintiffs assert nine causes of action

22   against Defendants: (1-3) violations of the "unlawful," "unfair,"

23   and "fraudulent" prongs of California's Unfair Competition Law's

24   ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; (4-5) violations

25   of the "misleading and deceptive" and "untrue" prongs of

26   California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code

27   § 17500, et seq.; (6) violations of California's Consumers Legal

28   Remedies Act, Cal. Civ. Code § 1750, et seq.; (7) restitution based

**United States District Court**
For the Northern District of California

1  on unjust enrichment or quasi-contract; (8) breach of warranty

2  under California's Song-Beverly Act, Cal. Civ. Code § 1790, <u>et</u>

3  <u>seq.</u>; and (9) breach of warranty under the federal Magnuson-Moss

4  Act, 15 U.S.C. § 2301, <u>et seq</u>.

5

6  **III.   <u>LEGAL STANDARD</u>**

7       **A.   <u>Motions to Dismiss</u>**

8       A motion to dismiss under Federal Rule of Civil Procedure

9  12(b)(6) "tests the legal sufficiency of a claim." <u>Navarro v.</u>

10 <u>Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

11 on the lack of a cognizable legal theory or the absence of

12 sufficient facts alleged under a cognizable legal theory."

13 <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

14 1988).  "When there are well-pleaded factual allegations, a court

15 should assume their veracity and then determine whether they

16 plausibly give rise to an entitlement to relief." <u>Ashcroft v.</u>

17 <u>Iqbal</u>, 556 U.S. 662, 679 (2009).  However, "the tenet that a court

18 must accept as true all of the allegations contained in a complaint

19 is inapplicable to legal conclusions.  Threadbare recitals of the

20 elements of a cause of action, supported by mere conclusory

21 statements, do not suffice." <u>Id.</u> (citing <u>Bell Atl. Corp. v.</u>

22 <u>Twombly</u>, 550 U.S. 544, 555 (2007)).  The court's review is

23 generally "limited to the complaint, materials incorporated into

24 the complaint by reference, and matters of which the court may take

25 judicial notice." <u>Metzler Inv. GMBH v. Corinthian Colls., Inc.</u>,

26 540 F.3d 1049, 1061 (9th Cir. 2008) (citing <u>Tellabs, Inc. v. Makor</u>

27 <u>Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)).

28      When a motion to dismiss is granted, a district court must

decide whether to grant leave to amend.  Generally, the Ninth
Circuit has a liberal policy favoring amendments and, thus, leave
to amend should be freely granted.  See, e.g., DeSoto v. Yellow
Freight System, Inc., 957 F.2d 655, 658 (9th Cir. 1992).  However,
a court does not need to grant leave to amend in cases where the
court determines that permitting a plaintiff to amend would be an
exercise in futility.  See, e.g., Rutman Wine Co. v. E. & J. Gallo
Winery, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to
amend is not an abuse of discretion where the pleadings before the
court demonstrate that further amendment would be futile.").

**B.   Rule 9(b)**

Claims sounding in fraud are subject to the heightened
pleading requirements of Federal Rule of Civil Procedure 9(b),
which requires that a plaintiff alleging fraud "must state with
particularity the circumstances constituting fraud."  See Kearns v.
Ford Motor Co., 567 F. 3d 1120, 1124 (9th Cir. 2009).  "To satisfy
Rule 9(b), a pleading must identify the who, what, when, where, and
how of the misconduct charged, as well as what is false or
misleading about [the purportedly fraudulent] statement, and why it
is false."  United States ex rel Cafasso v. Gen. Dynamics C4 Sys.,
Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks
and citations omitted).

**IV.   DISCUSSION**

Defendants make six arguments about why Plaintiffs' FAC should
be dismissed: (1) Plaintiffs did not sufficiently plead why PepsiCo
can be held liable for Frito-Lay's actions; (2) Plaintiffs lack
standing as to products they do not claim to have purchased; (3)

Plaintiffs fail to state claims for all of their causes of action because no reasonable consumer is likely to be harmed or deceived by the labels at issue, and because Plaintiffs' claims fail to meet Rule 9(b)'s heightened pleading standard; (4) Plaintiffs' unjust enrichment and quasi-contract claims fail as a matter of law; (5) Plaintiffs fail to state a claim under the Magnuson-Moss Warranty Act ("MMWA"); and (6) Plaintiffs fail to state a claim under the Song-Beverly Consumer Warranty Act ("Song-Beverly").  See generally MTD.

## A.    **The Statutory Framework**

The Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343(r), et seq., is the operative statute in this matter.

The many subsections of 21 U.S.C. § 343 establish the conditions under which food is considered "misbranded."  Generally, food is misbranded under 21 U.S.C. § 343(a)(1) if "its labeling is false or misleading in any particular."  Sections 343(q) and (r) regulate the information that must be included in all packed products' "nutrition box," as well as all other nutrient content claims that appear elsewhere on the label.

Section 343(q) governs information that must be disclosed about certain nutrients in food products -- principally in the nutrition box area.  Section 343(r) discusses "nutrition levels and health-related claims" about food products made anywhere on their labels.  It governs all voluntary statements about nutrition content or health information that a manufacturer includes on the food label or packaging.  The Food and Drug Administration ("FDA")

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1  has classified these nutrient claims as "express" (e.g., "100

2  calories"), "implied" (e.g., "high in oat bran"), and "health

3  claims," which "characteriz[e] the relationship of any substance to

4  a disease or health-related condition."  21 C.F.R. §§ 101.13,

5  101.14; see also Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d

6  1111, 1116-17 (N.D. Cal. 2010) (describing the statutory scheme).

7  Section 343(r) clarifies that it does not govern nutrition content

8  claims made under Section 343(q) (i.e., inside the nutrition box),

9  though an accompanying regulation, 21 C.F.R. § 101.13, clarifies

10 that "[i]f such information is declared elsewhere on the label or

11 in labeling, it is a nutrition content claim and is subject to the

12 requirements for nutrient content claims [under Section 343(r)]."

