1   Ben F. Pierce Gore (SBN 128515)
    PRATT & ASSOCIATES
2   1871 The Alameda, Suite 425
    San Jose, CA 95126
3   Telephone:  (408) 429-6506
    Fax:  (408) 369-0752
4   pgore@prattattorneys.com

5   *Attorney for Plaintiffs*

6                IN THE UNITED STATES DISTRICT COURT

7            FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                     SAN FRANCISCO DIVISION

9
    MARKUS WILSON and DOUG              Case No.  3:12-CV-01586-SC
10  CAMPEN, individually and on behalf of all
    others similarly situated,
11                                      **SECOND AMENDED CLASS ACTION
              Plaintiffs,               AND REPRESENTATIVE ACTION
12                                      COMPLAINT FOR DAMAGES,
    v.                                  EQUITABLE AND INJUNCTIVE RELIEF**
13
    FRITO-LAY NORTH AMERICA, INC.,
14                                      **JURY TRIAL DEMANDED**
              Defendant.
15

16         Plaintiffs, Markus Wilson and Doug Campen, ("Plaintiffs") through their undersigned

17  attorneys, bring this lawsuit against Defendant Frito-Lay North America, Inc. ("Frito-Lay" or

18  "Defendant") as to their own acts upon personal knowledge and as to all other matters upon

19  information and belief.

20                              **DEFINITIONS**

21      1.      "Class Period" is March 29, 2008 to the present.

22      2.      "Purchased Products" are the products listed below (2a-2e) that were purchased by

23  Plaintiffs during the Class Period.  Plaintiff Wilson and Plaintiff Campen purchased 2a.

24  Additionally, Plaintiff Campen purchased 2b-2e.  Pictures of the Plaintiffs' Purchased Products

25  are attached as Exhibits 1-5 and specific descriptions of the labels are included below:

26              a.   Lay's Classic Potato Chips;

27              b.   Lay's Honey Barbecue Potato Chips;

28

1          c.  Kettle Cooked BBQ Potato Chips;

2          d.  Cheetos Puffs; and

3          e.  Fritos Original Corn Chips.

4      3.     "Class Products" are the products listed below in paragraph 178 that were

5 purchased by Class Members and contain the same or similar ingredients and/or the same or

6 similar labels as the "Purchased Products."

7                            **SUMMARY OF THE CASE**

8      4.     Plaintiffs' case has two distinct facets.  First, the "UCL unlawful" part. Plaintiffs'

9 first cause of action is brought pursuant to the unlawful prong of California's Unfair Competition

10 Law, Cal. Bus. & Prof. Code § 17200 ("UCL").  Plaintiffs allege that Defendant packages and

11 labels the Purchased Products in violation of California's Sherman Law which adopts,

12 incorporates, and is identical to the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.*

13 ("FDCA").  These violations (which do not require a finding that the labels are "misleading")

14 render the Purchased Products "misbranded" which is no small thing.  Under California law, a

15 food product that is misbranded cannot legally be manufactured, advertised, distributed, held or

16 sold.  Misbranded products cannot be legally sold, possessed, have no economic value, and are

17 legally worthless.  Indeed, the sale or possession of misbranded food is a criminal act in

18 California.  The sale of such products is illegal under federal law and can result in the seizure of

19 misbranded products and the imprisonment of those involved.  This "misbranding" – standing

20 alone without any allegations of deception by Defendant or review of or reliance on the labels by

21 Plaintiffs – give rise to Plaintiffs' first cause of action under the UCL.  To state a claim under the

22 unlawful prong, Plaintiffs need only allege that they would not have purchased the product had

23 they known it was misbranded that would have resulted in their possessing a product that is

24 illegal to own or possess. This claim does not sound in fraud.

25      5.     Under California law, which is identical to federal law, Defendant's products listed

26 below are unlawful because they are misbranded due to violations of the Sherman Law, as alleged

27 herein:

28

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:12-CV-01586 (SC)

2

| Purchased Product | Relevant Label Language | Sherman Law Violation (directly or through incorporation of FDCA) |
|---|---|---|
| Lay's Classic Potato Chips | "0g Trans Fat" | 21 C.F.R. § 101.13<br>21 C.F.R. § 1.21<br>Cal. Health & Safety Code § 110100<br>Cal. Health & Safety Code § 110660 |
| Lay's Honey Barbecue Potato Chips | "0g Trans Fat"<br>"All Natural" | 21 C.F.R. § 101.13<br>21 C.F.R. § 101.22<br>21 C.F.R. § 1.21<br>Cal. Health & Safety Code § 110740<br>Cal. Health & Safety Code § 110100<br>Cal. Health & Safety Code § 110660 |
| Kettle Cooked BBQ Potato Chips | "0g Trans Fat"<br>"All Natural"<br>"No MSG" | 21 C.F.R. § 101.13<br>21 C.F.R. § 101.22<br>21 C.F.R. § 1.21<br>Cal. Health & Safety Code § 110740<br>Cal. Health & Safety Code § 110100<br>Cal. Health & Safety Code § 110660 |
| Cheetos Puffs | "0g Trans Fat" | 21 C.F.R. § 101.13<br>21 C.F.R. § 1.21<br>Cal. Health & Safety Code § 110100<br>Cal. Health & Safety Code § 110660 |
| Fritos Original Corn Chips | "0g Trans Fat" | 21 C.F.R. § 101.13<br>21 C.F.R. § 1.21<br>Cal. Health & Safety Code § 110100<br>Cal. Health & Safety Code § 110660 |

6.     Defendant's products which contain the same or similar label and/or ingredients listed are also unlawful under California and federal because they are misbranded due to violations of the Sherman Law.

7.     Defendant also violated the Sherman Law provisions listed in paragraphs 144-157 for manufacturing, offered to sell, deliver, etc. misbranded food.

8.     Second, the "misleading" part. Plaintiffs allege that the illegal statements contained on the labels of the Purchased Products and the Class Products – aside from being unlawfully misbranded under the Sherman Law – are also misleading, deceptive, unfair and

1  fraudulent.  Plaintiffs describe these labels and how they are misleading.  Plaintiffs allege that

2  prior to purchase they reviewed the illegal statements on the labels of the Purchased Products,

3  reasonably relied in substantial part on the unlawful label statements, and were thereby deceived,

4  in deciding to purchase the Purchased Products.  Had Plaintiffs known that these food products

5  were misbranded there would have been no purchases.

6          9.      All of the Purchased Products and the Class Products have labels that are (i)

7  unlawful and misbranded under the Sherman Law and (ii) misleading and deceptive.  Plaintiffs

8  did not know, and had no reason to know, that Defendant's Purchased Products were misbranded

9  under the Sherman Law and bore food labeling claims that failed to meet the requirements to

10  make those food labeling claims. Similarly, Plaintiffs did not know, and had no reason to know,

11  that the labels on Defendant's Purchased Products were false and misleading.

12                                          **BACKGROUND**

13          10.     Every day, millions of Americans purchase and consume packaged foods.

14  Identical federal and California laws require truthful, accurate information on the labels of

15  packaged foods. This case is about a company that flouts those laws. The law is clear: misbranded

16  food cannot legally be manufactured, held, advertised, distributed or sold. Misbranded food has

17  no economic value and is worthless as a matter of law, and purchasers of misbranded food are

18  entitled to a refund of their purchase price.

19          11.     Defendant manufactures, markets and sells a variety of foods, including the

20  Purchased Products and the Class Products.

21          12.     Defendant has implemented a campaign to label its products as healthy and

22  associated with wellness.

23          13.     Defendant recognizes that health and wellness claims drive food sales, and

24  actively promotes the purported health benefits of its products, notwithstanding the fact that these

25  promotions violate California and federal law.

26          14.     If a manufacturer is going to make a claim on a food label, they must not violate

27  certain California laws and ensure that consumers are not misled by food labels.  As described

28  more fully below, Defendant has made, and continues to make, unlawful labeling claims in

1    violation of federal and California laws that govern the types of representations that can be made

2    on food labels. Defendant's product labels violate California law and therefore are misbranded.

3          15.    These California food labeling laws recognize that reasonable consumers are likely

4    to choose products claiming to have a health or nutritional benefit over otherwise similar food

5    products that do not claim such benefits. More importantly, these laws recognize that the failure

6    to disclose the presence of risk-increasing nutrients is deceptive because it conveys to consumers

7    the net impression that a food makes only positive contributions to a diet, or does not contain any

8    nutrients at levels that raise the risk of diet-related disease or health-related condition.

9          16.    Plaintiffs' claims are brought under California statutes and for violations of the

10   Sherman Law. Under California law, which is identical to federal law, the labels and labeling of

11   Defendant's products listed below are unlawful and also misleading in the following manner:

12              A.    Making unlawful and misleading "All Natural" claims;

13              B.    Making unlawful and misleading "No MSG "claims;

14              C.    Making unlawful and misleading nutrient content claims and failing to
15                    meet the minimum nutritional requirements that are legally required
16                    for the nutrient content claims that are being made;

17              D.    Making unlawful and misleading "0g Trans Fat" claims;

18              E.    Making unlawful and misleading website "low sodium" claims; and

19              F.    Making unlawful and unapproved health claims on its website[1] that are
20                    prohibited by law.

21          17.    Defendant's products, referenced in paragraphs 44, 62 and 84 which contain the

22   same unlawful statements and the same ingredients as the Purchased Products are similarly

23   unlawful and misleading. In determining whether or not a plaintiff had standing to pursue claims

24   on products she had not purchased, but which contained the same or similar label and/or

25   ingredients, this Court concluded:

26          there is more than enough similarity between the Chocolate Peanut Butter Bars
             allegedly purchased and the other nineteen varieties of nutrition bars identified in

27   _____

28   [1] Since the date of Plaintiff's initial filing, Defendant has taken steps to remove some of the
     language complained and challenged as being illegal by Plaintiffs from their website,
     www.lays.com.

the Complaint. The accused products are all of a single kind, that is, they are all nutrition bars. They share a uniform size and shape. On casual inspection, the only obvious difference between the bars is their flavor. Closer inspection reveals some difference between the ingredients used in different flavors, but the similarities are more striking: six of the nine challenged ingredients appear in all twenty nutrition bar flavors. *See* Compl. ¶ 42. Most importantly, all twenty flavors bear the same challenged label: "All–Natural Nutrition Bars."

*Colucci v. ZonePerfect Nutrition Co.,* 12-2907-SC, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28, 2012).

18.     These practices are not only illegal but they mislead consumers and deprive them of the information they require to make informed purchasing decisions. Thus, for example, a mother who reads labels because she wants to purchase all natural and healthy food, and does not wish to feed her child unhealthy foods or highly processed foods, would be misled by Defendant's practices and labeling.

19.     Similarly, California and federal laws have placed numerous requirements on food companies that are designed to ensure that the claims that companies make about their products to consumers are truthful, accurate and backed by acceptable forms of scientific proof. When companies such as Defendant make false and unlawful nutrient content and health-related and other labeling claims that are prohibited by regulation, consumers such as Plaintiffs are misled.

20.     Identical California and federal laws regulate the content of labels on packaged food.  The requirements of the federal FDCA were adopted by the California legislature in the Sherman Law.  Under both the Sherman Law and FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling. Cal. Health & Safety Law 110660; 21 U.S.C. § 343(a).

21.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.  If any one representation in the labeling is misleading, the entire food is misbranded, and no other statement in the labeling can cure a misleading statement.  "Misleading" is judged in reference to "the ignorant, the unthinking and the credulous who, when making a purchase, do not stop to analyze." *United States v. El-O-Pathic Pharmacy*, 192 F.2d 62, 75 (9th Cir. 1951). Under the FDCA, it is not necessary to prove

1    that anyone was actually misled.

2        22.    In promoting the nutritional and health benefits of its Purchased Products and the

3    Class Products, Defendant has claimed to understand the importance of communicating

4    responsibly about its products.  Nevertheless, Defendant has made, and continues to make, false

5    and deceptive claims about its Purchased Products and the Class Products in violation of identical

6    federal and California laws that govern the types of representations that can be made on food

7    labels.

8        23.    Defendant also has made, and continues to make, unlawful claims on food labels

9    of its Purchased Products and the Class Products that are prohibited by federal and California law

10   and which render these products misbranded. Under federal and California law, Defendant's

11   Purchased Products and the Class Products cannot legally be manufactured, advertised,

12   distributed, held or sold.

13       24.    Defendant also has made, and continues to make unlawful claims on its website,

14   which is also considered food labeling, of its Purchased Products and the Class Products that are

15   prohibited by federal and California law and which render these products misbranded. Under

16   federal and California law, Defendant's Purchased Products and Class Products cannot legally be

17   manufactured, advertised, distributed, held or sold.

18       25.    Defendant's violations of law are the illegal advertising, marketing, distribution,

19   delivery and sale of Defendant's misbranded Purchased Products and the Class Products to

20   consumers in California and throughout the United States.

21                                    **PARTIES**

22       26.    Plaintiff Markus Wilson is a resident of Santa Rosa, California who purchased

23   Defendant's Lay's Classic Potato Chips in California during the Class Period.  Attached hereto

24   are copies of photographs of the package label on the product purchased by Plaintiff Markus

25   Wilson (Exhibit 1).  Plaintiff  Wilson purchased more than $25.00 of Lay's Classic Potato Chips

26   during the Class Period.

27       27.    Plaintiff Doug Campen is a resident of Santa Rosa who purchased Defendant's

28   Lay's Classic Potato Chips, Lay's Honey Barbecue Potato Chips (Exhibit 2), Lay's Kettle

1    Cooked Mesquite BBQ Potato Chips (Exhibit 3), Cheetos Puffs (Exhibit 4), and Fritos Original

2    Corn Chips (Exhibit 5) in California during the Class Period.  Exhibits 2-5 are copies of

3    photographs of product labels on the products purchased by Plaintiff Doug Campen.   Plaintiff

4    Campen purchased more than $25.00 of these products during the Class Period.

5          28.     Defendant Frito-Lay North America, Inc. is a Texas corporation with its principal

6    place of business at 7701 Legacy Drive, Plano Texas.

7                          **JURISDICTION AND VENUE**

8          29.     This Court has original jurisdiction over this action pursuant to 28 U.S.C.

9    § 1332(d) because this is a class action in which:  (1) there are over 100 members in the proposed

10    class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the

11    claims of the proposed class members exceed $5,000,000 in the aggregate.

12          30.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to

13    28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is

14    between citizens of different states.