13 See Chacanaca, 752 F. Supp. 2d at 1117.

14      **B.   Plaintiffs' Claims Against PepsiCo**

15      Plaintiffs name PepsiCo as a defendant, but they never explain

16 exactly how PepsiCo, as Frito-Lay's parent company, is liable for

17 Frito-Lay's activity.  To cure this problem, Plaintiffs ask the

18 Court to take judicial notice of a website purported to be

19 published by PepsiCo, on which PepsiCo allegedly directs consumers

20 to Frito-Lay's website.  See ECF No. 35 (Pl.'s Response to Def.'s

21 RJN) at 1-2, Exs. 2-3.  Plaintiffs also claim in their opposition

22 brief that they alleged PepsiCo to have jointly and unlawfully

23 labeled the misbranded products.  Opp'n at 4-5 (citing FAC ¶¶ 2-4).

24      The Court DENIES Plaintiffs' request for judicial notice of

25 these documents, made in response to Defendants' RJN, as an

26 impermissible attempt to amend the pleadings.  Plaintiffs did not

27 plead anything about these particular websites in their FAC.

28 Rather, they now attempt to supply new facts in their opposition

brief and their response to Defendants' RJN.  The Court declines to
allow this practice.  See, e.g., Schneider v. Cal. Dep't of
Corrections, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("[A] court
may not look beyond the complaint to . . . a memorandum in
opposition to a defendant's motion to dismiss.").  However, the
Court takes judicial notice of the exhibits attached to Plaintiff's
opposition, which Defendants did not oppose, since those documents
-- FDA complaint letters, part of an FDA brochure, and a Lay's
Classic Potato Chips label -- are all either part of the public
record or incorporated by reference into the FAC.  See Opp'n Exs.
1-7.

Plaintiffs' actual allegations are plainly that "Defendants"
made false claims about their products in a SEC filing and on an
unidentified website.  FAC ¶¶ 2-4.  These allegations fail to rise
above "threadbare recitals" of legal conclusions even when the
Court construes them most liberally.  See Iqbal, 556 U.S. at 678.
The Court finds these pleadings insufficient to show that PepsiCo
is properly named as a defendant in this case.  Plaintiffs' claims
against PepsiCo are DISMISSED with leave to amend.  Plaintiffs may
amend to plead how PepsiCo is responsible for the allegedly
actionable conduct at issue here.

       C.   **Standing**

Plaintiffs plead that they bought five different Frito-Lay
products, but their claims appear to be based on a much wider
variety of products that they do not specify in their complaint,
including "other varieties of potato chips, corn-based snacks like
Cheetos and Fritos, and other types of salty snacks."  Opp'n at 4;
see also FAC ¶ 1 (challenging "potato chips and other snack food

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1  products . . . sold by [Frito-Lay]").  Defendants argue that

2  "Plaintiffs' standing arguments sweep far too broadly," because

3  Plaintiffs allege that they have standing to bring their case based

4  on an array of products that they do not even name.  Reply at 1-2.

5  At this point, however, it is unnecessary for the Court to address

6  the issue of standing for these products: as discussed <u>infra</u>,

7  Plaintiffs' claims as to the unidentified products fail for lack of

8  specificity under Rule 9(b).  <u>See, e.g.</u>, <u>Jones v. Conagra Foods,</u>

9  <u>Inc.</u>, -- F. Supp. 2d --, 2012 WL 6569393, at *11 (N.D. Cal. Dec.

10  17, 2012) (dismissing plaintiffs' claims against defendant for

11  failure to meet Rule 9(b)'s specificity standard because plaintiffs

12  did not provide details about "exactly which products they

13  purchased").

14      D.   **Plausibility and Specificity**

15      Defendants argue that the entire FAC sounds in fraud and must

16  therefore meet the heightened pleading standard of Rule 9(b)

17  because it alleges a continuous course of false, deceptive, and

18  misleading activity.  <u>See</u> Opp'n at 24-25; MTD at 19-20.  Plaintiffs

19  respond that the FAC complies with Rule 9(b) because it is specific

20  enough to give defendants notice of their alleged misconduct, and,

21  separately, that their unlawful business practices claim under the

22  UCL need not comply with Rule 9(b) because it does not sound in

23  fraud.  Opp'n at 24.

24      Regarding Plaintiffs' latter point, the rule is that

25  plaintiffs need not satisfy Rule 9(b) as to the UCL's unlawful

26  prong when the basis of their claim does not sound in fraud.  <u>See</u>

27  <u>Vess v. Ciba-Geigy Corp.</u>, 317 F.3d 1097, 1105-06 (9th Cir. 2003).

28  However, when it does, and especially when a plaintiff alleges a

1   unified course of fraudulent conduct that forms the basis of their

2   UCL claims, plaintiffs must plead the UCL claims with specificity.

3   Id. In this case, Plaintiffs base their unlawful business practice

4   claims on Defendants' alleged violations of underlying laws by way

5   of allegedly fraudulent or deceptive labeling and advertising

6   practices. See FAC ¶¶ 176-79. Consequently Plaintiffs' entire

7   FAC, including its unlawful business practices claim, sounds in

8   fraud and must meet Rule 9(b)'s heightened pleading standards. See

9   Kearns, 567 F.3d at 1125; Vess, 317 F.3d at 1103-04. It is true

10   that, as discussed below, the actual likelihood of deception in

11   UCL, FAL, and CLRA cases is judged by a "reasonable consumer"

12   standard. See Williams v. Gerber Prods. Co., 552 F.3d 934, 938-40

13   (9th Cir. 2008); Colucci v. ZonePerfect Nutrition Co., No. 12-2907

14   SC, 2012 WL 6737800, at *7 (N.D. Cal. Dec. 28, 2012). However,

15   whether a plaintiff even reaches that point at the pleading stage

16   is governed in part by Rules 8 and 9(b). See, e.g., Colucci, 2012

17   WL 6737800, at *7; Jones, 2012 WL 6569393, at *11.

18       Many of Plaintiffs' allegations fail to meet Rule 9(b)'s

19   heightened pleading standard because Plaintiffs simply fail to

20   provide underlying factual details that give Defendant notice and

21   explain to the Court "the who, what, when, where, and how" of the

22   misconduct charged. Vess, 317 F.3d at 1106. Plaintiffs allege

23   that Defendants made false and misleading statements about a

24   variety of their products, but at no point in their 53-page, 252-

25   paragraph FAC do Plaintiffs provide details about those products,

26   or about the advertisements and websites they frequently quote to

27   support their claims. Nor does Plaintiffs' opposition brief

28   clarify these issues. Plaintiffs simply have not pled which

**United States District Court**
For the Northern District of California

products they purchased in a way sufficient for Defendants to be on notice of the products that are actually at issue. See Jones, 2012 WL 6569393, at *11.