15          31.     The Court has personal jurisdiction over Defendant because a substantial portion

16    of the wrongdoing alleged in this Second Amended Complaint occurred in California, Defendant

17    is authorized to do business in California, Defendant has sufficient minimum contacts with

18    California, and Defendant otherwise intentionally avails itself of the markets in California

19    through the promotion, marketing and sale of merchandise, sufficient to render the exercise of

20    jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

21          32.     Because a substantial part of the events or omissions giving rise to these claims

22    occurred in this District and because the Court has personal jurisdiction over Defendant, venue is

23    proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

24                             **FACTUAL ALLEGATIONS**

25    **A.      Identical California and Federal Laws Regulate Food Labeling**

26          33.     Food manufacturers are required to comply with identical federal and state laws

27    and regulations that govern the labeling of food products.  First and foremost among these is the

28    FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

34.     Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state." California Health & Safety Code § 110100.

35.     In addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific enumerated federal food laws and regulations. For example, food products are misbranded under California Health & Safety Code § 110660 if their labeling is false and misleading in one or more particulars; are misbranded under California Health & Safety Code § 110665 if their labeling fails to conform to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110670 if their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and regulations adopted thereto; are misbranded under California Health & Safety Code § 110705 if words, statements and other information required by the Sherman Law to appear on their labeling are either missing or not sufficiently conspicuous; are misbranded under California Health & Safety Code § 110735 if they are represented as having special dietary uses but fail to bear labeling that adequately informs consumers of their value for that use; and are misbranded under California Health & Safety Code § 110740 if they contain artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose that fact on their labeling.

## B.     FDA Enforcement History

36.     In recent years the FDA has become increasingly concerned that food manufacturers have been disregarding food labeling regulations. To address this concern, the FDA informed the food industry of its concerns and placed the industry on notice that food labeling compliance was an area of enforcement priority.

37.     In October 2009, the FDA issued its 2009 *Guidance for Industry:  Letter regarding Point of Purchase Food Labeling* ("2009 FOP Guidance") to the food industry that stated in part:

> FDA's research has found that with FOP labeling, people are less likely to check the Nutrition Facts label on the information panel of foods (usually, the back or side of the package). It is thus essential that both the criteria and symbols used in front-of-package and shelf-labeling systems be nutritionally sound, well-designed to help consumers make informed and healthy food choices, and not be false or misleading. The agency is currently analyzing FOP labels that appear to be misleading.  The agency is also looking for symbols that either expressly or by implication are nutrient content claims. We are assessing the criteria established by food manufacturers for such symbols and comparing them to our regulatory criteria.
>
> It is important to note that nutrition-related FOP and shelf labeling, while currently voluntary, is subject to the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. Therefore, FOP and shelf labeling that is used in a manner that is false or misleading misbrands the products it accompanies. Similarly, a food that bears FOP or shelf labeling with a nutrient content claim that does not comply with the regulatory criteria for the claim as defined in Title 21 Code of Federal Regulations (CFR) 101.13 and Subpart D of Part 101 is misbranded. We will consider enforcement actions against clear violations of these established labeling requirements. . .
>
> … Accurate food labeling information can assist consumers in making healthy nutritional choices. FDA intends to monitor and evaluate the various FOP labeling systems and their effect on consumers' food choices and perceptions. FDA recommends that manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA laws and regulations. FDA will proceed with enforcement action against products that bear FOP labeling that are explicit or implied nutrient content claims and that are not consistent with current nutrient content claim requirements. FDA will also proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading.

38.     The 2009 FOP Guidance is attached hereto as Exhibit 6.

39.     Defendant had actual knowledge of the 2009 FOP Guidance.

40.     Although Defendant had actual knowledge of the 2009 FOP Guidance, Defendant did not remove the (i) unlawful and (ii) misleading labels from its Purchased Products or the Class Products.

41.     On March 3, 2010, the FDA issued an "*Open Letter to Industry from [FDA Commissioner] Dr. Hamburg*" ("Open Letter"). The Open Letter reiterated the FDA's concern regarding false and misleading labeling by food manufacturers.  In pertinent part, the letter stated:

In the early 1990s, the Food and Drug Administration (FDA) and the food industry worked together to create a uniform national system of nutrition labeling, which includes the now-iconic Nutrition Facts panel on most food packages. Our citizens appreciate that effort, and many use this nutrition information to make food choices. Today, ready access to reliable information about the calorie and nutrient content of food is even more important, given the prevalence of obesity and diet-related diseases in the United States. This need is highlighted by the announcement recently by the First Lady of a coordinated national campaign to reduce the incidence of obesity among our citizens, particularly our children.

With that in mind, I have made improving the scientific accuracy and usefulness of food labeling one of my priorities as Commissioner of Food and Drugs. The latest focus in this area, of course, is on information provided on the principal display panel of food packages and commonly referred to as "front-of-pack" labeling. The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections. …

As we move forward in those areas, I must note, however, that there is one area in which more progress is needed. As you will recall, we recently expressed concern, in a "Dear Industry" letter, about the number and variety of label claims that may not help consumers distinguish healthy food choices from less healthy ones and, indeed, may be false or misleading.

At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990. Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.

To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace. While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices. For example:

- Nutrient content claims that FDA has authorized for use on foods for adults are not permitted on foods for children under two. Such claims are highly inappropriate when they appear on food for infants and toddlers because it is well known that the nutritional needs of the very young are different than those of adults.

- Claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat, and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel.

- Products that claim to treat or mitigate disease are considered to be drugs and must meet the regulatory requirements for drugs, including the requirement to prove that the product is safe and effective for its intended use.

- Misleading "healthy" claims continue to appear on foods that do not meet the long- and well-established definition for use of that term.

- Juice products that mislead consumers into believing they consist entirely of a single juice are still on the market.  Despite numerous admonitions from FDA over the years, we continue to see juice blends being inaccurately labeled as single-juice products.

These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole.  In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products.  That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.

I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling.  I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

*See* Exhibit 7.

42.     Defendant has continued to mislabel its Purchased Products and the Class Products despite the express admonition not to do so contained in the Open Letter.

**THE PURCHASED PRODUCTS AND THEIR SHERMAN LAW VIOLATIONS**

A.     **Defendant Makes Unlawful and Misleading "All Natural" Claims**

43.     The following Purchased Products contain an "All Natural" claim:

Lay's Honey Barbecue Potato Chips
Kettle Cooked Mesquite BBQ Potato Chips

44.     The following products are Defendant's products which contain the same "Made with Natural Ingredients" or "All Natural" label statement as Lay's Honey Barbecue Potato Chips and Kettle Cooked Mesquite BBQ Potato Chips and are unlawful and misleading:

Lay's Barbecue Flavored Potato Chips
Lay's Sour Cream And Onion Potato Chips
Lay's Cajun Herb & Spice Flavored Potato Chips
Lay's Cheddar & Sour Cream Flavored Potato Chips
Lay's Chile Limon Flavored Potato Chips

Lay's Dill Pickle Flavored Potato Chips
Lay's Tangy Carolina BBQ Flavored Potato Chips
Lay's Garden Tomato & Basil Flavored Potato Chips
Lay's Sweet Southern Heat Flavored Potato Chips
Lay's Classic Blt Potato Chips
Lay's Flamin Hot Potato Chips
Lay's Kettle Cooked Original Potato Chips
Lay's Kettle Cooked Applewood Smoked BBQ Flavored Potato Chips
Lay's Kettle Cooked Sea Salt & Vinegar Flavored Potato Chips
Lay's Kettle Cooked Sea Salt & Cracked Pepper Flavored Potato Chips
Lay's Kettle Cooked Sharp Cheddar Flavored Potato Chips
Lay's Kettle Cooked Jalapeno Flavored Potato Chips
Lay's Kettle Cooked Maui Onion Flavored Potato Chips
Lay's Kettle Cooked Reduced Fat Original Potato Chips
Lay's Kettle Cooked Parmesan And Sun Dried Tomato Potato Chips
Lay's Kettle Cooked Harvest Ranch Potato Chips
Lay's Kettle Cooked Spicy Cayenne Potato Chips
Lay's Kettle Cooked Creamy Mediterranean Herb Potato Chips
Lay's Limon Potato Chips
Lay's Balsamic Sweet Onion Potato Chips
Lay's Chipotle Ranch Potato Chips
Lay's Creamy Garden Ranch Potato Chips
Lay's Salt And Vinegar Potato Chips
Lay's Honey Mustard Potato Chips
Lay's Wavy Au Gratin Potato Chips
Lay's Wavy Ranch Potato Chips
Lay's Wavy Hickory Barbecue Potato Chips
Miss Vickie's Jalapeno Kettle Cooked Flavored Potato Chips
Miss Vickie's Sea Salt & Cracked Pepper Flavored Potato Chips
Miss Vickie's Sea Salt & Vinegar Kettle Cooked Flavored Potato Chips
Miss Vickie's Smokehouse BBQ Kettle Cooked Flavored Potato Chips
Cheetos Simply Natural Puffs White Cheddar Cheese Flavored Snacks
Tostitos Artisan Recipes Baked Three Cheese Queso Flavored Tortilla Chips
Tostitos Artisan Recipes Grilled Red Pepper & Tomato Salsa Flavored Tortilla
    Chips
Tostitos Artisan Recipes Roasted Garlic & Black Bean Tortilla Chips
Tostitos Artisan Recipes Toasted Southwestern Spices Tortilla Chips
Tostitos Hint Of Lime Flavored Tortilla Chips
Tostitos Hint Of Pepper Jack Flavored Tortilla Chips
Tostitos Hint Of Jalapeno Flavored Tortilla Chips
Sunchips Original Multigrain Snacks
Sunchips French Onion Flavored Multigrain Snacks
Sunchips Garden Salsa Flavored Multigrain Snacks
Sunchips Harvest Cheddar Flavored Multigrain Snacks
Sunchips Sweet & Spicy BBQ Flavored Multigrain Snacks

Exhibit 8 is a compilation of the labels of the above referenced products which contain the same

or similar "Made with All Natural Ingredients" or "All Natural" stamp as Lay's Honey Barbecue

Potato Chips and Kettle Cooked Mesquite BBQ Potato Chips.[2]

---

[2] Defendant also listed the following products: as "All Natural" products on its website,
www.fritolaw.com/your-health/naturally-delicious. A copy of this page is attached as Exhibit 12,
as the page is no longer available.

45.     The following unlawful and misleading language appears on the label of Lay's Honey Barbecue Potato Chips and Kettle Cooked BBQ Potato Chips and Defendant's products listed in paragraph 44: *"Made with All Natural Ingredients"* or *"All Natural."*

46.     Plaintiff Campen reasonably relied on this label representation when making his purchase decisions and was misled by this representation as described below.  Plaintiff Campen would not have purchased Lay's Honey Barbecue Potato Chips and Kettle Cooked Mesquite BBQ Potato Chips had he known the truth about Lay's Honey Barbecue Potato Chips and Kettle Cooked Mesquite BBQ Potato Chips, i.e. that the products were not truly " made with all natural ingredients" or "all natural".  Plaintiff Campen had other food alternatives that satisfied such standards and Plaintiff Campen also had cheaper alternatives.  Reasonable consumers would have been misled in the same manner as Plaintiff Campen.

47.     Also, Plaintiff Campen reasonably relied on the fact that Lay's Honey Barbecue Potato Chips and Kettle Cooked Mesquite BBQ Potato Chips were not misbranded under the Sherman Law and were therefore legal to buy and possess.  Plaintiff Campen would not have purchased Lay's Honey Barbecue Potato Chips and Kettle Cooked Mesquite BBQ Potato Chips had they known it was illegal to purchase and possess these products.

48.     In its rule-making and warning letters to manufacturers, the FDA has repeatedly stated its policy to restrict the use of the term "natural" in connection with added color, synthetic substances and flavors as provided in 21 C.F.R. § 101.22.

49.     The FDA has also repeatedly affirmed its policy regarding the use of the term "natural" as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food.

50.     For example, 21 C.F.R. § 70.3(f) makes clear that "where a food substance such as beet juice is deliberately used as a color, as in pink lemonade, it is a color additive." Similarly, any coloring or preservative can preclude the use of the term "natural" even if the coloring or preservative is derived from natural sources.  Further, the FDA distinguishes between natural and artificial flavors in 21 C.F.R. § 101.22.

51.     Defendant's "all natural" labeling practices violate FDA Compliance Guide CPG Sec. 587.100, which states:  [t]he use of the words "food color added," "natural color," or similar words containing the term "food" or "natural" may be erroneously interpreted to mean the color is a naturally occurring constituent in the food.  Since all added colors result in an artificially colored food, we would object to the declaration of any added color as "food" or "natural."

52.     Likewise, California Health & Safety Code § 110740 prohibits the use of artificial flavoring, artificial coloring and chemical preservatives unless those ingredients are adequately disclosed on the labeling.

53.     The FDA has sent out numerous warning letters concerning this issue.  *See e.g.*, Exhibit 9 (August 16, 2001 FDA warning letter to Oak Tree Farm Dairy because there was citric acid in its all natural iced tea); Exhibit 10 (August 29, 2001 FDA warning letter to Hirzel Canning Company because there was citric acid or calcium chloride in its all natural tomato products); Exhibit 11 (August 2, 2001 FDA warning letter to GMP Manufacturing, Inc. stating: "[t]he products, Cytomax Exercise and Recovery Drink (Peachy Keen flavor) and Cytomax Lite (Lemon Iced Tea Flavor) are misbranded because they contain colors but are labeled using the term "no artificial colors.").  Defendant is aware of these FDA warning letters.

54.     Defendant promoted such falsely labeled and misrepresented products with "the largest integrated marketing campaign in the history of the company [Frito-Lay]." This campaign included television advertising print advertising, in-store promotions, digital and social mediums and packaging.  Defendant also promoted its "All Natural" and "Made with All Natural Ingredients" campaign on its website, www.fritolaw.com/your-health/naturally-delicious.[3] Moreover, advertising, marketing and packaging was designed to drive consumers to online content and product labels invited consumers to go to these online sources of information. Plaintiff Campen was exposed to this campaign and as discussed below misled by specific misrepresentations on the labels made by Defendant's as part of this campaign on which he relied. In particular, he was misled by Defendant's false "All Natural" and "Made with All

---

[3] A copy of this page is attached as Exhibit 12, as the page is no longer available on Defendant's website.

Natural Ingredients" claims on the product labels that were the focus of this unprecedented campaign.