Further, as to Rule 8, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Iqbal, 556 U.S. at 663 (quoting Twombly, 550 U.S. at 370), and the critical facts must be pled as part of the "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8. Plaintiffs' claims about unpurchased or unnamed products do not rise to this level: given the variation in food labeling even among the Named Products, the Court cannot assume that all of the products at issue are mislabeled even if Plantiffs' pleadings are taken as true.

Despite Plaintiffs' pleading defects, Defendants gamely address Plaintiffs' claims, supplying the labels toward which Defendants assume Plaintiffs' allegations are addressed. See MTD at 7-21; Reply at 5-12; Def.'s RJN Exs. B-F. Plaintiffs do not object to the Court's taking notice of these current labels: they appear to agree that the labels Defendants supply are at least some of the labels at issue in their case. See ECF No. 35 (Pl.'s Response to Def.'s RJN) at 1. The Court therefore assumes that the packaging in Defendants' RJN -- the Named Products' packaging -- is essentially the same packaging that Plaintiffs claim is misleading. As for the one instance in which Plaintiffs argue that there is a material difference in the labels before the Court -- the Lay's Classic Potato Chips labeling and advertisement Plaintiffs include in their FAC at paragraph five, versus different labeling for the

1   same product included in Defendants' RJN -- the Court's analysis

2   below will address both labels, since Plaintiffs claim that both

3   are misleading.  See Opp'n at 7.

4       Plaintiffs' claims as to the Named Products are undisturbed.

5   Plaintiffs' claims as to all other products, as well as the

6   unidentified advertisements and web pages, are DISMISSED without

7   prejudice for failure to comply with Rules 8 and 9(b).  Plaintiff

8   has leave to amend these claims if it can provide details on what

9   the unnamed but allegedly purchased products, advertisements, or

10  websites were, when they were purchased or viewed, where the

11  allegedly actionable statements appeared, how the statements were

12  misleading, who made the statements, and so forth.

13      **E.    <u>Whether Websites Mentioned on Product Labels Constitute</u>**

14          **<u>Labeling</u>**

15      The parties dispute whether statements Defendants make on the

16  www.fritolay.com website can constitute "labeling" of the Named

17  Products under the FDCA.  See Opp'n at 19; Reply at 11.  Plaintiffs

18  claim that 21 U.S.C. § 321(m) renders the content on the website

19  "labeling," even though none of the website's content actually

20  appears on the labels at issue here, asserting that the FDA has

21  confirmed that "websites are indeed part of a product['s]

22  labeling."  Opp'n at 19.  Plaintiffs cite no authority for this

23  point.  See id.

24      Section 321(m) defines "labeling" as "all labels and other

25  written, printed, or graphic matter (1) upon any article or any of

26  its containers or wrappers, or (2) accompanying such article."  The

27  issue here is whether statements made on the www.fritolay.com

28  website "accompany" the Named Products such that they can be

1    classified as "labeling" under the FDCA.

2         It is true that statements not actually printed on a label

3    itself can constitute "labeling" for FDCA purposes.  What matters

4    is whether the separate material serves the purpose of labeling,

5    which is to supplement or explain the product.  Kordel v. United

6    States, 335 U.S. 345, 349-350 (1950) ("One article or thing is

7    accompanied by another when it supplements or explains it . . . No

8    physical attachment one to the other is necessary.  It is the

9    textual relationship that is significant."); Alberty Food Prods.

10   Co. v. United States, 185 F.3d 321, 324-25 (9th Cir. 1950) (citing

11   Kordel for this proposition); see also United States v. Harkonen,

12   No. C 08-0164 MHP, 2009 WL 1578712, at *9 (N.D. Cal. June 4, 2009)

13   (Kordel "remains the leading Supreme Court authority on the scope

14   of the labeling provision.").  In this matter, Plaintiffs base

15   their claims on the fact that some of the Named Products include

16   the words "Visit our website @ fritolay.com" in tiny print at the

17   bottom of their back labels.  See Def.'s RJN Exs. B-F.  From this

18   Plaintiffs claim that Defendants' marketing language on the

19   www.fritolay.com website constitute mislabeling under the FDCA.

20   See, e.g., FAC ¶¶ 42, 60, 102, 127, 129, 152-53.

21        The Court does not find that the language on the

22   www.fritolay.com website constitutes labeling under the FDCA,

23   because as cited by Plaintiffs, none of the website language

24   explains or supplements the individual Named Products such that the

25   website could generally be found to "accompany" the Named Products.

26   See Kordel, 335 U.S. at 349-50.  Even though the Named Products'

27   labels ask consumers to visit the website, they do not state that

28   the website will inform consumers of the details of the Named

Products' nutritional facts, and none of the language Plaintiffs cite is drawn closely enough to the Named Products themselves to merit the website's being found to constitute "labeling."  To the extent that any of Plaintiffs' claims are based on language from the www.fritolay.com website, those claims are DISMISSED with leave to amend if Plaintiffs are able to provide or describe labels or website language constituting "labeling," per above.

### F.   Defendants' Preemption Arguments

Defendants maintain that Plaintiffs' state law claims as to Defendants' statements that their products contain "No MSG" and "0 Grams Trans Fat" are preempted by federal law.

The FDCA, as amended by the NLEA, contains an express preemption provision, making clear that state laws imposing labeling requirements not identical to FDA mandates are preempted. See 21 U.S.C. § 343-1(a).  "Where a requirement imposed by state law effectively parallels or mirrors the relevant sections of the NLEA, courts have repeatedly refused to find preemption." Chacanaca, 752 F. Supp. 2d at 1118 (citing N.Y. State Restaurant Ass'n v. N.Y.C. Bd. of Health, 556 F.3d 114, 123 (2d Cir. 2009); Chavez v. Blue Sky Natural Beverage Co., 268 F.R.D. 365, 370 (N.D. Cal. 2010)).  The FDA itself appears to endorse this approach, stating: "[I]f the State requirement does the same thing that the Federal law does . . . then it is effectively the same requirement as the Federal requirement . . . [T]he only State requirements that are subject to preemption are those that are affirmatively different from the Federal requirements on matters that are covered by Section 403A(a) of the Act."  Final Rule, 60 Fed. Reg. 57076, 57120 (Nov. 13, 1995).