55.     As part of this campaign, Defendant began placing seals or emblems on their food product's packaging that indicated that these products were "Made With All Natural Ingredients," "All Natural" and that the products contained "No MSG" and "No Preservatives" and "No Artificial Flavors." Defendant called this seal or emblem its "all natural stamp" and told consumers it was designed so that consumers could "easily identify our products made with all natural ingredients" and help them "find all natural Frito-Lay products." This seal or emblem was bolstered by other similar statements elsewhere on the labels. Frito Lay further represented to consumers that [t]he products made with all natural ingredients do not contain any artificial ingredients or synthetic ingredients, and they do not contain any artificial flavors or artificial preservatives, or ingredients such as monosodium glutamate (MSG)." These statements and representations were false as the Lay's Honey Barbecue Potato Chips contained ingredients that were not "all natural" particularly yeast extract, caramel color and citric acid, and the Lay's Kettle Cooked Mesquite BBQ Potato Chips contained ingredients that were not "all natural" particularly maltodextrin, yeast extract and citric acid. Similarly, the products listed in paragraph 42 also contain ingredients that are not "all natural" or "made with all natural ingredients." In addition, the Defendant further obscured the unnatural nature of its ingredients by failing to disclose the function of its ingredients as required by 21 C.F.R. §101.22 and thus failed to reveal that ingredients like citric acid were functioning as artificial flavors, preservatives or added colors.

56.     Defendant has unlawfully labeled (i) Lay's Honey Barbecue Potato Chips, (ii), Lay's Kettle Cooked Mesquite BBQ Potato Chips and (iii) the similarly labeled products identified in paragraph 44 as "made with all natural ingredients" or "all natural" when they actually contain artificial ingredients and flavorings, artificial coloring and chemical preservatives.  Consumers are thus misled into purchasing such products with synthetic unnatural ingredients that are not "all natural" as falsely represented on their labeling.  Defendant's products in this respect are misbranded under federal and California law.

57.     Plaintiff Campen bought Lay's Honey Barbecue Potato Chips which bore Defendant's "All Natural" stamp and Lay's Kettle Cooked Mesquite BBQ Potato Chips which bore Defendant's "All Natural Ingredients" stamp which Defendant falsely represented as being "All Natural." These products were falsely labeled and misbranded because contrary to the various false representations that they were "All Natural" they contained various ingredients such as artificial ingredients and flavorings, artificial coloring and chemical preservatives. For example, Lay's Honey Barbecue Potato Chips contained ingredients that were not "all natural" such as caramel color and citric acid, and the Lay's Kettle Cooked Mesquite BBQ Potato Chips contained ingredients that were not "all natural" such as maltodextrin and citric acid. Similarly, the products listed in paragraph 42 also contain ingredients that are not "all natural" or "made with all natural ingredients."

58.     For these reasons, Defendant's "all natural" labels are (i) false and misleading and in violation of identical California and federal law, and (ii) the products at issue are misbranded as a matter of law. Therefore, these products are misbranded as a matter of California and federal law and cannot be sold or held and thus are legally worthless and have no economic value.

59.     Defendant's claims in this respect are false and misleading and Lay's Honey Barbecue Potato Chips, Lay's Kettle Cooked Mesquite Barbecue Potato Chips and the similarly labeled products identified in paragraph 44 are in this respect misbranded under identical California and federal laws. Misbranded products cannot be legally sold and have no economic value and are legally worthless. Plaintiff and members of the Class who purchased Lay's Honey Barbecue Potato Chips, Lay's Kettle Cooked Mesquite Barbecue Potato Chips and the similarly labeled products identified in paragraph 44 paid an unwarranted premium for these products.

60.     Plaintiff and members of the Class would not have purchased Lay's Honey Barbecue Potato Chips, Lay's Kettle Cooked Mesquite Barbecue Potato Chips and the similarly labeled products identified in paragraph 44 if they had known they were illegal to sell or possess.

**B.      Defendant Makes Unlawful and Misleading "No MSG" Claims**

61.     The following Purchased Products were falsely represented by the Defendant as having "No MSG":

Lay's Honey Barbecue Potato Chips
Kettle Cooked BBQ Potato Chips

62.     The following products are Defendant's products which contain the same  "All

Natural" stamp and the same false statement that the products contain "No MSG" as the Lay's

Honey Barbecue Chips, Kettle Cooked BBQ Potato Chips and are unlawful and misleading:

Lay's Barbecue Flavored Potato Chips
Lay's Cajun Herb & Spice Flavored Potato Chips
Lay's Cheddar & Sour Cream Flavored Potato Chips
Lay's Chile Limon Flavored Potato Chips
Lay's Dill Pickle Flavored Potato Chips
Lay's Garden Tomato & Basil Flavored Potato Chips
Lay's Honey BBQ Flavored Potato Chips
Lay's Kettle Cooked Applewood Smoked BBQ Flavored Potato Chips
Lay's Kettle Cooked Jalapeno Flavored Potato Chips
Lay's Kettle Cooked Maui Onion Flavored Potato Chips
Lay's Kettle Cooked Sea Salt & Cracked Pepper Flavored Potato Chips
Lay's Kettle Cooked Sea Salt & Vinegar Flavored Potato Chips
Lay's Kettle Cooked Sharp Cheddar Flavored Potato Chips
Lay's Sour Cream & Onion Flavored Potato Chips
Lay's Sweet Southern Heat Flavored Potato Chips
Lay's Tangy Carolina BBQ Flavored Potato Chips
Lay's Wavy Augratin Potato Chips
Lay's Wavy Hickory Barbecue Potato Chips
Lay's Wavy Ranch Potato Chips
Miss Vickie's Jalapeno Kettle Cooked Flavored Potato Chips
Miss Vickie's Sea Salt & Cracked Pepper Flavored Potato Chips
Miss Vickie's Sea Salt & Vinegar Kettle Cooked Flavored Potato Chips
Miss Vickie's Smokehouse BBQ Kettle Cooked Flavored Potato Chips
Cheetos Simply Natural Puffs White Cheddar Cheese Flavored Snacks
Tostitos Artisan Recipes Baked Three Cheese Queso Flavored Tortilla Chips
Tostitos Artisan Recipes Grilled Red Pepper & Tomato Salsa Flavored Tortilla
       Chips
Tostitos Artisan Recipes Roasted Garlic & Black Bean Tortilla Chips
Tostitos Artisan Recipes Toasted Southwestern Spices Tortilla Chips
Tostitos Hint Of Lime Flavored Tortilla Chips
Tostitos Hint Of Pepper Jack Flavored Tortilla Chips
Tostitos Hint Of Jalapeno Flavored Tortilla Chips
Sunchips French Onion Flavored Multigrain Snacks
Sunchips Garden Salsa Flavored Multigrain Snacks
Sunchips Harvest Cheddar Flavored Multigrain Snacks
Sunchips Sweet & Spicy BBQ Flavored Multigrain Snacks

Exhibit 13 is a compilation of the labels of the above referenced products which contain the same

false representation by the Defendant as having "No MSG" as Lay's Honey Barbecue Potato

Chips and Kettle Cooked Mesquite BBQ Potato Chips.[4]

---

[4] Defendant made the same false "No MSG" statement about the following products on its
website:  LAY'S® Cheesy Garlic Bread Flavored Potato Chips; LAY'S® Chicken & Waffles

63.     The Lay's Kettle Cooked Mesquite BBQ Potato Chips and the products listed in paragraph 62 expressly stated that the product contained "No MSG." *See* Exhibit 3. In addition, the Lay's Honey Barbecue Potato Chips' label bore Defendant's  "Made with All Natural Ingredients" stamp, which as discussed below, means "No MSG" as defined by Defendant. *See* Exhibit 2.

64.     Plaintiff Campen reasonably relied on this label representation when making his purchase decision and was misled by this representation as described below.  Plaintiff Campen would not have purchased Lay's Honey Barbecue Potato Chips and Kettle Cooked Mesquite BBQ Potato Chips had he known the truth about these products, i.e. that the "No MSG" claim was false.  Plaintiff Campen had other food alternatives that satisfied such standards and Plaintiff Campen also had cheaper alternatives.  Reasonable consumers would have been misled in the same manner as Plaintiff Campen.

65.     Also, Plaintiff Campen reasonably relied on the fact that Lay's Honey Barbecue Potato Chips and Kettle Cooked Mesquite BBQ Potato Chips were not misbranded under the Sherman Law and were therefore legal to buy and possess.  Plaintiff Campen would not have purchased Lay's Honey Barbecue Potato Chips and Kettle Cooked Mesquite BBQ Potato Chips had he known it was illegal to purchase and possess the products.

66.     Defendant recognized that consumers were increasingly seeking to avoid monosodium glutamate ("MSG") and thus were looking for "No MSG" food options. According to Defendant "[s]ome people report sensitivity to MSG and prefer to avoid foods containing MSG."

67.     Rather than reformulate all of their food products so that they did not contain the MSG, Defendant knew consumers were seeking to avoid, Defendant simply mislabeled a number

---

Flavored Potato Chips; LAY'S® Sriracha Flavored Potato Chips; LAY'S® FLAMIN' HOT® Flavored Potato Chips; LAY'S® TAPATIO® Limon Flavored Potato Chips; LAY'S® Wavy Roasted Garlic & Sea Salt Flavored Potato Chips; BAKED! LAY'S® Barbecue Flavored Potato Crisps; BAKED! LAY'S® Parmesan & Tuscan Herb Flavored Potato Crisps; DORITOS® DINAMITA® Chipotle Crema Flavored Tortilla Chips; MAUI STYLE® Salt & Vinegar Flavored Potato Chips; CHESTER'S® Butter Flavored Puffcorn Snacks and CHESTER'S® Cheese Flavored Puffcorn Snacks. http://www.fritolay.com/your-health/us-products-not-containing-msg.html. A copy of this page is attached as Exhibit 14.

1   of their MSG laden products and placed false "No MSG" representations on these products'

2   labels and labeling and falsely depicted these products in their advertising and marketing

3   materials and on their websites as being free of MSG.

4        68.    Defendant was correct in its statement that some people are sensitive or intolerant

5   of MSG and that some consumers seek to avoid the chemical. The FDA's Center for Food Safety

6   and Applied Nutrition has received hundreds of reports of MSG related adverse reactions and

7   complaints.  A study commissioned by the FDA reported that a percentage of the population may

8   react to MSG and develop MSG complex, a condition characterized by one or more of the

9   following symptoms: burning sensation in the back of the neck, forearms, and chest; numbness in

10  the back of the neck radiating to the arms and back; tingling, warmth and weakness in the face,

11  temples, upper back, neck and arms; facial pressure or tightness; chest pain; headache; nausea;

12  rapid heartbeat; bronchospasm (difficulty breathing) in MSG intolerant people with asthma;

13  drowsiness and weakness. *See* FDA Backgrounder (August 31, 1995), attached as Exhibit 15.

14       69.    According to the FDA:

> A food that bears a false or misleading claim about the absence of MSG is misbranded under section 403(a) of the act. FDA has repeatedly advised consumers and industry that it considers such claims as "No MSG" and "No added MSG" to be misleading when they are used on the labels of foods made with ingredients that contain substantial levels of free glutamate (Refs. 25, 26, and 27). FDA has authority to take action against such misbranded foods under existing law, but because of the proliferation of such claims on products made with ingredients that contain substantial levels of free glutamate, the agency believes that formal criteria would be useful to define more precisely the circumstances under which labels bearing claims about the absence of MSG are misleading. While such criteria are being developed, however, FDA will continue to take regulatory action as appropriate against false or patently misleading claims about the absence of MSG, such as "No MSG" claims on products made with MSG-containing ingredients, hydrolyzed proteins, or autolyzed yeast extracts. Food Labeling; Declaration of Free Glutamate in Food, 61 FR 48102 (September 12, 1996).

23       70.    The FDA reiterated its position in November 2012 stating:

> MSG occurs naturally in ingredients such as hydrolyzed vegetable protein, autolyzed yeast, hydrolyzed yeast, yeast extract, soy extracts, and protein isolate, as well as in tomatoes and cheeses. While FDA requires that these products be listed on the ingredient panel, the agency does not require the label to also specify that they naturally contain MSG. **However, foods with any ingredient that naturally contains MSG cannot claim "No MSG" or "No added MSG" on their packaging**. MSG also cannot be listed as "spices and flavoring."

1   http://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm3

2   28728.htm (emphasis added) (attached as Exhibit 16).

3       71.     The FDA also noted that there were numerous books and media reports reporting

4   "widespread and sometimes life-threatening adverse reactions to MSG" and claims that "even

5   small amounts of manufactured glutamates may cause adverse reactions." FDA Backgrounder

6   (August 31, 1995) (attached as Exhibit 15).

7       72.     In light of these facts, many consumers choose to avoid or at least limit MSG in

8   their diet. Plaintiff Campen was such a consumer. Plaintiff Campen was misled by Defendant into

9   purchasing Lay's Honey Barbecue Potato Chips and Kettle Cooked Mesquite BBQ Potato Chips

10  containing MSG that were misrepresented as having "No MSG" by Defendant.

11      73.     The FDA has indicated that "consumers frequently use the term MSG to mean "all

12  free glutamate" and therefore "[f]or this reason, FDA considers foods who labels say 'No MSG'

13  or 'No Added MSG' to be misleading if the food contains ingredients that are sources of free

14  glutamates, such as hydrolyzed protein." FDA Backgrounder (August 31, 1995) (attached as

15  Exhibit 15). Despite this guidance, Defendant engaged in exactly the practice the FDA warned

16  was "misleading" to consumers. In doing so Defendant misled the Plaintiff Campen and members

17  of the Class who reasonably relied on Defendant's false and misleading "No MSG" claims.

18      74.     As discussed above, Defendant promoted such falsely labeled and misrepresented

19  products with "the largest integrated marketing campaign in the history of the company [Frito-

20  Lay]." This campaign included television advertising print advertising, in-store promotions,

21  digital and social mediums and packaging.  Defendant also promoted its "No MSG" campaign on

22  its website, http://www.fritolay.com/your-health/us-products-not-containing-msg.html.[5]

23  Moreover, advertising, marketing and packaging was designed to drive consumers to online

24  content and product labels invited consumers to go to these online sources of information.

25  Plaintiff Campen was exposed to this campaign and as discussed below misled by specific

26  misrepresentations on the labels made by Defendant as part of this campaign on which he relied.