United States District Court
For the Northern District of California

14

**United States District Court**
For the Northern District of California

1    "This means that plaintiffs' claims need not fail on

2    preemption grounds if the requirements they seek to impose are

3    either identical to those imposed by the FDCA and the NLEA

4    amendments or do not involve claims or labeling information of the

5    sort described in [21 U.S.C.] sections 343(r) and 343(q)."

6    <u>Chacanaca</u>, 752 F. Supp. 2d at 1119.  "That is, if the statements at

7    issue are nutrient content claims as contemplated by [21 U.S.C. §

8    343(r)], plaintiffs' deception claims may only go forward if they

9    can show that the statements would also be 'misbranded' under the

10   terms of [the FDCA and NLEA]."  <u>Id.</u>

11           **i.    <u>"0 Grams Trans Fat" Claims Are Not Preempted</u>**

12       Plaintiffs' claims as to Defendants' "0 Grams Trans Fat"

13   labels are based on a theory that while the claim itself is

14   accurate as to the products' trans fat content, those labels are

15   nevertheless unlawful under 21 C.F.R. § 101.13(h)(1), which states

16   that whenever an express nutrient content claim is made on a food

17   label, that label must bear further disclosures about ingredients

18   that the FDA has found pose diet-related health risks:

19           If a food . . . contains more than 13.0 g of
             fat, 4.0 g of saturated fat, 60 milligrams
20           (mg) of cholesterol, or 480 mg of sodium per
             reference amount customarily consumed, per
21           labeled serving, or, for a food with a
             reference amount customarily consumed of 30
22           g or less . . . per 50 g . . . then that
             food must bear a statement disclosing that
23           the nutrient exceeding the specified level
             is present in the food as follows: "See
24           nutrition information for ___ content" with
             the blank filled in with the identity of the
25           nutrient exceeding the specified level,
             e.g., "See nutrition information for fat
26           content."

27       Plaintiffs clarify that Defendants violate this provision by

28   making "0 Grams Trans Fat" claims even though their products

United States District Court
For the Northern District of California

1   contain more than 13 grams of fat.  FAC ¶ 84.  As Plaintiffs

2   allege, Defendants' labeling "bears a statement telling consumers

3   to 'see nutrition facts for saturated fat info,'" even though the

4   total fat level is also high, "thus misdirecting consumers to a

5   nutrient in which the product is low, while failing to draw their

6   attention to the harmful levels of the nutrient (total fat) they

7   are mandated by law to disclose."  Id.  According to Plaintiffs'

8   theory, whenever Defendants label a food product with "0 Grams

9   Trans Fat," the accompanying statement under 21 C.F.R. § 101(h)(1)

10  should say something like "See nutrition facts for saturated fat

11  and total fat info," thereby including all of the nutrients that

12  would be required per 21 C.F.R. § 101(h)(1).  See FAC ¶ 84; Opp'n

13  at 7-16.

14      Defendants argue that all claims based on such "0 Grams Trans

15  Fat" statements are preempted by the FDCA.  See MTD at 11-13; Reply

16  at 8-9.  They base this argument primarily on two recent decisions

17  from this Court: Carrea v. Dreyer's Grand Ice Cream, Inc., No. 10-

18  1044 JSW, 2011 WL 159380 (N.D. Cal. Jan. 10, 2011), aff'd, 475 Fed.

19  App'x 113 (9th Cir. 2012), and Delacruz v. Cytosport, No. 11-3532

20  CW, 2012 WL 2563857 (N.D. Cal. June 28, 2012).  Both cases are

21  distinguishable and inapposite to the preemption discussion.

22      In Carrea, the plaintiff's "0 Grams Trans Fat" claim was based

23  on the theory that, since the product in question actually

24  contained more than zero but less than half a gram of trans fat,

25  the defendants could not label the food product as "0g Trans Fat."

26  See Carrea, 2011 WL 159380, at *3.  However, FDA regulations

27  explicitly stated that "If the serving [in question] contains less

28  than 0.5 gram, the content, when declared, shall be expressed as

16

**United States District Court**
For the Northern District of California

1  zero."  Id. (citing 21 C.F.R. § 101.9(c)(2)(ii)).  Since

2  plaintiff's state law claims in Carrea imposed labeling

3  requirements not identical to the FDA's promulgations, this Court

4  found that they were preempted per the FDCA as amended by the NLEA.

5  See id. at *3-4.  In other words, in Carrea, the plaintiffs had

6  tried to impose an obligation that was explicitly disclaimed by FDA

7  regulations, and so its imposition through state law was held to be

8  preempted.  See id.

9      In Delacruz, the plaintiff claimed that a nutrition bar's

10  statement of "0g Trans Fat" was actionable because the bar

11  contained "more than four grams of saturated fat and its label

12  omits the disclosure statement 'See nutrition information for

13  saturated fat content.'"  2012 WL 2563857, at *4.  This Court found

14  that the "0g Trans Fat" statement, while an "alleged distraction,"

15  did not "amount to a false statement or misrepresentation and,

16  thus, [was] not an actionable claim."  Id.  That holding had

17  nothing to do with federal preemption: it concerned whether the

18  plaintiff had adequately pled one of her claims.

19      The Court finds that Plaintiffs' claims are in line with

20  federal law and regulations.  Since Plaintiffs' state law claims

21  rely on statutes that explicitly incorporate federal law and

22  regulations without modification,[3] and since those claims also do

23  not attempt to impose stricter requirements than those laws or

24  regulations, Plaintiffs' state law claims are not preempted.  These

25  claims are all based on the theory that by not complying with the

26  relevant federal laws and regulations, Defendants' labels mislead

27
28  [3] Plaintiffs' state law claims are based on California's Sherman
    Food, Drug, and Cosmetic Act ("Sherman Act"), Cal. Health & Safety
    Code § 109875 et seq., which adopts and incorporates the FDCA.