27  In particular, he was misled by Defendant's false "No MSG" claims on the product labels that

28

[5] *See* attached Exhibit 14.  As discussed below, Defendant's website is also considered "labeling."

1    were the focus of this unprecedented campaign, including Lay's Honey Barbecue Potato Chips

2    and Kettle Cooked Mesquite BBQ Potato Chips.

3         75.    As part of this campaign, Defendant began placing seals or emblems on their food

4    product's packaging that indicated that these products were "Made With All Natural Ingredients"

5    and that the products contained "No MSG" and "No Preservatives" and "No Artificial Flavors."

6    Defendant called this seal or emblem its "all natural stamp" and told consumers it was designed

7    so that consumers could "easily identify our products made with all natural ingredients" and help

8    them "find all natural Frito-Lay products." This seal or emblem was bolstered by other similar

9    statements elsewhere on the labels. Frito Lay further represented to consumers that [t]he products

10   made with all natural ingredients do not contain any artificial ingredients or synthetic ingredients,

11   and they do not contain any artificial flavors or artificial preservatives, or ingredients such as

12   monosodium glutamate (MSG)." http://www.fritolay.com/about-us/press-release-20101228.html

13   (attached as Exhibit 17). These statements and representations were false as Lay's Honey

14   Barbecue Potato Chips and Kettle Cooked Mesquite BBQ Potato Chips and the products listed in

15   paragraph 62 contained MSG.

16        76.    Defendant also promised that any Frito-Lay products containing MSG will list

17   MSG in the ingredient statement. This was false as Defendant failed to disclose the presence of

18   MSG in their products or their products' ingredient lists.

19        77.    Plaintiff Campen bought Lay's Honey Barbecue Potato Chips which bore

20   Defendant's "All Natural" stamp and Lay's Kettle Cooked Mesquite BBQ Potato Chips which

21   bore Defendant's "All Natural Ingredients" stamp which Defendant falsely represented as having

22   "No MSG." These products were falsely labeled and misbranded because contrary to the various

23   false representations that they contained "No MSG" they contained various ingredients such as

24   yeast extract that are sources of MSG. For example, Lay's Honey Barbecue Potato Chips and

25   Kettle Cooked Mesquite BBQ Potato Chips purchased by Plaintiff Campen were falsely

26   represented as having "NO MSG" but in fact each contained yeast extract, a source of MSG.

27        78.    A reasonable consumer would expect that when Defendant labels its products with

28   a "No MSG" claim the product and the product's ingredients will not contain MSG or free

glutamates and would not be using the term "No MSG" in way deemed "misleading" by the FDA. A reasonable consumer would also expect that when Defendant labels its products with a "No MSG" claim the product and the product ingredients have no MSG under the common use of that word. A reasonable consumer would understand that "NO MSG" products do not contain MSG or free glutamates.

79.   Consumers such as Plaintiff Campen are thus misled into purchasing Defendant's purportedly "No MSG" products that actually contain MSG or free glutamates and that are not MSG free as falsely represented on their labeling. Defendant's Lay's Honey Barbecue Potato Chips and Kettle Cooked Mesquite BBQ Potato Chips and the products listed in paragraph 62 in this respect are misbranded under federal and California law and violate Cal. Health & Safety Code § 110660.

80.   Plaintiff Campen relied on Defendant's "No MSG" claims when making his purchase decisions during the Class Period and was misled because he erroneously believed the express misrepresentations that Defendant's Lay's Honey Barbecue Potato Chips and Kettle Cooked Mesquite BBQ Potato Chips he was purchasing were devoid of MSG and free glutamates as represented. Purchasing "No MSG" products was important to Plaintiff Campen in trying to buy "healthy" food products. Plaintiff Campen would not have purchased Lay's Honey Barbecue Potato Chips and Kettle Cooked Mesquite BBQ Potato Chips had he known that Defendant's products contained MSG or glutamates.

81.   For these reasons, Defendant's "No MSG" claims are false and misleading and in violation of identical California and federal law, and the products at issue are misbranded as a matter of law. Therefore, Defendant's Lay's Honey Barbecue Potato Chips and Kettle Cooked Mesquite BBQ Potato Chips and the products listed in paragraph 62 are misbranded as a matter of California and federal law and cannot be sold or held and thus are legally worthless and have no economic value. Plaintiff Campen and members of the Class who purchased Lay's Honey Barbecue Potato Chips and Kettle Cooked Mesquite BBQ Potato Chips and the products listed in paragraph 62 paid an unwarranted premium for these products.

82. Plaintiff Campen and members of the Class would not have purchased Lay's Honey Barbecue Potato Chips and Kettle Cooked Mesquite BBQ Potato Chips and the products listed in paragraph 62 if they had known the products were illegal to sell or possess.

**E.** **Defendant's Makes Unlawful and Misleading "0g Trans Fat" Claim**

83. The following Purchased Products contain a unlawful and misleading "0g Trans Fat" claim:

>Lay's Classic Potato Chips
>Lay's Honey Barbecue Potato Chips
>Lay's Kettle Cooked Mesquite BBQ
>Cheetos Puffs
>Fritos Original Corn Chips

84. The following products are Defendant's products which contain the same "0g Trans Fat" label statement as the above referenced Purchased Products and are unlawful and misleading:

>Lay's Barbecue Flavored Potato Chips
>Lay's Sour Cream And Onion Potato Chips
>Lay's Cheddar & Sour Cream Flavored Potato Chips
>Lay's Chile Limon Flavored Potato Chips
>Lay's Dill Pickle Flavored Potato Chips
>Lay's Sweet Southern Heat Flavored Potato Chips
>Lay's Classic Blt Potato Chips
>Lay's Flamin Hot Potato Chips
>Lay's Lightly Salted Potato Chips
>Ruffles Original Potato Chips
>Ruffles Sour Cream & Onion Flavored Potato Chips
>Ruffles Cheddar And Sour Cream Flavored Potato Chips
>Ruffles Ultimate Kickin' Jalapeno Ranch Flavored Potato Chips
>Ruffles Ultimate Sweet & Smokin' BBQ Flavored Potato Chips
>Lay's Kettle Cooked Original Potato Chips
>Lay's Kettle Cooked Applewood Smoked BBQ Flavored Potato Chips
>Lay's Kettle Cooked Sea Salt & Vinegar Flavored Potato Chips
>Lay's Kettle Cooked Sea Salt & Cracked Pepper Flavored Potato Chips
>Lay's Kettle Cooked Sharp Cheddar Flavored Potato Chips
>Lay's Kettle Cooked Jalapeno Flavored Potato Chips
>Lay's Kettle Cooked Maui Onion Flavored Potato Chips
>Lay's Kettle Cooked Reduced Fat Original Potato Chips
>Lay's Kettle Cooked Parmesan And Sun Dried Tomato Potato Chips
>Lay's Kettle Cooked Harvest Ranch Potato Chips
>Lay's Kettle Cooked Spicy Cayenne Potato Chips
>Lay's Kettle Cooked Creamy Mediterranean Herb Potato Chips
>Lay's Limon Potato Chips
>Lay's Salt And Vinegar Potato Chips
>Lay's Wavy Original Potato Chips
>Lay's Wavy Au Gratin Potato Chips
>Lay's Wavy Ranch Potato Chips
>Lay's Wavy Hickory Barbecue Potato Chips

Miss Vickie's Simply Sea Salt Kettle Cooked Potato Chips
Miss Vickie's Jalapeno Kettle Cooked Flavored Potato Chips
Miss Vickie's Sea Salt & Cracked Pepper Flavored Potato Chips
Miss Vickie's Sea Salt & Vinegar Kettle Cooked Flavored Potato Chips
Miss Vickie's Smokehouse BBQ Kettle Cooked Flavored Potato Chips
Cheetos Crunchy Cheddar Jalapeno Flavored Snacks
Cheetos Crunchy Cheese Flavored Snacks
Cheetos Crunchy Flamin' Hot Cheese Flavored Snacks
Cheetos Crunchy Flamin' Hot Limon Cheese Flavored Snacks
Cheetos Crunchy Salsa Con Queso Cheese Flavored Snacks
Cheetos Crunchy Xxtra Flamin' Hot Cheese Flavored Snacks
Cheetos Puffs Flamin' Hot Cheese Flavored Snacks
Cheetos Puffs Twisted Cheese Flavored Snacks
Chester's Butter Flavored Puffcorn Snacks
Chester's Cheese Flavored Puffcorn Snacks
Fritos BBQ Flavored Corn Chips
Fritos Chili Cheese Flavored Corn Chips
Fritos Flamin' Hot Flavored Corn Chips
Fritos Flavor Twists Honey BBQ Flavored Corn Chips
Fritos Lightly Salted Corn Chips
Fritos Scoops! Corn Chips

Exhibit 18 is a compilation of the labels of the above referenced products which contain the same or similar "0g Trans Fat" label as Lay's Classic Potato Chips, Lay's Honey Barbecue Potato Chips, Lay's Kettle Cooked Mesquite BBQ Potato Chips, Cheetos Puffs and Fritos Original Corn Chips.

85.     The following unlawful and misleading language appears on the labels of Defendant's (i) Lay's Classic Potato Chips, (ii) Lay's Honey Barbecue Potato Chips, (iii) Lay's Kettle Cooked Mesquite BBQ Potato Chips, (iv) Cheetos Puffs, (v) Fritos Original Corn Chips and (vi) the products listed in paragraph 84: *"0g Trans Fat."*

86.     Plaintiffs reasonably relied on this label representation in paragraph 83 and based and justified the decision to purchase Lay's Classic Potato Chips, Lay's Honey Barbecue Potato Chips, Lay's Kettle Cooked Mesquite BBQ Potato Chips, Cheetos Puffs and Fritos Original Corn Chips, in substantial part, on this label representation.  Also, Plaintiffs reasonably relied on the fact that Lay's Classic Potato Chips, Lay's Honey Barbecue Potato Chips, Lay's Kettle Cooked Mesquite BBQ Potato Chips, Cheetos Puffs and Fritos Original Corn Chips were not misbranded under the Sherman Law and were therefore legal to buy and possess.  Plaintiffs would not have purchased Lay's Classic Potato Chips, Lay's Honey Barbecue Potato Chips, Lay's Kettle Cooked

1    Mesquite BBQ Potato Chips, Cheetos Puffs and Fritos Original Corn Chips had they known it

2    was illegal to purchase and possess the products.

3        87.    Plaintiffs reasonably relied on this label representation when making their

4    purchase decision and were misled by this "0g Trans Fat" representation as described below.

5    Plaintiffs would not have purchased Lay's Classic Potato Chips, Lay's Honey Barbecue Potato

6    Chips, Lay's Kettle Cooked Mesquite BBQ Potato Chips, Cheetos Puffs and Fritos Original Corn

7    Chips had they known the truth about these products, i.e. that the products failed to only make

8    positive contributions to Plaintiffs' diet and did contain one or more nutrients like total fat at

9    levels in the food that increased the risk of disease or health related condition that is diet related.

10   Plaintiffs had other food alternatives that satisfied such standards and Plaintiffs also had cheaper

11   alternatives.  Reasonable consumers would have been misled in the same manner as Plaintiffs.

12       88.    To appeal to consumer preferences, Defendant has repeatedly made improper

13   nutrient content claims on products containing disqualifying levels of fat, saturated fat,

14   cholesterol or sodium.  These nutrient content claims were improper because Defendant failed to

15   include disclosure statements required by law that are designed to inform consumers of the

16   inherently unhealthy nature of those products in violation of 21 C.F.R. § 101.13(h), which has

17   been incorporated in California's Sherman Law.

18       89.    21 C.F.R. § 101.13 (h)(l) provides that:

19       If a food … contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams
         (mg) of cholesterol, or 480 mg of sodium per reference amount customarily
20       consumed, per labeled serving, or, for a food with a reference amount customarily
         consumed of 30 g or less … per 50 g … then that food must bear a statement
21       disclosing that the nutrient exceeding the specified level is present in the food as
         follows: "See nutrition information for __ content" with the blank filled in with
22       the identity of the nutrient exceeding the specified level, e.g., "See nutrition
         information for fat content."
23
         90.    21 C.F.R. § 1.21 establishes that failure to disclose material facts is  a violation of
24
     the disclosure rules and is *per se* "misleading."
25
         91.    Defendant repeatedly violates these provisions on its which prominently states "0g
26
     Trans Fat" claim on the label despite disqualifying levels of fat that far exceed the 13 gram
27
     disclosure threshold.
28

92.     Pursuant to 21 C.F.R. § 101.13(h), Defendant is prohibited from making the unqualified nutrient claims of "0 grams Trans Fat" or "No Trans Fat" claim on its food products if its products contain fat in excess of 13 grams, saturated fat in excess of 4 grams, cholesterol in excess of 60 milligrams, or sodium in excess of 480mg per 50 grams, unless the product also displays a disclosure statement that informs consumers of the product's fat, saturated fat and sodium levels.  These regulations are intended to ensure that consumers are not misled into the erroneous belief that a product that claims, for instance, to be low in trans fat, but actually has other unhealthy fat levels, is a healthy choice, because of the lack of trans fats.

93.     Nevertheless, Defendant's products label states that this product contains "0g Trans Fat" without such a disclosure even though the products contain fat in excess of 13 grams.

94.     Based on the fat, saturated fat, cholesterol and sodium content in Defendant's (i) Lay's Classic Potato Chips, (ii) Lay's Honey Barbecue Potato Chips, (iii) Lay's Kettle Cooked Mesquite BBQ Potato Chips, (iv) Cheetos Puffs,  (v) Fritos Original Corn Chips and (vi) the similarly labeled products identified in paragraph 84, pursuant to federal and California law, Defendant must include a warning statement adjacent to the trans fat nutrient claim that informs consumers of the high levels of fat, saturated fat, cholesterol or sodium.  No such disclosure statement currently exists on these products. Therefore, Defendant's (i) Lay's Classic Potato Chips, (ii) Lay's Honey Barbecue Potato Chips, (iii) Lay's Kettle Cooked Mesquite BBQ Potato Chips, (iv) Cheetos Puffs, (v) Fritos Original Corn Chips and (vi) the similarly labeled products identified in paragraph 84 are misbranded as a matter of federal and California law and cannot be sold and because of this fact have no economic value and are legally worthless.