1    and deceive consumers.  The Court evaluates whether they survive a

2    Rule 12(b)(6) motion below.

3        ii.       Plaintiffs' "No MSG" Claims Are Not Preempted

4        Plaintiffs' "No MSG" allegations are based on the fact that

5    some of the Named Products -- apparently just Lay's Honey Barbecue

6    Potato Chips and Lay's Mesquite BBQ Potato Chips -- contain

7    ingredients like torula yeast and yeast extract, which are sources

8    of monosodium glutamate ("MSG") despite not technically being MSG.

9    See FAC ¶¶ 59-72.

10       Defendants argue that the FDA's formal regulation on MSG

11   labeling provides that "[a]ny monosodium glutamate used as an

12   ingredient in food shall be declared by its common or usual name

13   'monosodium glutamate,'" 21 C.F.R. § 101.22(h)(5), while "sources

14   of MSG," like yeast extract, must be labeled according to their

15   common names, like "yeast extract" or "hydrolyzed protein," see,

16   e.g., id. §§ 101.22(h)(7) (protein hydrolysates), 184.1983 (baker's

17   yeast extract).  Defendants conclude that their labels are

18   therefore proper: Named Products like Cheetos that contain MSG are

19   not labeled as having "No MSG," Def.'s RJN Ex. E, while Named

20   Products like Lay's Kettle Cooked Mesquite BBQ Potato Chips, Def.'s

21   RJN Ex. D, which contain yeast extract and torula yeast, state

22   those ingredients' common names in the nutrition box and include a

23   "No MSG" statement on the label.

24       However, Plaintiffs' opposition brief cites a November 19,

25   2012 FDA statement, made on the FDA's website section regarding

26   MSG, that purportedly clarifies the FDA's regulations here:

27           FDA requires that foods containing added MSG
             list it in the ingredient panel on the
28           packaging as monosodium glutamate. However,

18

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7

> MSG occurs naturally in ingredients such as hydrolyzed vegetable protein, autolyzed yeast, hydrolyzed yeast, yeast extract, soy extracts, and protein isolate, as well as in tomatoes and cheeses. While FDA requires that these products be listed on the ingredient panel, the agency does not require the label to also specify that they naturally contain MSG. However, foods with any ingredient that naturally contains MSG cannot claim "No MSG" or "No added MSG" on their packaging. MSG also cannot be listed as "spices and flavoring."

8  Opp'n Ex. B. This statement, made several months after Defendants

9  filed their motion to dismiss, could save Plaintiffs' state law

10  claims from preemption if it is a binding regulation, since in that

11  case Plaintiffs' claims would be in line with federal law. The

12  issue here is whether the above statement is binding and entitled

13  to deference by the Court.

14      Defendants claim that because the above FDA statement is a

15  "nonbinding, informal guidance that does not alter the FDA's formal

16  regulatory scheme," because it was not preceded by notice,

17  opportunity for public comment, or expert testimony. Reply at 13

18  (citing Christensen v. Harris Cnty., 529 U.S. 576, 587 (2000) for

19  the principal that some agency action that is not the product of

20  formal adjudication or rulemaking lacks the force of law).

21  Defendants argue that the Court owes the FDA's statement no

22  deference under Auer v. Robbins, 519 U.S. 452, 461 (1997), because

23  the language of the regulation was not ambiguous and the FDA's

24  statement on its website "does not purport to interpret any

25  regulation." Reply at 13 n.10. Defendants state that "the [FDA's

26  statement on its website] does not purport to interpret any

27  regulation," but the Court finds that it does: the regulations in

28  question are the FDA's labeling requirements for MSG as a

**United States District Court**
For the Northern District of California

1  particular ingredient and ingredients that are sources of MSG.

2      "[W]here an agency interprets its own regulation, even if

3  through an informal process, its interpretation of an ambiguous

4  regulation is controlling under Auer unless 'plainly erroneous or

5  inconsistent with the regulation.'"  Bassiri v. Xerox Corp., 463

6  F.3d 927, 930 (9th Cir. 2006) (quoting Auer, 519 U.S. at 461).  The

7  threshold question is whether the FDA's regulation on MSG and

8  sources of MSG was ambiguous.  Id. at 931.  In Bassiri, the Ninth

9  Circuit addressed whether a Department of Labor regulation was

10 ambiguous and found that it was, because the term at issue there,

11 "normal rate of compensation," "was left open to . . . various

12 interpretations" by the agency, the district court, and the

13 parties.  Id.

14     In this case, the regulations have at least two possible

15 interpretations.  The regulations might suggest that since the FDA

16 requires each type of ingredient to be listed with its proper name,

17 a "No MSG" statement would not be misleading under the regulations

18 because "MSG" means only "MSG" as an individually named ingredient.

19 Alternatively, the regulations might be interpreted to forbid such

20 a statement because they clearly acknowledge that MSG is just one

21 type of free glutamate, meaning that "No MSG" would be misleading

22 if the product contained another type of free glutamate other than

23 MSG despite properly providing that ingredient's name.

24     Under these circumstances, the FDA's statement on its website

25 appears to be its own interpretation of an ambiguous regulatory

26 scheme, and the Court finds that it owes the FDA's statement

27 deference under Auer, since the FDA's clarifying statements do not

28 appear "plainly erroneous or inconsistent with the regulation," nor

are they based on impermissible constructions of the governing statute.  Auer, 519 U.S. at 457, 461.  The FDA made clear that even though MSG and ingredients that are sources of MSG must be labeled by their proper names, a manufacturer cannot say that a product containing an ingredient that is a source of MSG, like torula yeast, therefore contains "No MSG."

Plaintiffs' state law claims about "No MSG" statements are therefore not preempted by federal law.[4]

**G.  Plaintiffs' Surviving Claims as to Plaintiffs' UCL, FAL, and CLRA Actions**

Plaintiffs' claims as to their purchases of the Named Products remain in the case.  Defendants were cognizant enough of these products and their labels to respond to Plaintiffs' claims about them in detail, and in any event, Plaintiffs meet the "who, what, when, where, and how" standard as to those products per Rule 9(b). The Court first considers Plaintiffs' allegations about each type of allegedly actionable statement and whether Plaintiffs have sufficiently pled their UCL, CLRA, and FAL claims based on these statements.  Defendants do not argue that Plaintiffs fail to plead falsity, reliance, or injury: their contentions are essentially that none of the statements in question are misleading as a matter of law.