95.     In October 2009, the FDA issued its FOP Guidance, to address its concerns about front of package labels. Despite the issuance of the 2009 FOP Guidance, Defendant did not remove the improper and misleading "0g Trans Fat" nutrient content claims from its (i) Lay's Classic Potato Chips, (ii) Lay's Honey Barbecue Potato Chips, (iii) Lay's Kettle Cooked Mesquite BBQ Potato Chips, (iv) Cheetos Puffs,  (v) Fritos Original Corn Chips and (vi) the similarly labeled products identified in paragraph 84.

96.     On March 3, 2010, the FDA issued an Open Letter which reiterated the FDA's concern regarding false and misleading labeling by food manufacturers. In pertinent part the letter stated:

> To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace.  While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices. For example:
>
> - Claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat, and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel.
>
> These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole.  In my conversations with industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products.  That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.
>
> I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling.  I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

http://www.fda.gov/Food/IngredientsPackagingLabeling/LabelingNutrition/ucm202733.htm (attached as Exhibit 7).

97.     Notwithstanding the Open Letter, Defendant has utilized this improper trans fat nutrient content claims, despite the express guidance of the FDA in the Open Letter that "claims that a product is free of trans fats, which imply that the product is a better choice than products without the claim, can be misleading when a product is high in saturated fat [or sodium, cholesterol or total fat], and especially so when the claim is not accompanied by the required statement referring consumers to the more complete information on the Nutrition Facts panel." *Id.*

98.     Defendant has also ignored the FDA's Guidance for Industry, A Food Labeling Guide, which detailed the FDA's guidance on how to make nutrient content claims about food products that contain "one or more nutrients [like total fat at levels] in the food that may increase the risk of disease or health related condition that is diet related."  Defendant has utilized improper trans fat nutrient claims on the labels of its Defendant's (i) Lay's Classic Potato Chips, (ii) Lay's Honey Barbecue Potato Chips, (iii) Lay's Kettle Cooked Mesquite BBQ Potato Chips, (iv) Cheetos Puffs,  (v) Fritos Original Corn Chips and (vi) the similarly labeled products identified in paragraph 84  As such, these products ran afoul of FDA guidance as well as California and federal law.

99.     In addition to its guidance to industry, the FDA has sent warning letters to the industry, including many of Defendant's peer food manufacturers, for the same types of improper "0 grams Trans Fat" and "No Trans Fat" nutrient content claims described above.  In these letters the FDA indicated that as a result of the same type of 0 gram trans fat claims utilized by Defendant, products were in "violation of the Federal Food, Drug, and Cosmetic Act … and the applicable regulations in Title 21, Code of Federal Regulations, Part 101 (21 CFR 101)" and "misbranded within the meaning of section 403 because the product label bears a nutrient content claim but does not meet the requirements to make the claim."  *See* Exhibit 19.

100.     The warning letters were hardly isolated, as the FDA has issued at least nine other warning letters to other companies for the same type of improper "0g Trans Fat" nutrient content claims at issue in this case.

101.     Courts have found this exact kind of label representation to be misleading.  "A disqualifying level of, say, saturated fat is four grams per "reference amount customarily consumed." 21 C.F.R. § 101.13(h)(1). If this level is exceeded, a food purveyor is prohibited from making an unqualified claim touting the health benefits of another nutrient in the food. This is because the Agency has reasoned that the beneficent claim, standing alone, would be misleading." *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010). This Court has already held that a disqualifying claim such as Defendant's "0 grams Trans Fat," even if accurate, may be unlawful and misleading. *Wilson v. Frito-Lay North America, Inc.*, 2013 WL

1320468 (N.D. April 1, 2013)(Plaintiffs sufficiently alleged claim that the "0 Grams Trans Fat" statement on bags of potato chips was deceptive because, accompanied by a disclosure of at least one of the ingredients that 21 C.F.R. § 101.13(h)(1) requires to be disclosed, they and other reasonable consumers would think that the statements on the labels make accurate claims about the labeled products' nutritional content when, in fact, they do not; disqualifying claim such as; "0 grams Trans Fat," even if accurate, may be unlawful and misleading).  In *Chacanaca*, Judge Seeborg explained:

> The federal regulatory statute provides for this precise scenario: that is, it categorizes as misleading and therefore prohibited even true nutrient content claims if the presence of another "disqualifying" nutrient exceeds and amount established by regulation. The Agency has by regulation imposed "disqualifying" levels for only four nutrients: total fat, saturated fat, cholesterol, and sodium. 21C.F.R. §§ 101.13(h)(1), 101.14(a)(4). It is important to note how disqualifying claims work. A disqualifying level of say, saturated fat is four grams per "reference amount customarily consumed." 21C.F.R. § 101.13 (h)(1). If this level is exceeded, a food purveyor is prohibited from making an unqualified claim touting the health benefits of another nutrient in the food. This is because the Agency has reasoned that the beneficent claim, standing alone, would be misleading.

*Chacanaca*, 752 F. Supp. 2d at 1122 (emphasis in original).

102.     Despite the FDA's numerous warnings to industry, Defendant has continued to sell (i) Lay's Classic Potato Chips, (ii) Lay's Honey Barbecue Potato Chips, (iii) Lay's Kettle Cooked Mesquite BBQ Potato Chips, (iv) Cheetos Puffs, (v) Fritos Original Corn Chips and (vi) the similarly labeled products identified in paragraph 84 bearing improper "0g Trans Fat" nutrient content claims without meeting the requirements to make this claim.

103.     Plaintiffs did not know, and had no reason to know, that Defendant's Lay's Classic Potato Chips, Lay's Honey Barbecue Potato Chips, Kettle Cooked BBQ, Cheetos Puffs and Fritos were misbranded, and bore "0g Trans Fat" nutrient claims despite failing to meet the requirements to make those nutrient claims. Plaintiffs read and relied upon Defendant's front of package "0g Trans Fat" statement.  Plaintiffs were equally unaware that Defendant's (i) Lay's Classic Potato Chips, (ii) Lay's Honey Barbecue Potato Chips, (iii) Kettle Cooked BBQ Potato Chips, (iv) Cheetos Puffs and (v) Fritos Original Corn Chips contained one or more nutrients like total fat at levels in the food that, according to the FDA, "may increase the risk of disease or

1    health related condition that is diet related."  Because of Defendant's unlawful "0g Trans Fat"

2    claim, Plaintiffs were misled into the erroneous belief that the product only made positive

3    contributions to their diet and did not contain one or more nutrients like total fat at levels in the

4    food that may increase the risk of disease or health related condition that is diet related.

5        104.    Plaintiffs and the Class would not have purchased (i) Lay's Classic Potato Chips,

6    (ii) Lay's Honey Barbecue Potato Chips, (iii) Lay's Kettle Cooked Mesquite BBQ Potato Chips,

7    (iv) Cheetos Puffs, (v) Fritos Original Corn Chips and (vi) the similarly labeled products

8    identified in paragraph  84.

9        **D.     Defendant's Website Claims Render Certain Products Misbranded**

10           **Statements on Websites Constitute Labeling**

11       105.    Both federal and California law and the FDA both consider websites to be part of a

12   label.  The Food, Drug and Cosmetic Act defines a label as "a display of written, printed, or

13   graphic matter upon the immediate container of any article…" 21 U.S.C. § 321(k).  Labeling is

14   defined under the Act as "all labels and other written, printed or graphic matter (1) upon any

15   article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. §

16   321(m).  FDA guidance states: "if a label for a product contained a statement that referred the

17   consumer to a specific website for additional information about a claim for a product, the website

18   is likely to be 'labeling.'"

19   http://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/Label

20   ingNutrition/ucm053425.htm (attached as Exhibit 20).

21       106.    In addition to this guidance, the FDA has also repeatedly issued warning letters

22   indicating websites — without specific reference to a product claim — are labeling under 21

23   U.S.C § 321(m).  In a warning letter to Unilever, Inc., the FDA stated:

24           A link to your website, www.lipton.com appears on your … product label. This
             website directs U.S. visitors to another website, www.liptont.com. **We have**
25           **determined that your websites, www.lipton.com and www.liptont.com are**
             **labeling within the meaning of section 201(m) of the Act** for your … product.
26

27   http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2010/ucm224509.htm (attached

28   as Exhibit 21).

Also, in a warning letter to Ocean Spray Cranberries, Inc., the FDA explained:

> The Food and Drug Administration (FDA) reviewed your firm's internet labeling for your Ocean Spray juice products. The container label for your grapefruit juice products directs the consumer to your website via the statement "For grapefruit health facts visit: www.oceanspraygrapefruit.com." **The container labels for your other Ocean Spray juice products also bear your internet website address "www.oceanspray.com." We have concluded that the labeling found on your internet sites causes your Ocean Spray juice products to be in violation of the Federal Food, Drug, and Cosmetic Act [the Act], and Title 21, Code of Federal Regulations [21 CFR]**.

http://www.fda.gov/downloads/ICECI/EnforcementActions/WarningLetters/2001/UCM069236.pdf (emphasis added)(attached as Exhibit 22).  By placing their website address, www.lays.com, on the labels of its Lay's Classic Potato Chips and Lay's Kettle Cooked Mesquite BBQ Potato Chips, Defendant invites and encourages consumers to look at the nutritional facts and health claims made on the website, which supports the unlawful claims made both on the product labels and on the website itself. The website is misbranded because it is part of the product labeling.

### Website "Good Source of" Claims

107.    The Defendant's website, fritolay.com, contains unlawful and misleading statements that the following Purchased Products were a "Good Source of Vitamin C."

> Lay's Classic Potato Chips
> Lay's Kettle Cooked Mesquite BBQ Potato Chips

108.    The Defendant's website, fritolay.com, also contains unlawful and misleading statements that the following similar products were a "Good Source of Vitamin C":

> Lay's Barbecue Flavored Potato Chips
> Lay's Cheddar & Sour Cream Flavored Potato Chips
> Lay's Chile Lemon Flavored Potato Chips
> Lay's Dill Pickle Flavored Potato Chips
> Lay's Flamin' Hot  Flavored Potato Chips
> Lay's Kettle Cooked Jalapeno Flavored Potato Chips
> Lay's Kettle Cooked Maui Onion Flavored Potato Chips
> Lay's Kettle Cooked Original Potato Chips
> Lay's Kettle Cooked Sea Salt & Vinegar Flavored Potato Chips
> Lay's Salt and Vinegar Potato Chips
> Lay's Simply Natural Sea Salt Flavored Thick Cut Potato Chips
> Lay's Sour Cream & Onion Flavored Potato Chips
> Lay's Wavy Au Gratin Flavored Potato Chips
> Lay's Wavy Original Potato Chips
> Maui Style Onion Flavored Potato Chips
> Maui Style Regular Potato Chips
> Miss Vickie's Jalapeno Kettle Cooked Flavored Potato Chips

Miss Vickie's Sea Salt & Vinegar Kettle Cooked Flavored Potato Chips
Miss Vickie's Simply Sea Salt Kettle Cooked Potato Chips
Miss Vickie's Smokehouse BBQ Kettle Cooked Flavored Potato Chips
Ruffles Original Potato Chips
Ruffles Sour Cream & Onion Flavored Potato Chips

http://www.fritolay.com/your-health/us-products-considered-a-good-source-of-vitamin-c.html

Attached as Exhibit 23.

109. The following unlawful and misleading language appears on Defendant's website, which is incorporated, as a matter of law, into the label of Defendant's Lay's Classic Potato Chips, Lay's Kettle Cooked Mesquite BBQ Potato Chips and the similarly labeled products referenced in paragraph 105: ***"Good Source of Vitamin C."*** This claim was unlawful and misleading because the website failed to disclose that the products had undesirable nutrients at levels that triggered a mandatory disclosure of that the product contained nutrients at levels that raised the risk of diet-related disease or health-related condition.

110. Pursuant to Section 403 of the FDCA, a claim that characterizes the level of a nutrient in a food is a "nutrient content claim" that must be made in accordance with the regulations that authorize the use of such claims. 21 U.S.C. § 343(r)(1)(A). California expressly adopted the requirements of 21 U.S.C. § 343(r) in § 110670 of the Sherman Law.

111. Nutrient content claims are claims about specific nutrients contained in a product. They are typically made on the front of packaging in a font large enough to be read by the average consumer. Because these claims are relied upon by consumers when making purchasing decisions, the regulations govern what claims can be made in order to prevent misleading claims.

112. Section 403(r)(1)(A) of the FDCA governs the use of expressed and implied nutrient content claims on labels of food products that are intended for sale for human consumption. *See* 21 C.F.R. § 101.13.

113. 21 C.F.R. § 101.13 provides the general requirements for nutrient content claims, which California has expressly adopted. California Health & Safety Code § 110100.

114. An "expressed nutrient content claim" is defined as any direct statement about the level (or range) of a nutrient in the food (*e.g.*, "low sodium" or "contains 100 calories"). *See* 21 C.F.R. § 101.13(b)(1).

115.    An "implied nutrient content claim" is defined as any claim that: (i) describes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (*e.g.*, "high in oat bran"); or (ii) suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (*e.g.*, "healthy, contains 3 grams (g) of fat").  21 C.F.R. § 101.13(b)(2)(i-ii).

116.    FDA regulations authorize use of a limited number of defined nutrient content claims. In addition to authorizing the use of only a limited set of defined nutrient content terms on food labels, FDA's regulations authorize the use of only certain synonyms for these defined terms. If a nutrient content claim or its synonym is not included in the food labeling regulations it cannot be used on a label.  Only those claims, or their synonyms, that are specifically defined in the regulations may be used.  All other claims are prohibited.  21 C.F.R. § 101.13(b).

117.    Only approved nutrient content claims will be permitted on the food label, and all other nutrient content claims will misbrand a food.  It should thus be clear which type of claims are prohibited and which are permitted. Manufacturers are on notice that the use of an unapproved nutrient content claim is prohibited conduct.  58 F.R. 2302.  In addition, 21 U.S.C. § 343(r)(2) prohibits using unauthorized undefined terms and declares foods that do so to be misbranded.

118.    In order to appeal to consumer preferences, Defendant has repeatedly made unlawful nutrient content claims that its Lay's Classic Potato Chips, Lay's Kettle Cooked Mesquite BBQ Potato Chips and the similarly labeled products referenced in paragraph 105 are a "good source" of nutrients such as Vitamin C.  These kinds of nutrient content claims are unlawful because they fail to comply with the nutrient content claim provisions in violation of 21 C.F.R. § 101.13(h)(1), which has been incorporated in California's Sherman Law.