The CLRA, FAL, and UCL, which are the basis of Plaintiff's first through sixth causes of action, are California consumer protection statutes. The UCL makes actionable any "unlawful, unfair

---

[4] While the Court finds that the regulatory statement addressed in this Section is binding and entitled to deference, the parties have yet to address the issue of how, if at all, such a clarification should apply retroactively to Defendants' statements made during the Class Period, prior to the FDA's statements.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    or fraudulent business act or practice." Cal. Bus. & Prof. Code §

2    17200.  The FAL makes it unlawful to make or disseminate any

3    statement concerning property or services that is "untrue or

4    misleading." Id. § 17500.  The CLRA also prohibits "unfair methods

5    of competition and unfair or deceptive acts or practices." Cal.

6    Civ. Code § 1770.

7       False advertising and unfair or fraudulent business practices

8    claims under the UCL, FAL or CLRA are governed by the "reasonable

9    consumer" test. Williams, 552 F.3d at 938 (citing Freeman v. Time,

10    Inc., 68 F.3d 285, 289 (9th Cir. 1995)).  Under the reasonable

11    consumer standard, a plaintiff must "show that members of the

12    public are likely to be deceived." Id. (quotation marks and

13    citations omitted).  The California Supreme Court has recognized

14    "that these laws prohibit not only advertising which is false, but

15    also advertising which[,] although true, is either actually

16    misleading or which has a capacity, likelihood, or tendency to

17    deceive or confuse the public." Id. at 938 (quoting Kasky v. Nike,

18    Inc., 45 P.3d 243, 250 (Cal. 2002)) (internal quotations omitted).

19       Generally, the question of whether a business practice is

20    deceptive presents a question of fact not suited for resolution on

21    a motion to dismiss. See id.  However, the court may in certain

22    circumstances consider the viability of the alleged consumer law

23    claims based on its review of the product packaging. See Werbel v.

24    Pepsico, Inc., No. C 09-04456 SBA, 2010 WL 2673860, at *3 (N.D.

25    Cal. July 2, 2010).  "Thus, where a court can conclude as a matter

26    of law that members of the public are not likely to be deceived by

27    the product packaging, dismissal is appropriate." Id. (citing

28    Sugawara v. Pepsico, Inc., No. 2:08-CV-01335-MCE-JFM, 2009 WL

1439115, at *3-4 (E.D. Cal. May 21, 2009) (finding that the
packaging for Cap'n Crunch cereal and its use [of] the term "Crunch
Berries" was not misleading); see also, e.g., Videtto v. Kellogg
USA, No. 2:08-cv-01324-MCE-DAD, 2009 WL 1439086, at *2 (E.D. Cal.
May 21, 2009) (dismissing UCL, FAL and CLRA claims based on
allegations that consumers were misled into believing that "Froot
Loops" cereal contained "real, nutritious fruit").

This Order addresses Plaintiffs' unjust enrichment and
warranty claims separately.

### i.    **"All Natural" Claims**

The following products bear a seal stating "Made with ALL
NATURAL Ingredients," according to the labels supplied in
Defendants' RJN: Lay's Classic Potato Chips, Lay's Kettle Cooked
Mesquite BBQ Potato Chips, and Fritos Original Corn Chips.  The
other Named Products do not include that seal and are therefore
excluded from this discussion.

Plaintiffs explain that they base their "All Natural"
allegations largely on the FDA's interpretation of "natural" as
being truthful and not misleading when "nothing artificial or
synthetic . . . has been included in, or has been added to, a food
that would not normally be expected to be in the food."  58 Fed.
Reg. 2302, 2407 (Jan. 6, 1993).  Plaintiffs allege that because
some of Defendants' products contain "artificial and unnatural
maltodextrin, ascorbic acid[,] citric acid, and caramel color in
the products," Defendants' use of "All Natural" language is
unlawful.  Opp'n at 23-24.  Defendants respond that they do not use
"All Natural" in a vacuum, since the full phrase is indeed "Made
with ALL NATURAL Ingredients."  Reply at 8-11.  Defendants assert

that no reasonable consumer would be misled by the phrase because, in context -- including the "made with . . ." language and the nutrition box -- the label only states that the product includes some all-natural ingredients, in this case potatoes and natural oils. See id. Defendants assert that a reasonable consumer, as a matter of law, would read the statement in that context and sate any further curiosity by reading the nutrition box. See id.

The Ninth Circuit provides guidance on how district courts should approach claims like this one:

> We disagree . . . that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box . . . . We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

Williams, 552 F.3d at 939.

In light of Williams, Defendants' argument fails. The label is ambiguous because the phrase "all natural," lacking a hyphen, could suggest either that the labeled product is exclusively natural or that the product simply includes some all-natural ingredients. Defendants urge otherwise, stating that the Court could find that a reasonable consumer would ascribe significance to the "made with . . ." qualifier and not be misled by the label, but the Court does not find the choice so obvious as a matter of law, and none of Defendants' cases are precisely on point. See, e.g., Red v. Kraft Foods, Inc., No. CV 10-1028-GW(AGRx), 2012 WL 5504011,

1   at *4 (C.D. Cal. Oct. 25, 2012) (obvious as a matter of law that no

2   reasonable consumer would think that a box of crackers would not be

3   composed primarily of fresh vegetables); <u>Hairston v. South Beach</u>

4   <u>Beverages Co., Inc.</u>, No. CV 12-1429-JFW(DTBx), 2012 WL 1893818, at

5   *5 (C.D. Cal. May 18, 2012) (preempted statements about fruit names

6   and vitamins had been removed from the "All Natural," phrases at

7   issue making it "impossible for Plaintiff to allege how the 'all

8   natural' language is deceptive without relying on the preempted

9   statements regarding fruit names and vitamins").