119.    The regulations specify absolute and comparative levels at which foods qualify to make these claims for particular nutrients (*e.g.*, low fat . . . more vitamin C) and list synonyms that may be used in lieu of the defined terms.  Certain implied nutrient content claims (*e.g.,* healthy) also are defined.

120.   Defendant has repeatedly made unlawful nutrient content claims about Vitamin C and other nutrients that fail to utilize one of the limited defined terms appropriately.  These nutrient content claims are unlawful because they fail to comply with the nutrient content claim provisions in violation of 21 C.F.R. § 101.13 which has been incorporated in California's Sherman Law.

121.   21 C.F.R. § 101.13(h) categorizes as misleading and therefore prohibited even true nutrient content claims if the presence of another "disqualifying" nutrient exceeds the amount established by regulation. The  disclosure level of disqualifying nutrients are:

> If a food … contains more than 13.0 g of fat, 4.0 g of saturated fat, 60 milligrams (mg) of cholesterol, or 480 mg of sodium per reference amount customarily consumed, per labeled serving, or, for a food with a reference amount customarily consumed of 30 g or less … per 50 g … then that food must bear a statement disclosing that the nutrient exceeding the specified level is present in the food as follows: "See nutrition information for __ content" with the blank filled in with the identity of the nutrient exceeding the specified level, e.g., "See nutrition information for fat content."

21 C.F.R. § 101.13(h). Failure to disclose a material fact is *per se* misleading under 21 C.F.R. 1.21.

122.   Defendant's Lay's Classic Potato Chips, Lay's Kettle Cooked Mesquite BBQ Potato Chips and the similarly labeled products referenced in paragraph 105 all contain disqualifying levels of fat, which make Defendant's "Good Source Of" claim unlawful and misleading.

123.   The nutrient content claims regulations discussed herein are intended to ensure that consumers are not misled as to the actual or relative levels of nutrients in food products. Defendant has violated these referenced regulations. By placing their website address, www.lays.com, on the labels of its Lay's Classic Potato Chips and Lay's Kettle Cooked Mesquite BBQ Potato Chips, Defendant invites and encourages consumers to look at the nutritional facts and health claims made on the website, which supports the unlawful claims made both on the product labels and on the website itself. The product is  misbranded because the website is part of the product labeling. Therefore, Defendant's Lay's Classic Potato Chips and Lay's Kettle Cooked Mesquite BBQ Potato Chips and the products referenced in paragraph 105 are misbranded as a

matter of California and federal law and cannot be sold or held because they have no economic

value and are legally worthless.

124.    By placing their website address, www.fritolay.com, on the labels of its

Defendant's Lay's Classic Potato Chips, Lay's Kettle Cooked Mesquite BBQ Potato Chips and

the similarly labeled products referenced in paragraph 105, Defendant misbranded these products.

The website misbrands the products because the website is listed on the product label.

125.    For these reasons, Defendant's nutrient content claims are false and misleading

and in violation of 21 C.F.R. § 101.13 and identical California law, Lay's Classic Potato Chips,

Lay's Kettle Cooked Mesquite BBQ Potato Chips and the similarly labeled products referenced in

paragraph 105 are misbranded as a matter of law. Defendant has violated these referenced

regulations. Therefore, Defendant's Lay's Classic Potato Chips, Lay's Kettle Cooked Mesquite

BBQ Potato Chips and the similarly labeled products referenced in paragraph 105 products are

misbranded as a matter of federal and California law and cannot be sold or held and thus have no

economic value and are legally worthless.

126.    Defendant's claims in this respect are false and misleading and the products are in

this respect misbranded under identical federal and California laws. Plaintiffs and members of the

Class who purchased these products paid an unwarranted premium for these products.

127.    Lay's Classic Potato Chips, Lay's Kettle Cooked Mesquite BBQ Potato Chips and

the similarly labeled products referenced in paragraph 105 product are unlawful, misbranded and

violate the Sherman Law (through incorporation of 21 C.F.R. § 101.13) and are misleading and

deceptive because the phrases "Good Source of Vitamin C" is used despite the fact that that the

website labeling of these products do not disclose that these products contain disqualifying

amounts of fat as required by 21 C.F.R. § 101.13(h).

128.    Plaintiffs  and the Class would not have purchased Lay's Classic Potato Chips,

Lay's Kettle Cooked Mesquite BBQ Potato Chips and the similarly labeled products referenced in

paragraph 105 had they known they were illegal to sell or possess.

**Website "Low Sodium" Claims**

129. The Defendant's website, fritolay.com, contains unlawful and misleading statements that the Purchased Products were a low in sodium.

130. In order to appeal to consumer preferences, Defendant has repeatedly made false and unlawful "low sodium" nutrient content claims about the sodium levels in its (i) Lay's Classic Potato Chips, (ii) Lay's Honey Barbecue Potato Chips (iii) Lay's Kettle Cooked Mesquite BBQ Potato Chips, (iv) Cheetos Puffs and (v) Fritos Original Corn Chips. These claims misrepresent and greatly understate the levels of sodium in their products. In doing so these claims violate 21 C.F.R. § 101.61 which has been adopted by the State of California.

131. Defendant recognized that because of the significant health risks associated with sodium intake, consumers were increasingly seeking to avoid or limit sodium in their diets and thus were looking for low sodium food options.

132. Rather than reformulate all of their food products so that they were at or below the "low" sodium benchmarks they knew consumers were seeking, Defendant simply misrepresented a number of their sodium laden products and made false "low sodium" representations about these products and falsely depicted these products in their labeling, advertising and marketing materials and on their websites as being "low sodium" options when in fact they exceed the maximum levels of sodium that a "low sodium" product can possess.

133. Pursuant to 21 C.F.R. § 101.6(b)(4) the term "low sodium" may be used on the labels or labeling of food if the food has a reference amount of less than 30 grams or less and contains 140 mgs or less sodium per reference amount customarily consumed and per 50 grams. By this definition most if not all of the Defendant's snack chips are not "low sodium" products, including Defendant's i) Lay's Classic Potato Chips, (ii) Lay's Honey Barbecue Potato Chips (iii) Lay's Kettle Cooked Mesquite BBQ Potato Chips, (iv) Cheetos Puffs and (v) Fritos Original Corn Chips.

134. Notwithstanding this fact, Defendant misrepresents and understates the levels of sodium in its i) Lay's Classic Potato Chips, (ii) Lay's Honey Barbecue Potato Chips (iii) Lay's Kettle Cooked Mesquite BBQ Potato Chips, (iv) Cheetos Puffs and (v) Fritos Original Corn Chips. According to Defendant "Snack chips are actually not as high in sodium as most people

think…[i]n fact a serving of most Frito-Lay snack chips … has  three times less sodium than a bowl of low sodium soup." *See* Exhibit 24. The term "snack chips" snacks" includes all of the Purchased Products and the Class Products. The term "snack chips" snacks" includes all of the Purchased Products and the Class Products. This is simply a false statement. By definition "low sodium" soup could not contain more than 140 mgs of sodium per serving (which is 8 ounces). Three times less than this would thus be no more than 47 mgs of sodium. In fact, the sodium levels of Defendant's i) Lay's Classic Potato Chips, (ii) Lay's Honey Barbecue Potato Chips (iii) Lay's Kettle Cooked Mesquite BBQ Potato Chips, (iv) Cheetos Puffs and (v) Fritos Original Corn Chips were far in excess of this level with many such as the ones bought by the Plaintiff being approximately 2 to 5 times more than this. In addition, Defendant makes other false statements on its website (via product brochures) indicating its products are not high in sodium, when in fact, they are. *See* Exhibit 25. Defendant explicitly states that its products are not high in sodium on its website:

135.    On Defendant's website, on its Frequently Asked Questions page, Defendant explicitly denies that its products are high in sodium:

> Q: Frito-Lay makes salty snacks … so aren't they high in sodium?
> A: Actually, no.

www.fritolay.com/your-health/feature-answers.html (attached as Exhibit 26). The term "salty snacks" includes all of the Purchased Products and the Class Products.

136.    This false representation coupled with Defendant's other statements about sodium and how its products were not as high in sodium as one would think based on taste or other factors unlawfully overstated the healthiness of Defendant's i) Lay's Classic Potato Chips, (ii) Lay's Honey Barbecue Potato Chips (iii) Lay's Kettle Cooked Mesquite BBQ Potato Chips, (iv) Cheetos Puffs and (v) Fritos Original Corn Chips while understating their relative sodium levels.

137.    Defendant falsely represented that its i) Lay's Classic Potato Chips, (ii) Lay's Honey Barbecue Potato Chips (iii) Lay's Kettle Cooked Mesquite BBQ Potato Chips, (iv) Cheetos Puffs and (v) Fritos Original Corn Chips and the Class products were beneath the relative sodium levels represented by a "low sodium" option. These products were falsely labeled and

misbranded because contrary to the various false representations that they were a "low sodium"

option, they contained disqualifying levels of sodium precluding such a representation.

138.    Products which claim to contain "low sodium" cannot contain more than 140 mgs

of sodium per serving.  The Lay's Classic Potato Chips purchased by Plaintiff Wilson and

Plaintiff Campen contain 170mg of sodium per serving.  Plaintiff Campen also purchased Lay's

Honey Barbecue Potato Chips which 103mg of sodium per serving; Lay's Kettle Cooked

Mesquite BBQ Potato Chips which contain 210mg of sodium per serving; Cheetos Puffs, which

contain 300mg of sodium per serving; and Fritos Original Corn Chips which contain 160mg of

sodium per serving. The products purchased by Plaintiffs were incapable of complying with the

"low sodium" standard and in fact were far higher than Defendant in comparison with "low

sodium" soup options.

139.    By placing their website address, www.fritolay.com, on the labels of its

Defendant's (i) Lay's Classic Potato Chips, (ii) Honey Barbecue Potato Chips, (iii) Lay's Kettle

Cooked Mesquite BBQ Potato Chips, (iv) Cheetos Puffs and (v) Fritos Original Corn Chips and

the Class Products, Defendant misbranded these products.  The website is misbranded because it

is part of the product labeling.

140.    For these reasons, Defendant's "low sodium" claims at issue in this Second

Amended Complaint are false and misleading and in violation of identical California and federal

law and the products at issue are misbranded as a matter of law. Therefore, Defendant's

Defendant's (i) Lay's Classic Potato Chips, (ii) Honey Barbecue Potato Chips, (iii) Lay's Kettle

Cooked Mesquite BBQ Potato Chips, (iv) Cheetos Puffs and (v) Fritos Original Corn Chips and

the Class Products which contain more than 140mg of sodium are misbranded as a matter of

California and federal law and cannot be sold or held and thus are legally worthless. Plaintiff and

members of the Class who purchased these products paid an unwarranted premium for these

products.

141.    Plaintiffs and the Class would not have purchased (i) Lay's Classic Potato Chips,

(ii) Honey Barbecue Potato Chips, (iii) Lay's Kettle Cooked Mesquite BBQ Potato Chips, (iv)

1    Cheetos Puffs and (v) Fritos Original Corn Chips had they known they were illegal to sell or

2    possess.

3        **Website Health Claims**

4        142.    The Defendant's website, fritolay.com, contains unlawful and misleading

5    statements that the Purchased Products were "healthy." The website is part of the Purchased

6    Products labeling because the website is listed on the Purchased Products' labels.

7        143.    Defendant has violated identical California and federal law by making numerous

8    "healthy" claims about its products on it website. In promoting (i) Lay's Classic Potato Chips, (ii)

9    Lay's Honey Barbecue Potato Chips, (iii) Kettle Cooked Mesquite BBQ Potato Chips, (iv)

10   Cheetos Puffs and (v) Fritos Original Corn Chips and the products in paragraph 84 as "healthy,"

11   Defendants have violated the Sherman law.

12       144.    The use of the term "healthy" is an implied nutrient content claim about general

13   nutrition that is defined by FDA regulation. In general, the term may be used in labeling an

14   individual food product that:

15               Qualifies as both low fat and low saturated fat;
16               Contains 480 mg or less of sodium per
                 reference amount and per labeled serving, and
17               per 50 g (as prepared for typically rehydrated
                 foods) if the food has a reference amount of 30
                 g or 2 tbsps or less;
18

19               Does not exceed the disclosure level for
                 cholesterol (*e.g.*, for most individual food
20               products, 60 mg or less per reference amount
                 and per labeled serving size); *and*

21               Except for raw fruits and vegetables, certain
                 frozen or canned fruits and vegetables, and
22               enriched cereal-grain products that conform to
                 a standard of identity, provides at least 10% of
23               the daily value (DV) of vitamin A, vitamin C,
                 calcium, iron, protein, *or* fiber per reference
24               amount. Where eligibility is based on a nutrient
                 that has been added to the food, such
25               fortification must comply with FDA's
                 fortification policy.
26

27   21 C.F.R. § 101.65(d)(2).  Defendant is aware of this rule and expressly states in their marketing

28   materials that [f]or a food to be labeled "healthy" it must meet a specific set of criteria established

by the Food and Drug Administration" before referencing some of the criteria.

145.    The FDA's regulation on the use of the term healthy also encompasses other, derivative uses of the term health (*e.g.*, healthful, healthier) in food labeling. 21 C.F.R. § 101.65(d).

146.    Defendant has violated the provisions of § 21 C.F.R. §101.14, 21 C.F.R. §101.65, 21 C.F.R. §101.76, 21 U.S.C. § 321(g)(1)(D) and 21 U.S.C. § 352(f)(1) by including certain claims on their product labeling and website.   Despite being aware of the criteria and restrictions that pertain to "healthy" claims, the Defendant makes numerous unlawful "healthy" claims about its (i) Lay's Classic Potato Chips, (ii) Lay's Honey Barbecue Potato Chips, (iii) Kettle Cooked Mesquite BBQ Potato Chips, (iv) Cheetos Puffs and (v) Fritos Original Corn Chips and their components. Defendant indicates that these products and their ingredients are "healthy," "healthier," "healthful," and an "important part of a healthier diet. Defendant indicates that eating their snacks offers "health benefits." Defendant also states that fried foods like its snack chips are not "unhealthy" which is in effect a claim that these products are healthy. *See* Exhibits 26. Defendant expressly states that its Lay's Classic Potato Chips and Lay's potato chips in general are a "healthier" option by being fried in "healthier oils."  *See* Exhibit 25. By definition, the term "fried food" and "snack food" includes the Purchased Products and the products listed in paragraph  84.