10      While courts may have found it obvious as a matter of law,

11  under the reasonable consumer standard, that crackers are not

12  primarily made of fresh vegetables, <u>Red</u>, 2012 WL 5504011, at *4, or

13  that "Froot Loops" do not contain "real, nutritious fruit,"

14  <u>Videtto</u>, 2009 WL 1439086, at *3, the Court finds that Plaintiffs

15  have adequately pled that a reasonable consumer could interpret a

16  bag of chips claiming to have been "Made with ALL NATURAL

17  Ingredients" to consist exclusively of natural ingredients,

18  contrary to the reality described in the nutrition box.  <u>See</u>

19  <u>Williams</u>, 552 F.3d at 939.  Even though the nutrition box could

20  resolve any ambiguity, the Court cannot conclude as a matter of

21  law, in the context of a Rule 12(b)(6) motion, that no reasonable

22  consumer would be deceived by the "Made with ALL NATURAL

23  Ingredients" labels.

24      Plaintiffs' "All Natural" claims under the UCL, FAL, and CLRA

25  survive as to the Named Products whose labels bear that statement

26  and include non-natural ingredients.  According to the labels

27  before the Court, this is limited to Lay's Kettle Cooked Mesquite

28  BBQ Potato Chips, since neither Lay's Classic Potato Chips nor

1  Fritos Original Corn Chips appear to contain any of the "non-

2  natural" or synthetic ingredients on which Plaintiffs' claims here

3  are premised.  Plaintiffs' "All Natural" claims are DISMISSED with

4  leave to amend as to all of the Named Products except Lay's Kettle

5  Cooked Mesquite BBQ Potato Chips.

6          ii.      <u>"No MSG" Claims</u>

7      This Order explains Plaintiffs' "No MSG" claims in Section

8  IV.F.ii, <u>supra</u>.  FDA regulations support Plaintiffs' theory as to

9  why the Named Products featuring "No MSG" labels are actionably

10 misbranded: manufacturers are forbidden from claiming that a

11 product made with an ingredient that contains MSG therefore "No

12 MSG," rendering it both a violation of the underlying regulation

13 and, as Plaintiffs claim, confusing to consumers for some of the

14 Named Products' packaging to state that the product includes "No

15 MSG" when, in fact, it does.  Therefore Plaintiffs have

16 sufficiently stated claims under the UCL, FAL, and CLRA as to the

17 Named Products that are actually labeled with the "No MSG" phrase

18 despite including what the FDA has indicated to be sources of MSG.

19         iii.     <u>"0 Grams Trans Fat" Claims</u>

20     Plaintiffs' "0 Grams Trans Fat" claims are explained in

21 Section IV.F.i, <u>supra</u>.  Plaintiffs argue that the "0 Grams Trans

22 Fat" labels are misleading when they were not, per FDA regulations,

23 accompanied with a statement directing consumers to the amount of

24 the product's fat content that exceeds the levels described in the

25 pertinent regulation, 21 C.F.R. § 101.13(h)(1).  <u>See</u> FAC ¶¶ 84-99.

26 Plaintiffs state that they relied on these claims and were harmed

27 because they would not have purchased the product had they known

28 that the products also included levels of ingredients that should

1  have been noticed on the front of the label, per 21 C.F.R. §

2  101.13(h)(1), but were omitted.  See id.

3      Defendants' response relies mainly on this Court's decision in

4  Delacruz, 2012 WL 2563857, at *8.  In Delacruz, this Court

5  dismissed a plaintiff's claims as to a "0 Grams Trans Fat"

6  statement on a nutrition bar, holding that even though that

7  statement was not accompanied by a 21 C.F.R. § 101.13(h)(1)

8  disclosure of any sort, the statement was true, and the distraction

9  the statement posed relative to fat and saturated fat contents

10  constituted neither a false statement nor a misrepresentation.  See

11  id. at *8-10.

12      Considering a motion to dismiss in this case, which has a

13  similar but ultimately distinct fact pattern from Delacruz, the

14  Court cannot conclude as a matter of law that Plaintiffs' "0 Grams

15  Trans Fat" claims would not be misleading or deceptive to a

16  reasonable consumer.  See Williams, 552 F.3d at 939.  Having

17  considered the FAC, as well as the properly noticed FDA letters and

18  regulations, the Court finds that Plaintiffs have sufficiently

19  alleged that the "0 Grams Trans Fat" statement was deceptive

20  because, accompanied by a disclosure of at least one of the

21  ingredients that 21 C.F.R. § 101.13(h)(1) requires to be disclosed,

22  they and other reasonable consumers would think that the statements

23  on the labels make accurate claims about the labeled products'

24  nutritional content when, in fact, they do not.  See FAC ¶¶ 82-99.

25  Accordingly, all Named Products whose "0 Grams Trans Fat" statement

26  is not accompanied by statements that are fully compliant with 21

27  C.F.R. § 101.13(h)(1) remain in the case.

28  ///

**United States District Court**
For the Northern District of California

### iv.   "Low Sodium," "Healthy," and Other Nutrient Claims

It is undisputed that none of the Named Products include "low in sodium," "healthy," or beneficial nutrient labels on their packaging.  FAC ¶¶ 100-34.  Plaintiffs' allegations are all based on uncited websites or advertisements, which the Court has already found are either not specified under Rules 8 or 9(b), not judicially noticeable in this matter, or are not "labeling" for any product as a matter of law.  See id.; Opp'n at 19-22.  Plaintiffs have therefore not pled a cause of action based on any of these claims.  These claims are DISMISSED with leave to amend.

### H.   **Plaintiffs' Warranty Claims**

Plaintiffs asserted breaches of warranty under the federal Magnuson-Moss Warranty Act ("MMWA") and California's Song-Beverly Consumer Warranty Act ("Song-Beverly").  Defendants argue that these claims fail as a matter of law.  MTD at 22-23.  They are right.  Under their MMWA claim, Plaintiffs allege that Defendants' "All Natural," "No MSG," and other health and nutrient content claims constitute express written warranties, which MMWA defines as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time.

15 U.S.C. § 2301(6)(A) (emphasis added).  The MMWA's disjunctive language ("or") identifies two kinds of written warranties, the first warranting a "defect free" product and the second warranting a product that will "meet a specified level of performance over a specified period of time."  Plaintiffs also allege that Defendants

**United States District Court**
For the Northern District of California

1   breached their implied warranties under the MMWA.  While Defendants

2   argue that Plaintiffs simply have not pled claims under the MMWA,

3   Plaintiffs make no more than a conclusory defense of these claims

4   in their opposition brief.  <u>See</u> Opp'n at 25 n.13.

5        The Court finds that Plaintiffs' claim fails as a matter of

6   law.  Plaintiffs allege that Defendants' package labels are

7   warranties that Defendants breached by selling, at premium prices,

8   food products whose labels do not comply with federal or California

9   labeling requirements.  FAC ¶¶ 247-49.  This Court has held

10  repeatedly that such arguments are meritless, since product

11  descriptions like "All Natural" labels "do not constitute

12  warranties against a product defect." <u>Astiana v. Dreyer's Grand</u>

13  <u>Ice Cream, Inc.</u>, No. C 11-2910 EMC, 2012 WL 2990766, at *3 (N.D.