147.    Defendant does this in violation of 21 C.F.R. §101.65 which has been adopted by California and which precludes the use of these terms about the Defendant's  (i) Lay's Classic Potato Chips, (ii) Lay's Honey Barbecue Potato Chips, (iii) Kettle Cooked Mesquite BBQ Potato Chips, (iv) Cheetos Puffs and (v) Fritos Original Corn Chips and purchased by Plaintiffs which have disqualifying levels of unhealthy nutrients like fat. In addition, the products listed in paragraph 84 also have disqualifying levels of fat.

148.    In addition to their unlawful "healthy" claims, Defendant makes a number of unlawful health related claims. For example, Defendants claim that the ingredients in all of its chips "support heart health and that "the healthier oils … used in all Frito-Lay snack chips, are high in polyunsaturated and monounsaturated fats that have been proven to reduce LDL (bad)

cholesterol and maintain HDL (good) cholesterol levels, which have been associated with a reduction in the risk for heart disease." http://www.fritolay.com/your-health/goodbye-trans-fats.html (attached as Exhibit 27). The term "snack chips" includes the Purchased Products and the products listed in paragraph 84.

149.    The therapeutic claims on Defendant's website establish that Defendant's products are drugs because they are intended for use in the cure, mitigation, treatment, or prevention of disease. Defendant's products are not generally recognized as safe and effective for the above referenced uses and, therefore, the products would be "new drug[s]" under section 201(p) of the Act [21 U.S.C. § 321(p)]. New drugs may not be legally marketed in the U.S. without prior approval from the FDA as described in section 505(a) of the Act [21 U.S.C. § 355(a)]. FDA approves a new drug on the basis of scientific data submitted by a drug sponsor to demonstrate that the drug is safe and effective. Defendant also violated California Health & Safety Code § 110403 which prohibits the advertisement of products that are represented to have any effect on enumerated conditions, disorders and diseases including cancer and heart diseases unless the materials have federal approval.

150.    Defendant's materials and advertisements not only violate regulations adopted by California such as 21 C.F.R. § 101.14, they also violate California Health & Safety Code § 110403 which prohibits the advertisement of products that are represented to have any effect on enumerated conditions, disorders and diseases including cancer and heart diseases unless the materials have federal approval.

151.    The labels of (i) Lay's Classic Potato Chips, (ii) Lay's Honey Barbecue Potato Chips, (iii) Kettle Cooked Mesquite BBQ Potato Chips, (iv) Cheetos Puffs and (v) Fritos Original Corn Chips each contain an invitation to visit Defendant's website, www.lays.com.

152.    By placing their website address, www.lays.com, on the labels of its (i) Lay's Classic Potato Chips, (ii) Lay's Honey Barbecue Potato Chips, (iii) Kettle Cooked Mesquite BBQ Potato Chips, (iv) Cheetos Puffs, (v) Fritos Original Corn Chips and the products identified in paragraph 84, Defendant invites and encourages consumers to look at the nutritional facts and health claims made on the website, which supports the unlawful claims made both on the product

1    labels and on the website itself. The website is misbranded because it is part of the product

2    labeling.

3        153.    Defendant's health related claims are false and misleading and the products are in

4    this respect misbranded under identical California and federal laws. Misbranded products cannot

5    be legally sold and thus are legally worthless and have no economic value.

6        154.    Plaintiffs and the Class would not have purchased (i) Lay's Classic Potato Chips,

7    (ii) Honey Barbecue Potato Chips, (iii) Lay's Kettle Cooked Mesquite BBQ Potato Chips, (iv)

8    Cheetos Puffs and (v) Fritos Original Corn Chips had they known they were illegal to sell or

9    possess.

10                    **DEFENDANT HAS VIOLATED CALIFORNIA LAW**

11        155.    Defendant has violated California Health & Safety Code § 110390 which makes it

12    unlawful to disseminate false or misleading food advertisements that include statements on

13    products and product packaging or labeling or any other medium used to directly or indirectly

14    induce the purchase of a food product.

15        156.    Defendant has violated California Health & Safety Code § 110395 which makes it

16    unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

17        157.    Defendant has violated California Health & Safety Code §§ 110398 and 110400

18    which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food

19    that has been falsely advertised.

20        158.     Defendant has violated California Health & Safety Code § 110403 which makes

21    it unlawful to advertise misbranded food by representing it to have any effect on conditions,

22    disorders or diseases.

23        159.    Defendant has violated California Health & Safety Code § 110660 because its

24    Purchased Product labels are false and misleading in one or more ways.

25        160.     Defendant's Purchased Products and Class Products are misbranded under

26    California Health & Safety Code § 110665 because their labeling fails to conform to the

27    requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and the regulations adopted

28    thereto.

161.     Defendant's Purchased Products and Class Products are misbranded under California Health & Safety Code § 110670 because their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted thereto.

162.     Defendants' Purchased Products and Class Products are misbranded under California Health & Safety Code § 110705 because words, statements and other information required by the Sherman Law to appear on their labeling either are missing or not sufficiently conspicuous.

163.     Defendant's Purchased Products and Class Products are misbranded under California Health & Safety Code § 110735 as they purport to be for special dietary uses, but do not bear information concerning any vitamin or mineral content or other dietary property as necessary to inform purchasers as to the food's value for that use.

164.     Defendant has violated California Health & Safety Code § 110760 which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

165.     Defendant's Purchased Products and Class Products are misbranded under California Health & Safety Code § 110755 because they purport to be or are represented for special dietary uses, and its labels fail to bear such information concerning their vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

166.     Defendant's Purchased Products and Class Products are misbranded under California Health & Safety Code § 110740 because they contain artificial flavoring, artificial coloring and chemical preservatives but fail to adequately disclose that fact on their labeling.

167.     Defendant has violated California Health & Safety Code § 110765 which makes it unlawful for any person to misbrand any food.

168.     Defendant has violated California Health & Safety Code § 110770 which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for deliver any such food.

**PLAINTIFFS PURCHASED DEFENDANT'S PURCHASED PRODUCTS WITH UNLAWFUL AND MISLEADING LABELS**

169.    Plaintiffs care about the nutritional content of food and seek to maintain a healthy diet.

170.    Plaintiffs purchased Defendant's Purchased Products as described above on occasions during the Class Period.

171.    Plaintiffs read the particular label statements described above on Defendant's Purchased Products before purchasing them.  Defendant's labels falsely conveyed to the Plaintiffs the net impression that the Purchased Products they bought made only positive contributions to a diet, and did not contain any nutrients at levels that raised the risk of diet-related disease or health-related condition.

172.    Plaintiffs read the unlawful and misleading statements referenced above on the labels of Defendant's Purchased Products before purchasing them.  If Plaintiffs had known that the unlawful and misleading statements that they read on Defendant's labels misbranded the Purchased Products rendering them unlawful to possess or sell Plaintiffs would not have purchased such products.  In addition, Defendant's unlawful statements falsely conveyed to the Plaintiffs the net impression that the Purchased Products they bought made only positive contributions to a diet, and did not contain any nutrients at levels that raised the risk of diet-related disease or health-related conditions.  Plaintiffs relied on Defendant's label statements identified above and based and justified the decision to purchase Defendant's Purchased Products, in substantial part, on Defendant's label statements identified above.

173.    At point of sale, Plaintiffs did not know, and had no reason to know, that Defendant's Purchased Products were misbranded as set forth herein, and would not have bought the products had they known the truth about them.

174.    At point of sale, Plaintiffs did not know, and had no reason to know, that claims were improper and unauthorized as set forth herein, and would not have bought the products absent the claims.

175.     At point of sale, Plaintiffs did not know and had no reason to know that Defendant's Purchased Product labels were unlawful and misleading as set forth herein.  As a result of Defendant's improper labeling claims on the Purchased Products, Plaintiffs and thousands of others in California purchased the Purchased Products.

176.     As a result of Defendant's unlawful and misleading labels contained on the Purchased Products, Plaintiffs and thousands of others in California purchased the Purchased Products.  Defendant's labels on the Purchased Products as alleged herein are false and misleading and were designed to increase sales of the Purchased Products.  A reasonable person would attach importance to Defendant's label statements as described herein in determining whether to purchase the Purchased Products.

177.     A reasonable person would also attach importance to whether Defendant's products were legally salable, and capable of legal possession, and to Defendant's representations about these issues in determining whether to purchase the Purchased Products. Plaintiffs would not have purchased Defendant's Purchased Products had they known they were not capable of being legally sold or held.

## CLASS ACTION ALLEGATIONS

178.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following "Class:"

> All persons in the United States, and alternatively, in a subclass of persons in California who, within the Class Period, purchased one or more of the following products:
>
> > Lay's Classic Potato Chips
> > Lay's Honey Barbecue Potato Chips
> > Kettle Cooked BBQ Potato Chips
> > Cheetos Puffs
> > Fritos Original Corn Chips
> > Baked! Lay's Barbecue Flavored Potato Crisps
> > Baked! Lay's Parmesan & Tuscan Herb Flavored Potato Crisps
> > Cheetos Crunchy Cheddar Jalapeno Flavored Snacks
> > Cheetos Crunchy Cheese Flavored Snacks
> > Cheetos Crunchy Flamin' Hot Cheese Flavored Snacks
> > Cheetos Crunchy Flamin' Hot Limon Cheese Flavored Snacks
> > Cheetos Crunchy Salsa Con Queso Cheese Flavored Snacks
> > Cheetos Crunchy Xxtra Flamin' Hot Cheese Flavored Snacks
> > Cheetos Puffs Flamin' Hot Cheese Flavored Snacks
> > Cheetos Puffs Twisted Cheese Flavored Snacks

Cheetos Simply Natural Puffs White Cheddar Cheese Flavored Snacks
Chester's Butter Flavored Puffcorn Snacks
Chester's Butter Flavored Puffcorn Snacks
Chester's Cheese Flavored Puffcorn Snacks
Chester's Cheese Flavored Puffcorn Snacks
Doritos Dinamita Chipotle Crema Flavored Tortilla Chips
Fritos BBQ Flavored Corn Chips
Fritos Chili Cheese Flavored Corn Chips
Fritos Flamin' Hot Flavored Corn Chips
Fritos Flavor Twists Honey BBQ Flavored Corn Chips
Fritos Lightly Salted Corn Chips
Fritos Scoops! Corn Chips
Lay's Balsamic Sweet Onion Potato Chips
Lay's Chipotle Ranch Potato Chips
Lay's Classic Blt Potato Chips
Lay's Creamy Garden Ranch Potato Chips
Lay's Flamin Hot Potato Chips
Lay's Honey Mustard Potato Chips
Lay's Limon Potato Chips
Lay's Salt And Vinegar Potato Chips
Lay's Sour Cream And Onion Potato Chips
Lay's Wavy Au Gratin Potato Chips
Lay's Wavy Hickory Barbecue Potato Chips
Lay's Wavy Original Potato Chips
Lay's Wavy Ranch Potato Chips
Lay's Barbecue Flavored Potato Chips
Lay's Cajun Herb & Spice Flavored Potato Chips
Lay's Cheddar & Sour Cream Flavored Potato Chips
Lay's Cheesy Garlic Bread Flavored Potato Chips
Lay's Chicken & Waffles Flavored Potato Chips
Lay's Chile Limon Flavored Potato Chips
Lay's Dill Pickle Flavored Potato Chips
Lay's Flamin' Hot Flavored Potato Chips
Lay's Garden Tomato & Basil Flavored Potato Chips
Lay's Honey BBQ Flavored Potato Chips
Lay's Kettle Cooked Creamy Mediterranean Herb Potato Chips
Lay's Kettle Cooked Applewood Smoked BBQ Flavored Potato Chips
Lay's Kettle Cooked Harvest Ranch Potato Chips
Lay's Kettle Cooked Jalapeno Flavored Potato Chips
Lay's Kettle Cooked Maui Onion Flavored Potato Chips
Lay's Kettle Cooked Original Potato Chips
Lay's Kettle Cooked Parmesan And Sun Dried Tomato Potato Chips
Lay's Kettle Cooked Reduced Fat Original Potato Chips
Lay's Kettle Cooked Sea Salt & Cracked Pepper Flavored Potato Chips
Lay's Kettle Cooked Sea Salt & Vinegar Flavored Potato Chips
Lay's Kettle Cooked Sharp Cheddar Flavored Potato Chips
Lay's Kettle Cooked Spicy Cayenne Potato Chips
Lay's Sour Cream & Onion Flavored Potato Chips
Lay's Sriracha Flavored Potato Chips
Lay's Sweet Southern Heat Flavored Potato Chips
Lay's Tangy Carolina BBQ Flavored Potato Chips
Lay's Tapatio Limon Flavored Potato Chips
Lay's Wavy Hickory Barbecue Potato Chips
Lay's Wavy Ranch Potato Chips
Lay's Wavy Roasted Garlic & Sea Salt Flavored Potato Chips

Maui Style Salt & Vinegar Flavored Potato Chips
Miss Vickie's Jalapeno Kettle Cooked Flavored Potato Chips
Miss Vickie's Sea Salt & Cracked Pepper Flavored Potato Chips
Miss Vickie's Sea Salt & Vinegar Kettle Cooked Flavored Potato Chips
Miss Vickie's Simply Sea Salt Kettle Cooked Potato Chips
Miss Vickie's Smokehouse BBQ Kettle Cooked Flavored Potato Chips
Ruffles Original Potato Chips
Ruffles Sour Cream & Onion Flavored Potato Chips
Ruffles Ultimate Kickin' Jalapeno Ranch Flavored Potato Chips
Ruffles Ultimate Sweet & Smokin' BBQ Flavored Potato Chips
Sunchips French Onion Flavored Multigrain Snacks
Sunchips Garden Salsa Flavored Multigrain Snacks
Sunchips Harvest Cheddar Flavored Multigrain Snacks
Sunchips Original Multigrain Snacks
Sunchips Sweet & Spicy BBQ Flavored Multigrain Snacks
Tostitos Artisan Recipes Baked Three Cheese Queso Flavored Tortilla
  Chips
Tostitos Artisan Recipes Grilled Red Pepper & Tomato Salsa Flavored
  Tortilla Chips
Tostitos Artisan Recipes Roasted Garlic & Black Bean Tortilla Chips
Tostitos Artisan Recipes Toasted Southwestern Spices Tortilla Chips
Tostitos Hint Of Jalapeno Flavored Tortilla Chips
Tostitos Hint Of Lime Flavored Tortilla Chips
Tostitos Hint Of Pepper Jack Flavored Tortilla Chips

179.    The following persons are expressly excluded from the Class: (1) Defendant and Its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

180.    This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

181.    Numerosity:  Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that joinder of all Class members is impracticable.