14  Cal. July 20, 2012), <u>mot. to certify appeal denied</u>, No. C 11-2910

15  EMC, 2012 WL 3892391 (Oct. 12, 2012); <u>see also, e.g.</u>, <u>Colucci</u>, 2012

16  WL 6737800, at *5-6; <u>Jones</u>, 2012 WL 6569393, at *12-13 (citing

17  cases).  Further, none of the labels promise that the product "will

18  meet a specified level of performance over a specified period of

19  time."  The labels were, at most, product descriptions.

20  Plaintiffs' MMWA claims are DISMISSED WITH PREJUDICE.  Amendment

21  could not save these claims and would be prejudicial to Defendants.

22       Plaintiffs' Song-Beverly claims also fail.  Plaintiffs allege

23  that Defendants' products contain express and implied warranties

24  under Song-Beverly, which Defendants breached by selling misbranded

25  products at premium prices.  FAC ¶¶ 237-40.  Song-Beverly defines

26  an "express warranty" as "[a] written statement arising out of a

27  sale to consumer of a <u>consumer good</u> pursuant to which the

28  manufacturer, distributor, or retailer undertakes to preserve or

29

**United States District Court**
For the Northern District of California

1   maintain the utility or performance of the consumer good or provide

2   compensation if there is a failure in utility or performance."

3   Cal. Civ. Code § 1791.2 (emphasis added).  Implied warranties under

4   Song-Beverly likewise attach to "consumer goods."  <u>Id.</u> § 1791.1.  A

5   "consumer good" is "any new product or part thereof that is used,

6   bought, or leased primarily for personal, family, or household

7   purposes, <u>except for . . . consumables</u>."  <u>Id.</u> § 1791(a).

8        Plaintiffs' claims under Song-Beverly are deficient as a

9   matter of law: Song-Beverly does not provide for express or implied

10  warranties as to consumables, and so by definition Plaintiff cannot

11  plead breaches of those warranties under Song-Beverly as to any of

12  Defendants' food products.  Plaintiffs' Song-Beverly claims are

13  DISMISSED WITH PREJUDICE for the same reason Plaintiffs' MMWA

14  claims were.

15      **I.    <u>Plaintiffs' Restitution Based on Unjust Enrichment Claim</u>**

16       Defendants argue that Plaintiffs' cause of action for

17  restitution based on unjust enrichment fails as a matter of law

18  because (1) "there is no cause of action in California for unjust

19  enrichment," (2) Plaintiffs have not identified an unjustly

20  conferred benefit warranting redress, (3) Plaintiffs cannot allege

21  a quasi-contractual remedy because they alleged that their

22  relationship with Defendants was governed by binding express

23  warranties, and (4) Plaintiffs' request for equitable relief is

24  improper because there is an adequate remedy at law under the

25  statutes Plaintiffs cite.  MTD at 21-22.  Plaintiffs respond that

26  they have properly pled an unjust enrichment claim because they

27  alleged that Defendants were enriched by means of "unlawful,

28  fraudulent, and misleading labeling."  Opp'n at 25 (citing FAC ¶¶

1  239, 246-49).  In support of this response Plaintiffs cite Colucci,

2  in which this Court held that unjust enrichment had been properly

3  pled because those plaintiffs pled it in the alternative.  2012 WL

4  6737800, at *10.

5      Plaintiffs did not plead that their unjust enrichment claim is

6  based on quasi-contract or pled in the alternative.  See FAC ¶¶

7  228-31.  They simply assert that because they pled the elements

8  correctly, they are entitled to the claim.  Opp'n at 25.  This is

9  wrong.  Cf. Colucci, 2012 WL 6737800, at *10 ("[C]laims for

10  restitution or unjust enrichment may survive the pleading stage

11  when pled as an alternative avenue of relief, though the claims, as

12  alternatives, may not afford relief if other claims do.").  This

13  claim is DISMISSED with leave to amend if Plaintiffs wish to plead

14  it in the alternative.

15

16  **V.   CONCLUSION**

17      For the reasons explained above, Defendants Frito-Lay North

18  America, Inc. and PepsiCo, Inc.'s motion to dismiss Plaintiffs

19  Markus Wilson and Doug Campen's first amended complaint is GRANTED

20  in part and DENIED in part.  The Court orders as follows:

21      • Plaintiffs' claims as to PepsiCo are DISMISSED with leave

22        to amend.

23      • Plaintiffs' claims as to all products except the products

24        named and described in the complaint, Lay's Classic

25        Potato Chips, Lay's Honey Barbeque Potato Chips, Lay's

26        Kettle Cooked Mesquite BBQ Potato Chips, Cheetos Puffs,

27        and Fritos Original Corn Chips (collectively the "Named

28        Products"), are DISMISSED with leave to amend.

- As to the Named Products and Defendant Frito-Lay, Plaintiffs' UCL, CLRA, and FAL claims based on all statements except the "All Natural," "No MSG," and "0 Grams Trans Fat" statements are DISMISSED with leave to amend.  Plaintiffs' claims as to those three statements are undisturbed.  Claims as to these statutes that are based on content appearing on websites or advertisements, including the "low sodium," health claims, and "other" claims, are DISMISSED with leave to amend.

- Plaintiffs' claim for breaches of warranties under the Magnuson-Moss Warranty Act and the Song-Beverly Consumer Warranty Act are DISMISSED WITH PREJUDICE.

- Plaintiffs' claim for restitution based on unjust enrichment is DISMISSED with leave to amend.

Plaintiffs may amend these claims if they can specify exactly which products, regulations or laws, and other relevant elements are at issue, and otherwise correct the deficiencies described above. Plaintiffs are instructed to keep their pleadings short, plain, and plausible.  Boilerplate pleadings are strongly discouraged.

    Plaintiffs have thirty (30) days from this Order's signature date to file an amended complaint, or the deficient claims may be dismissed with prejudice.


    IT IS SO ORDERED.


    Dated: April 1, 2013

                                   _____
                                   UNITED STATES DISTRICT JUDGE