182.    Common Questions Predominate:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, for example:

        a.    Whether Defendant engaged in unlawful, unfair or deceptive business practices by failing to properly package and label its

Purchased Products sold to consumers;

b.  Whether the Purchased Products were misbranded as a matter of law;

c.  Whether Defendant made improper and misleading nutrient contentand health claims;

d.  Whether Defendant made unlawful and misleading "All Natural," "No MSG" or "0g Trans Fat" or "low sodium" or "good source of" or "healthy claims;

f.  Whether Defendant violated California Bus. & Prof. Code § 17200 *et seq*., California Bus. & Prof. Code § 17500 *et seq*., the Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq*., and the Sherman Law;

g.  Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief; and

h.  Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiffs and the Class.

183.  <u>Typicality</u>:  Plaintiffs' claims are typical of the claims of the Class because Plaintiffs bought Defendant's Purchased Products during the Class Period.  Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiffs and the Class sustained similar injuries arising out of Defendant's conduct in violation of California law.  The injuries of each member of the Class were caused directly by Defendant's wrongful conduct.  In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

184.  <u>Adequacy</u>:  Plaintiffs will fairly and adequately protect the interests of the Class.  Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class members.  Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and those of the members of the Class.  Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to

1   the Class members and will diligently discharge those duties by vigorously seeking the maximum

2   possible recovery for the Class.

3          185.    Superiority:  There is no plain, speedy or adequate remedy other than by

4   maintenance of this class action.  The prosecution of individual remedies by members of the Class

5   will tend to establish inconsistent standards of conduct for Defendant and result in the impairment

6   of Class members' rights and the disposition of their interests through actions to which they were

7   not parties.  Class action treatment will permit a large number of similarly situated persons to

8   prosecute their common claims in a single forum simultaneously, efficiently and without the

9   unnecessary duplication of effort and expense that numerous individual actions would engender.

10  Further, as the damages suffered by individual members of the Class may be relatively small, the

11  expense and burden of individual litigation would make it difficult or impossible for individual

12  members of the Class to redress the wrongs done to them, while an important public interest will

13  be served by addressing the matter as a class action.  Class treatment of common questions of law

14  and fact would also be superior to multiple individual actions or piecemeal litigation in that class

15  treatment will conserve the resources of the Court and the litigants, and will promote consistency

16  and efficiency of adjudication.

17         186.    The prerequisites to maintaining a class action for injunctive or equitable relief

18  pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds

19  generally applicable to the Class, thereby making appropriate final injunctive or equitable relief

20  with respect to the Class as a whole.

21         187.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3)

22  are met as questions of law or fact common to class members predominate over any questions

23  affecting only individual members, and a class action is superior to other available methods for

24  fairly and efficiently adjudicating the controversy.

25         188.     Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to

26  be encountered in the management of this action that would preclude its maintenance as a class

27  action.

28

SECOND AMENDED CLASS ACTION COMPLAINT                                          50
CASE NO. 3:12-CV-01586 (SC)

1

## **CAUSES OF ACTION**

2

### **FIRST CAUSE OF ACTION**
**Business and Professions Code § 17200, *et seq.*
Unlawful Business Acts and Practices**

3

4          189.      Plaintiffs incorporate by reference each allegation set forth above.

5          190.      Defendant's conduct constitutes unlawful business acts and practices.

6          191.      Defendant sold Purchased Products and Class Products in California during the

7    Class Period.

8          192.      Defendant is a corporation and, therefore, is a "person" within the meaning of the

9    Sherman Law.

10         193.      Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of

11   Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the

12   misbranded food provisions of Article 6  of the Sherman Law.

13         194.      Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of

14   Defendant's violations of § 17500, *et seq.*, which forbids untrue and misleading advertising.

15         195.      Defendant's business practices are unlawful under § 17200, *et seq.* by virtue of

16   Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

17         196.      Defendant sold Plaintiffs and the Class Purchased Products and Class Products that

18   were not capable of being sold, or held legally and have no economic value and which were

19   legally worthless. Plaintiffs and the Class paid a premium price for the Purchased Products and

20   Class Products.

21         197.      As a result of Defendant's illegal business practices, Plaintiffs and the Class,

22   pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future

23   conduct and such other orders and judgments which may be necessary to disgorge Defendant's

24   ill-gotten gains and to restore to any Class Member any money paid for the Purchased Products

25   and Class Products.

26         198.      Defendant's unlawful business acts present a threat and reasonable continued

27   likelihood of injury to Plaintiffs and the Class.

28

199.    As a result of Defendant's conduct, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Products by Plaintiffs and any money paid for Defendant's Class Products purchased by the Class.

**SECOND CAUSE OF ACTION**
**Business and Professions Code § 17200,** *et seq.*
**Unfair Business Acts and Practices**

200.    Plaintiffs incorporate by reference each allegation set forth above.

201.    Defendant's conduct as set forth herein constitutes unfair business acts and practices.

202.    Defendant sold Purchased Products and Class Products in California during the Class Period.

203.    Plaintiffs and members of the Class suffered a substantial injury by virtue of buying Defendant's Purchased Products and Class Products that they would not have purchased absent Defendant's illegal conduct.

204.    Defendant's deceptive marketing, advertising, packaging and labeling of its Purchased Products and Class Products and its sale of unsalable misbranded products that were illegal to possess was of no benefit to consumers, and the harm to consumers and competition is substantial.

205.    Defendant sold Plaintiffs and the Class Purchased Products and Class Products that were not capable of being legally sold or held and that have no economic value and were legally worthless. Plaintiffs and the Class paid a premium price for the Purchased Products and Class Products.

206.    Plaintiffs and the Class who purchased Defendant's Purchased Products and Class Products had no way of reasonably knowing that the products were misbranded and were not properly marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

207.     The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefor.  Defendant's conduct is and continues to be immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiffs and the Class.

208.     As a result of Defendant's conduct, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Products by Plaintiffs and any money paid for Defendant's Class Products purchased the Class.

### THIRD CAUSE OF ACTION
### Business and Professions Code § 17200, *et seq.*
### Fraudulent Business Acts and Practices

209.     Plaintiffs incorporate by reference each allegation set forth above.

210.     Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200, *et seq.*

211.     Defendant sold Purchased Products and Class Products in California during the Class Period.

212.     Defendant's misleading marketing, advertising, packaging and labeling of the Purchased Products and Class Products and misrepresentation that the products were salable, capable of possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiffs and members of the Class were deceived.  Defendant has engaged in fraudulent business acts and practices.

213.     Defendant's fraud and deception caused Plaintiffs and the Class to purchase Defendant's Purchased Products and Class Products that they would otherwise not have purchased had they known the true nature of those products.

214.     Defendant sold Plaintiffs and the Class Purchased Products that were not capable of being sold or held legally and that have no economic value and were legally worthless. Plaintiffs and the Class paid a premium price for the Purchased Products and the Class Products.

215.     As a result of Defendant's conduct as set forth herein, Plaintiffs and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Products by Plaintiffs and any money paid for the Class Products by the Class.

### FOURTH CAUSE OF ACTION
#### Business and Professions Code § 17500, *et seq.*
#### Misleading and Deceptive Advertising

216.     Plaintiffs incorporate by reference each allegation set forth above.

217.     Plaintiffs assert this cause of action for violations of California Business and Professions Code § 17500*, et seq*. for misleading and deceptive advertising against Defendant.

218.     Defendant sold Purchased Products and Class Products in California during the Class Period.

219.     Defendant engaged in a scheme of offering Defendant's Purchased Products and Class Products for sale to Plaintiffs and members of the Class by way of product labeling.  These labels misrepresented and/or omitted the true contents and nature of Defendant's Purchased Products and Class Products.  Defendant's advertisements and inducements were made within California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that such labels were intended as inducements to purchase Defendant's Purchased Products and Class Products and are statements disseminated by Defendant to Plaintiffs and the Class that were intended to reach members of the Class.  Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

220.     In furtherance of its plan and scheme, Defendant prepared and distributed within California and nationwide via product labels, statements that misleadingly and deceptively represented the composition and the nature of Defendant's Purchased Products and Class Products.  Plaintiffs and the Class necessarily and reasonably relied on Defendant's materials, and were the intended targets of such representations.

221.   Defendant's conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiffs and the Class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of Defendant's Purchased Products and Class Products in violation of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*

222.   As a result of Defendant's violations of the "misleading prong" of California Business and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiffs and the Class.  Misbranded products cannot be legally sold or held and have no economic value and are legally worthless. Plaintiffs and the Class paid a premium price for the Purchased Products and Class Products.

223.   Plaintiffs and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Purchased Products or Class Products by Plaintiffs and the Class.

**FIFTH CAUSE OF ACTION**
**Business and Professions Code § 17500, *et seq.***
**<u>Untrue Advertising</u>**

224.   Plaintiffs incorporate by reference each allegation set forth above.

225.   Plaintiffs assert this cause of action against Defendant for violations of California Business and Professions Code § 17500, *et seq.*, regarding untrue advertising.

226.   Defendant sold Purchased Products and Class Products in California during the Class Period.

227.   Defendant engaged in a scheme of offering Defendant's Purchased Products and Class Products for sale to Plaintiffs and the Class by way of product labels.  These materials misrepresented and/or omitted the true contents and nature of Defendant's Purchased Products and Class Products.  Defendant's labels were made in California and come within the definition of advertising as contained in Business and Professions Code §17500, *et seq.* in that the labels were intended as inducements to purchase Defendant's Purchased Products and Class Products,

1   and are statements disseminated by Defendant to Plaintiffs and the Class.  Defendant knew, or in

2   the exercise of reasonable care should have known, that these statements were untrue.

3       228.   In furtherance of its plan and scheme, Defendant prepared and distributed in

4   California and nationwide via product labels, statements that falsely advertise the composition of

5   Defendant's Purchased Products and Class Products, and falsely misrepresented the nature of

6   those products.  Plaintiffs and the Class were the intended targets of such representations and

7   would reasonably be deceived by Defendant's materials.

8       229.   Defendant's conduct in disseminating untrue labels throughout California deceived

9   Plaintiffs and members of the Class by obfuscating the contents, nature and quality of

10  Defendant's Purchased Products and Class Products in violation of the "untrue prong" of

11  California Business and Professions Code § 17500.

12      230.   As a result of Defendant's violations of the "untrue prong" of California Business

13  and Professions Code § 17500, *et seq.*, Defendant has been unjustly enriched at the expense of

14  Plaintiffs and the Class.  Misbranded products cannot be legally sold or held and have no

15  economic value and are legally worthless. Plaintiffs and the Class paid a premium price for the

16  Purchased Products and Class Products.

17      231.   Plaintiffs and the Class, pursuant to Business and Professions Code § 17535, are

18  entitled to an order enjoining such future conduct by Defendant, and such other orders and

19  judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any

20  money paid for Defendant's Purchased Products or Class Products by Plaintiffs and the Class.

21                      **SIXTH CAUSE OF ACTION**
                **Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.***

22      232.   Plaintiffs incorporate by reference each allegation set forth above.

23      233.   This cause of action is brought pursuant to the CLRA. Defendant's violations of

24  the CLRA are willful, oppressive and fraudulent, thus supporting an award of punitive damages.

25      234.   On April 20, 2012, Plaintiffs sent their Notice and Demand Letter pursuant to the

26  CLRA, Cal. Civ. Code §§ 1782(a)(1) and (2), via certified mail to Defendant at their headquarters

27  in Plano, Texas. To date, Defendant has not responded to Plaintiffs Notice and Demand Letter.

28

235. Over thirty days have passed since Plaintiffs sent Defendant their Notice and Demand Letter. Plaintiffs now seek damages under the CLRA.

236. Plaintiffs and the Class, having given proper notice to Defendant, are entitled to actual and punitive damages against Defendant for their violations of the CLRA. In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiffs and the Class are entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiffs and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

237. Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

238. Defendant sold Purchased Products and Class Products in California and throughout the United States during the Class Period.

239. Plaintiffs and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

240. Defendant's Purchased Products and Class Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

241. By engaging in the conduct set forth herein, Defendant violated and continues to violate Sections 1770(a)(5) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

242. By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

243. By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods

1 of competition and unfair or fraudulent acts or practices in that they advertise goods with the

2 intent not to sell the goods as advertised.

3      244.    By engaging in the conduct set forth herein, Defendant has violated and continues

4 to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair

5 methods of competition and unfair or fraudulent acts or practices in that they represent that a

6 subject of a transaction has been supplied in accordance with a previous representation when it

7 has not.

8      245.    Plaintiffs requests that the Court enjoin Defendant from continuing to employ the

9 unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2) and

10 award Plaintiffs actual and punitive damages. If Defendant is not restrained from engaging in

11 these practices in the future, Plaintiffs and the Class will continue to suffer harm.

12 **JURY DEMAND**

13     Plaintiffs hereby demand a trial by jury of their claims.

14 **PRAYER FOR RELIEF**

15     WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, and

16 on behalf of the general public, pray for judgment against Defendant as follows:

17     A.    For an order certifying this case as a class action and appointing Plaintiffs and

18 their counsel to represent the Class;

19     B.    For an order awarding, as appropriate, damages, restitution or disgorgement to

20 Plaintiffs and the Class;

21     C.    For an order requiring Defendant to immediately cease and desist from selling its

22 Purchased Products and Class Products listed in violation of law; enjoining Defendant from

23 continuing to market, advertise, distribute, and sell these products in the unlawful manner

24 described herein; and ordering Defendant to engage in corrective action;

25     D.    For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

26     E.    For an order awarding attorneys' fees and costs;

27     F.    For an order awarding punitive damages;

28     G.    For an order awarding pre-and post-judgment interest; and

H.      For an order providing such further relief as this Court deems proper.

Dated:  May  1, 2013                    Respectfully submitted,


                                         /s/ Ben F. Pierce Gore
                                        Ben F. Pierce Gore (SBN 128515)
                                        PRATT & ASSOCIATES
                                        1871 The Alameda, Suite 425
                                        San Jose, CA 95126
                                        Telephone:  (408) 429-6506
                                        Fax:  (408) 369-0752
                                        pgore@prattattorneys.com

                                        *Attorneys for Plaintiffs*

SECOND AMENDED CLASS ACTION COMPLAINT
CASE NO. 3:12-CV-01586 (SC)                                           59