**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MARKUS WILSON and DOUG CAMPEN, individually and on behalf of all others similarly situated, | ) Case No. 12-1586 SC<br>)<br>) ORDER GRANTING IN PART AND<br>) DENYING IN PART DEFENDANT'S<br>) MOTION TO DISMISS PLAINTIFFS'<br>) <u>SECOND AMENDED COMPLAINT</u> |
| Plaintiffs, | ) |
| v. | ) |
| FRITO-LAY NORTH AMERICA, INC., | ) |
| Defendant. | ) |

## I.  **INTRODUCTION**

Now before the Court is Defendant Frito-Lay North America, Inc.'s ("Defendant") motion to dismiss Plaintiffs Markus Wilson and Doug Campen's ("Plaintiffs") second amended complaint.  ECF Nos. 47 ("SAC"), 59 ("MTD").  The motion is fully briefed, ECF Nos. 64 ("Opp'n"), 68 ("Reply"), and suitable for decision without oral argument, Civ. L.R. 7-1(b).  For the reasons explained below, the Court GRANTS in part and DENIES in part Defendant's motion.

///

///

///

**United States District Court**
For the Northern District of California

1  II.   <u>BACKGROUND</u>

2          A.   <u>**Factual Background**</u>

3          The parties are familiar with this case's basic facts, as

4  summarized below.  Defendant makes snack food products, including

5  "Lay's Classic Potato Chips," "Lay's Classic Potato Chips," "Lay's

6  Honey Barbeque Potato Chips," "Lay's Kettle Cooked Mesquite BBQ

7  Potato Chips," "Cheetos Puffs," and "Fritos Original Corn Chips"

8  (collectively the "Purchased Products").  Plaintiffs bought the

9  Purchased Products, and claim to have been misled by their labels,

10 between March 29, 2008 and March 29, 2012 (the "Class Period").  In

11 their SAC, they also bring claims on behalf of a putative class of

12 people in California and elsewhere who bought a variety of

13 Defendant's other Products that the named Plaintiffs did not buy.[1]

14         Plaintiffs allege that Defendant's marketing of the Products

15 is misleading because: (1) some Products are labeled "All Natural"

16 despite containing artificial or unnatural ingredients, flavoring,

17 coloring, or preservatives; (2) some Products are labeled as

18 containing "0 Grams Trans Fat" despite having total fat levels that

19 render such a claim misleading; (3) some Products contain MSG but

20 are labeled as having "No MSG"; and (4) Defendant's website, whose

21 address appears on some Products' labels, is a "label" subject to

22 FDA regulations, and it makes claims about the Products that are

23 misleading and unlawful.

24         Plaintiffs claim that they care about buying healthy foods,

25 e.g., foods with artificial ingredients or high levels of fat, and

26

27 [1] When the Court discusses these non-purchased products alongside
   the Purchased Products, the Court refers to them collectively as

28 the "Products."  Separately, they are the "Non-Purchased Products".

that they would not have bought any of the Products if they knew that Defendant's claims about such ingredients were not true.  See, e.g., SAC ¶¶ 46-47, 60, 64-65, 80, 82, 86-87, 104, 128, 141, 154.

### B.  **Procedural Background**

In their FAC, Plaintiffs asserted nine causes of action against Defendant: (1-3) violations of the "unlawful," "unfair," and "fraudulent" prongs of California's Unfair Competition Law's ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; (4-5) violations of the "misleading and deceptive" and "untrue" prongs of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq.; (6) violations of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.; (7) restitution based on unjust enrichment or quasi-contract; (8) breach of warranty under California's Song-Beverly Act, Cal. Civ. Code § 1790, et seq.; and (9) breach of warranty under the federal Magnuson-Moss Act, 15 U.S.C. § 2301, et seq.

Defendant moved to dismiss the FAC.  The Court granted Defendant's motion in part and denied it in part, dismissing Plaintiffs' breach of warranty claim with prejudice but granting Plaintiffs leave to amend their other claims.  ECF No. 46 ("Apr. 1 Order") at 31-32.  Specifically, the Court allowed Plaintiffs to plead more specific facts about the Non-Purchased Products and about how Defendant's website could constitute "labeling" such that claims asserted on it could predicate Plaintiffs' various causes of action.

In their SAC, Plaintiffs include more facts about the Non-Purchased Products and Defendant's website.  With their breach of warranty claim having been dismissed with prejudice, and with

United States District Court
For the Northern District of California

3

1  Plaintiffs having chosen not to re-plead their restitution claim,

2  the only causes of action remaining in the case are Plaintiffs'

3  UCL, FAL, and CLRA claims.  The SAC elaborates on Plaintiffs'

4  theories for their UCL, FAL, and CLRA claims, and also alleges new

5  violations based on the Non-Purchased Products.  Defendant now

6  moves to dismiss the SAC.

7

8  **III.  LEGAL STANDARD**

9      **A.  Motions to Dismiss**

10      A motion to dismiss under Federal Rule of Civil Procedure

11  12(b)(6) "tests the legal sufficiency of a claim."  Navarro v.

12  Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

13  on the lack of a cognizable legal theory or the absence of

14  sufficient facts alleged under a cognizable legal theory."

15  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

16  1988).  "When there are well-pleaded factual allegations, a court

17  should assume their veracity and then determine whether they

18  plausibly give rise to an entitlement to relief."  Ashcroft v.

19  Iqbal, 556 U.S. 662, 679 (2009).  However, "the tenet that a court

20  must accept as true all of the allegations contained in a complaint

21  is inapplicable to legal conclusions.  Threadbare recitals of the

22  elements of a cause of action, supported by mere conclusory

23  statements, do not suffice."  Id. (citing Bell Atl. Corp. v.

24  Twombly, 550 U.S. 544, 555 (2007)).  The court's review is

25  generally "limited to the complaint, materials incorporated into

26  the complaint by reference, and matters of which the court may take

27  judicial notice."  Metzler Inv. GMBH v. Corinthian Colls., Inc.,

28  540 F.3d 1049, 1061 (9th Cir. 2008) (citing Tellabs, Inc. v. Makor

**United States District Court**
For the Northern District of California

1 | <u>Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)).

2 | **B.    Rule 9(b)**

3 | Claims sounding in fraud are subject to the heightened

4 | pleading requirements of Federal Rule of Civil Procedure 9(b),

5 | which requires that a plaintiff alleging fraud "must state with

6 | particularity the circumstances constituting fraud." <u>See</u> <u>Kearns v.</u>

7 | <u>Ford Motor Co.</u>, 567 F. 3d 1120, 1124 (9th Cir. 2009).  "To satisfy

8 | Rule 9(b), a pleading must identify the who, what, when, where, and

9 | how of the misconduct charged, as well as what is false or

10 | misleading about [the purportedly fraudulent] statement, and why it

11 | is false." <u>United States ex rel Cafasso v. Gen. Dynamics C4 Sys.,</u>

12 | <u>Inc.</u>, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks

13 | and citations omitted).

14 | **C.    Leave to Amend**

15 | Under Federal Rule of Civil Procedure 15(a), leave to amend

16 | "should be freely granted when justice so requires," bearing in

17 | mind that "the underlying purpose of Rule 15 . . . [is] to

18 | facilitate decision[s] on the merits, rather than on the pleadings

19 | or technicalities." <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir.

20 | 2000) (en banc) (internal citations, quotation marks, and

21 | alterations omitted).  However, a court "may exercise its

22 | discretion to deny leave to amend due to 'undue delay, bad faith or

23 | dilatory motive on [the] part of the movant, repeated failure to

24 | cure deficiencies by amendments previously allowed, undue prejudice

25 | to the opposing party . . . , [and] futility of amendment.'"

26 | <u>Carvalho v. Equifax Info. Servs., LLC</u>, 629 F.3d 876, 892-93 (9th

27 | Cir. 2010) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962))

28 | (alterations in original).

*United States District Court*
For the Northern District of California

5

**United States District Court**
For the Northern District of California

"[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad."  Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 1007 (9th Cir. 2009) (internal quotations, citations, and alterations omitted).  Indeed, repeated failure to cure a complaint's deficiencies by previous amendment is reason enough to deny leave to amend.  Abagninin v. AMVAC Chem. Corp., 545 F.3d 733, 742 (9th Cir. 2008) (citing Foman, 371 U.S. at 182); Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990)).

## IV.   DISCUSSION

### A.   The Statutory Framework

The Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343(r), et seq., is the operative statute in this matter.

The many subsections of 21 U.S.C. § 343 establish the conditions under which food is considered "misbranded."  Generally, food is misbranded under 21 U.S.C. § 343(a)(1) if "its labeling is false or misleading in any particular."  Sections 343(q) and (r) regulate the information that must be included in all packed products' "nutrition box," as well as all other nutrient content claims that appear elsewhere on the label.

Section 343(q) governs information that must be disclosed about certain nutrients in food products -- principally in the nutrition box area.  Section 343(r) discusses "nutrition levels and

**United States District Court**
For the Northern District of California

health-related claims" about food products made anywhere on their labels.  It governs all voluntary statements about nutrition content or health information that a manufacturer includes on the food label or packaging.  The Food and Drug Administration ("FDA") has classified these nutrient claims as "express" (e.g., "100 calories"), "implied" (e.g., "high in oat bran"), and "health claims," which "characteriz[e] the relationship of any substance to a disease or health-related condition."  21 C.F.R. §§ 101.13, 101.14; see also Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1116-17 (N.D. Cal. 2010) (describing the statutory scheme).  Section 343(r) clarifies that it does not govern nutrition content claims made under Section 343(q) (i.e., inside the nutrition box), though an accompanying regulation, 21 C.F.R. § 101.13, clarifies that "[i]f such information is declared elsewhere on the label or in labeling, it is a nutrition content claim and is subject to the requirements for nutrient content claims [under Section 343(r)]."  See Chacanaca, 752 F. Supp. 2d at 1117.

Plaintiffs' state law claims are based on California's Sherman Food, Drug, and Cosmetic Act ("Sherman Act"), Cal. Health & Safety Code § 109875 et seq., which adopts and incorporates the FDCA.  See Sherman Act § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal acts in effect on January 1, 1993, or adopted on or after that date shall be the food regulations of this state.").  This specifically includes provisions of the FDCA and NLEA that set forth food labeling and packing requirements.

B.    **Standing as to the Non-Purchased Products**

To satisfy Article III standing, plaintiffs must allege: (1) a

United States District Court
For the Northern District of California

1   concrete, particularized, actual or imminent injury-in-fact; (2)

2   that the injury is traceable to the defendant's action; and (3)

3   that a favorable ruling could redress the injury.  See Friends of

4   the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167,

5   180-81 (2000).  Plaintiffs in a case like this one can show Article

6   III standing by alleging that they purchased a product they

7   otherwise would not have purchased, or that they spent too much on

8   such a product, in reliance on a defendant's representations in ads

9   or on labels.  See, e.g., Brazil v. Dole Food Co., Inc., -- F.

10  Supp. 2d --, 2013 WL 1209955, at *11-13 (N.D. Cal. Mar. 25, 2013).

11  It is Plaintiffs' burden to show standing.  Lujan v. Defenders of

12  Wildlife, 504 U.S. 555, 561 (1992).

13      The parties do not dispute whether Plaintiffs have pled

14  standing as to the Purchased Products.  The question is whether

15  they have standing as to the Non-Purchased Products.

16      In putative class actions like this one, this Court has often

17  held that plaintiffs can demonstrate standing at the pleading stage

18  if they plead sufficiently detailed facts that the non-purchased

19  products are "substantially similar" to the purchased products for

20  which they have standing.  See, e.g., Astiana v. Dreyer's Grand Ice

21  Cream, Inc., No. C 11-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal.

22  July 20, 2012).  Factors that other courts have considered include

23  whether the challenged products are of the same kind, whether they

24  are comprised of largely the same ingredients, and whether each of

25  the challenged products bears the same alleged mislabeling.  See

26  id. at *13.

27      Defendant argues that Plaintiffs fail to establish standing or

28  state a claim for the Non-Purchased Products.  MTD at 5-6.  First,

**United States District Court**
For the Northern District of California

1  Defendant notes that Plaintiffs added eighty-five new products --

2  the Non-Purchased Products -- to their SAC.  Plaintiffs do not

3  plead to have bought these products.  Instead they simply provide

4  long lists of products that they flatly state contain unlawful or

5  misleading statements.  SAC ¶¶ 44 ("All Natural" labeling), 62

6  ("All Natural" and "No MSG" labeling), 84 ("0 Grams Trans Fat"

7  labeling).  The SAC provides no other detail about these products.

8  Defendant argues that because Plaintiffs allege no facts stating

9  that the Non-Purchased Products are "the same or similar" to the

10  Purchased Products with respect to Plaintiffs' claims, Plaintiffs

11  cannot -- even in a putative class action -- assert causes of

12  action as to products that are not in fact substantially similar to

13  the products they actually bought.  <u>See</u> MTD at 6-9.  Defendant also

14  notes that while Plaintiffs include purported images of the Non-

15  Purchased Products' labels in their SAC, <u>see</u> SAC Ex. 8 (product

16  labels), the SAC does not state that any Plaintiff actually saw

17  these labels.  MTD at 9-10.

18  Plaintiffs oppose these arguments, contending that the eighty-

19  five Non-Purchased Products are "substantially similar" to the five

20  Purchased Products.  According to Plaintiffs, all of the Products

21  are "potato chips, corn chips, and puffed corn products," all of

22  which they allege to be unlawfully or misleadingly labeled.  <u>See</u>

23  Opp'n at 3-4.  Plaintiffs claim that all of the Products are made

24  by the same manufacturer and, with the exception of flavors,

25  contain the same ingredients and implicate the same concerns.  <u>Id.</u>

26  at 4.

27  Defendant is right.  Plaintiffs have failed to allege

28  substantial similarity among the Purchased Products and the Non-

**United States District Court**
For the Northern District of California

1  Purchased Products.  Plaintiffs have taken lists of snack foods,

2  appended them to paragraphs of their SAC, and asserted in their

3  briefs -- not in their pleadings -- that they are all basically the

4  same.  The Court is not convinced, and the exhibits Plaintiffs

5  provide do not help.  Plaintiffs take no time to explain how each

6  of the eighty-five new Products are actionably mislabeled, and the

7  Court is not inclined to pore over each ingredient list and guess.

8  The Court instructed Plaintiffs to be clear about why any Non-

9  Purchased Products were similar enough to the Purchased Products

10 for standing purposes.  Order at 12 (setting forth clear guidelines

11 for amendment on this point).  Plaintiffs fail to do so.

12      In their SAC, Plaintiffs simply provide a list of Non-

13 Purchased Products, attach barely-legible labels (purportedly as

14 they appeared during the Class Period), and assert that these

15 labels are unlawful or misleading.  See SAC ¶¶ 42, 62, 84.  This is

16 not enough -- the Court cannot just assume that every one of the

17 Non-Purchased Products' labels is actionable in the same way as the

18 more fully described Purchased Products' labels are.  For example,

19 the label on the purportedly actionable "Lay's Balsamic Sweet

20 Onion" package, SAC Ex. 8 at 25, has a stamp that, unlike any other

21 product, reads "Made With All Natural Potatoes and Seasonings,"

22 which is not the same as the labels discussed in the Court's Order

23 on the FAC, which state "Made With All Natural Ingredients."

24 Similarly, the "Miss Vickie's Sea Salt & Vinegar" package, SAC Ex.

25 8 at 35, has a stamped ribbon that reads only "All Natural."

26      The Court will not assume that each of these subtly different

27 Products is like all the others.  To meet the plausibility standard

28 of Rule 8, Plaintiffs have to say more, especially when they are

United States District Court
For the Northern District of California

1  asserting standing as to Products they did not purchase --

2  otherwise their pleadings amount to unacceptably bare legal

3  conclusions.  <u>Iqbal</u>, 556 U.S. at 663; <u>Twombly</u> 550 U.S. at 370.

4  Plaintiffs' SAC's allegations about the Non-Purchased Products are

5  not detailed or plausible enough to survive a motion to dismiss.

6       Plaintiffs' boilerplate claims as to the Non-Purchased

7  Products are therefore DISMISSED.  This dismissal is with

8  prejudice, since the Court has already given Plaintiffs leave to

9  amend on this point, as well as clear instructions on how to do so

10 successfully.

11      **C.   <u>Whether Websites Mentioned on Product Labels Constitute</u>**

12           **<u>Labeling</u>**

13      In their FAC, Plaintiffs contended that Defendant's website

14 constitutes "labeling" of the Products under the FDCA.  The Court

15 dismissed Plaintiffs' claims that were based on the website,

16 because the Court did not find that Plaintiffs had sufficiently

17 alleged that any of Plaintiffs' cited website language was drawn

18 closely enough to any Product to merit the website's constituting

19 "labeling" under the FDCA.

20      Now Plaintiffs cite extensive language from the website and

21 claim that it explains and supplements Defendant's other statements

22 about the Products, such that the Court should find that the

23 website language constitutes labeling.  <u>See</u> Opp'n at 9-10 (citing

24 SAC ¶¶ 105-54).  Plaintiffs also cite several FDA warning letters

25 about other companies' websites, which they say deserve deference.

26 <u>Id.</u> at 10-12.[2]

27 _____

28 [2] Plaintiffs also cite a third-party website's language about MSG
   and food labeling.  Opp'n at 22 n.11.  The Court declines to take
   judicial notice of this website, since it has not been referenced

11

**United States District Court**
For the Northern District of California

1    Section 321(m) defines "labeling" as "all labels and other

2  written, printed, or graphic matter (1) upon any article or any of

3  its containers or wrappers, or (2) accompanying such article."  The

4  issue here is whether statements made on the www.fritolay.com

5  website "accompany" the Named Products such that they can be

6  classified as "labeling" under the FDCA.

7    It is true that statements not actually printed on a label

8  itself can constitute "labeling" for FDCA purposes.  What matters

9  is whether the separate material serves the purpose of labeling,

10  which is to supplement or explain the product.  <u>Kordel v. United</u>

11  <u>States</u>, 335 U.S. 345, 349-350 (1950) ("One article or thing is

12  accompanied by another when it supplements or explains it . . . No

13  physical attachment one to the other is necessary.  It is the

14  textual relationship that is significant."); <u>Alberty Food Prods.</u>

15  <u>Co. v. United States</u>, 185 F.2d 321, 324-25 (9th Cir. 1950) (citing

16  <u>Kordel</u> for this proposition); <u>see also</u> <u>United States v. Harkonen</u>,

17  No. C 08-0164 MHP, 2009 WL 1578712, at *9 (N.D. Cal. June 4, 2009)

18  (stating that <u>Kordel</u> "remains the leading Supreme Court authority

19  on the scope of the labeling provision.").  In this matter,

20  Plaintiffs base their claims on the fact that some of the Named

21  Products include phrases like "Visit our website @ fritolay.com" in

22  tiny print at the bottom of their back labels.  From this

23  Plaintiffs claim that Defendant's marketing language on the

24  www.fritolay.com or www.lays.com websites constitutes mislabeling

25  under the FDCA.

26    The Court is not persuaded by Plaintiffs' argument that the

27

28  in any pleading and Plaintiffs do not explain why it should be
incorporated now.

**United States District Court**
For the Northern District of California

Court owes deference to two warning letters that the FDA sent to two other companies.  It is true that an agency's informal interpretation of its own ambiguous regulation is controlling unless "plainly erroneous or inconsistent with the regulation." Bassiri v. Xerox Corp., 463 F.3d 927, 930 (9th Cir. 2006) (quoting Auer v. Robbins, 519 U.S. 452, 461 (1997)).  However, no party in this case has contended that the FDA's regulations on labeling are ambiguous, and the Court does not find that they are.  Indeed, the FDA's regulation is very clear on this point, and when the FDA has directly referenced it, the agency's instruction mirrors the Supreme Court precedent discussed above:

> [I]f the label for a product contained a statement that referred the consumer to a specific website for additional information about a claim for the product, the website is likely to be 'labeling.'  The websites, in these cases, are considered written, printed, or graphic matter that supplements or explains the product and is designed for use in the distribution and sale of the product.

SAC Ex. 20 (FDA Letter, "Guidance for Industry and FDA: Dear Manufacturer Letter Regarding Food Labeling") at 3.

On this point, the Court declines to analogize to the situations the FDA considers in its warning letters.  Those letters do not address how the FDA regulations on labeling are to apply.  Instead they discuss specific websites that the FDA had independently concluded constituted labeling.  The FDA has made no such specific conclusions about Defendant's Products in this case, and the Court does not find that labels' references to Defendant's website constitute "labeling" for FDA regulatory purposes.  The website address appears below Defendant's physical address, not

**United States District Court**
For the Northern District of California

1  near the ingredients list or any nutritional facts.  Nowhere on any

2  Product's packaging does Defendant direct consumers to its website

3  for more facts about the labeled Product.  The Court therefore does

4  not find that Defendant's website constitutes "labeling" under the

5  FDCA.

6       "Labeling" as a regulatory matter aside, Plaintiffs also fail

7  to plead that they ever saw, read, or were even aware of any

8  website before this suit.  Plaintiffs admit this but claim it is

9  irrelevant because, according to them, there is no requirement that

10  a purchaser rely on a particular statement in order to bring a UCL

11  unlawfulness claim based on that statement.  Opp'n at 13.

12  According to Plaintiffs, misbranded food products are unlawful by

13  nature and therefore actionable.  Id.  Plaintiffs are wrong.

14  Holding for them on this point would be an affront to state and

15  federal standing rules.  Federal standing requires an injury, and

16  California law requires UCL plaintiffs to plead injury and reliance

17  -- a legislative decision based specifically on curtailing lawsuits

18  by plaintiffs who have had no contact with advertising, for

19  example.  Kwikset Corp. v. Super. Ct., 51 Cal. 4th 310, 326 (Cal.

20  2011) (affirming that UCL and FAL claims must be pled with injury

21  and reliance).  Ignoring these basic legal rules would invite

22  lawsuits by all manner of plaintiffs who could simply troll grocery

23  stores and the Internet looking for any food product that might

24  form the basis of a class-action lawsuit.  Surely that is not the

25  point of these consumer protection laws.

26       Since Plaintiffs have twice failed to indicate how Defendant's

27  website could form the basis of a good-faith UCL, FAL, or CLRA

28  cause of action, Plaintiffs' claims based on Defendant's website

United States District Court
For the Northern District of California

1  are DISMISSED WITH PREJUDICE.

2    **D.    Plaintiffs' Remaining Claims**

3    The CLRA, FAL, and UCL, which are the basis of Plaintiffs'

4  first through sixth causes of action, are California consumer

5  protection statutes. The UCL makes actionable any "unlawful, unfair

6  or fraudulent business act or practice."  Cal. Bus. & Prof. Code §

7  17200.  The FAL makes it unlawful to make or disseminate any

8  statement concerning property or services that is "untrue or

9  misleading."  Id. § 17500.  The CLRA also prohibits "unfair methods

10 of competition and unfair or deceptive acts or practices."  Cal.

11 Civ. Code § 1770.

12   Plaintiffs' case, broadly, has two parts: (1) the UCL

13 unlawfulness claims based on Plaintiffs' contention that

14 Defendant's products are misbranded as a matter of law and

15 therefore are predicates for a UCL unlawfulness violation, and (2)

16 the rest of Plaintiffs' tort claims, which are premised on

17 Plaintiffs' allegations that Defendant's labels are misleading,

18 unfair, and fraudulent.  See SAC ¶¶ 4, 8.

19    **i.    Plaintiffs' Misbranding Theory**

20   Plaintiffs' UCL "misbranding theory" -- as distinct from the

21 portion of their UCL claim based on Plaintiffs allegedly having

22 been misled or deceived by Defendant's labels -- is that

23 Defendant's labels are unlawfully misbranded under the FDCA and the

24 Sherman Law, and are therefore actionable under the UCL's

25 unlawfulness prong even absent allegations of reliance.  See Opp'n

26 at 13-14.  In other words, Plaintiffs' theory of liability for this

27 facet of their UCL claim is that Defendant's mere alleged violation

28 of the underlying regulations, without more, is enough to state a

1  claim for a UCL unlawfulness prong violation.

2      As a threshold issue, the parties dispute whether Rule 9(b)'s

3  particularity requirements govern Plaintiffs' UCL unlawfulness

4  claims.  The Court finds that it does at least as to Plaintiffs'

5  UCL unlawfulness claims based on the CLRA and FAL, because all of

6  those theories rely on allegations of a unified course of

7  fraudulent conduct -- i.e., the mislabeled Products.  Ness v. Ciba-

8  Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003); Kearns v.

9  Ford Motor Co., 567 F.3d 1120, 1127 (9th Cir. 2009) (holding that,

10  where "TAC allege[d] a unified fraudulent course of conduct,"

11  claims were "grounded in fraud" and the "entire complaint" had to

12  be pled "with particularity").  Plaintiffs contend that their

13  misbranding theory is not grounded in misrepresentation or

14  deception, but the Court finds otherwise.  It is clear from

15  Plaintiffs' SAC that the behavior that Plaintiffs allege violated

16  FDA regulations and the Sherman Law is misrepresentation or

17  deception, because Plaintiffs are asserting that Defendant used

18  deceptive labeling practices to hide the truth of the Products'

19  ingredients.  However, the Court finds that this dispute is a wash:

20  Plaintiffs are subject to Rule 9(b) pleading standards for their

21  unlawfulness claim, but they met it.  The only question is whether

22  they must also plead reliance for an unlawfulness claim, as they

23  must for UCL unfairness and fraud claims.

24      According to Plaintiffs, unlawful conduct is the only

25  necessary element for UCL unlawfulness liability, unlike the

26  fraudulent or unfairness prongs which require particularity as to

27  reliance and injury.  See id.  This is incorrect.  Plaintiffs'

28  "misbranding theory" is not divorced from its other UCL theories:

1  they are all connected, since, as noted above, Plaintiffs'
2  misbranding theory is essentially of a piece with their other
3  theories.

4          The California Supreme Court has interpreted the UCL as
5  requiring plaintiffs to have suffered economic injury "as a result
6  of" the unfair competition they allege.  <u>Kwikset</u>, 51 Cal. 4th at
7  326.  Otherwise plaintiffs who had no contact with the allegedly
8  unlawful activity would have standing to sue.  This would, as the
9  Court noted above and as the California Supreme Court stated in
10 <u>Kwikset</u>, be an invitation to shakedown suits.  <u>See</u> <u>Kwikset</u>, 51 Cal.
11 4th at 335 n.21 (stating that this rule exists to curb "shakedown
12 suits by parties who had never engaged in any transactions with
13 would-be defendants").  Other courts agree with this
14 interpretation, finding that in accordance with California law,
15 plaintiffs must show that they lost money or property because of
16 reliance on an allegedly unlawful practice, in order to establish
17 standing for UCL unlawfulness claims.  <u>See, e.g.</u>, <u>In re iPhone</u>
18 <u>Application Litig.</u>, 844 F. Supp. 2d 1040, 1071 (N.D. Cal. 2012); <u>In</u>
19 <u>re Actimmune Mktg. Litig.</u>, No. C 08-02376 MHP, 2010 WL 3463491, at
20 *8 (N.D. Cal. Sept. 1, 2010), <u>aff'd</u>, 464 F. App'x 651 (9th Cir.
21 2011) (alleging unlawfulness alone, without reliance, "only
22 accomplishes half of [the plaintiff's] burden in a UCL unlawful
23 prong action," since "as a result of" in the statutory language
24 places a burden of reliance on the plaintiff); <u>Durell v. Sharp</u>
25 <u>Healthcare</u>, 183 Cal. App. 4th 1350, 1363 (Cal. Ct. App. 2010).

26         "Reliance is proved by showing that the defendant's
27 misrepresentation or nondisclosure was 'an immediate cause' of the
28 plaintiff's injury-producing conduct."  <u>In re Tobacco II Cases</u>, 46

Cal. 4th 298, 326 (Cal. 2009) (citation and alteration omitted).
"A plaintiff may establish that the defendant's misrepresentation
is an immediate cause of the plaintiff's conduct by showing that in
its absence[,] the plaintiff in all reasonable probability would
not have engaged in the injury-producing conduct." Id. (citation
and quotation marks omitted).

The issue at this point is therefore whether Plaintiffs
establish, at the pleading stage, that Defendant's alleged
violation of labeling laws alone -- separate from any alleged fraud
or deception connected with Plaintiffs' reliance or injury --
supports a UCL unlawfulness claim.  On this point, the Court finds
for Defendant.  To the extent that Plaintiffs' first cause of
action for UCL unlawfulness relies solely on Defendant's alleged
violation of the Sherman Law or FDA regulations, that claim is
DISMISSED WITH PREJUDICE because Plaintiffs fail to allege reliance
under this theory.  Plaintiffs' argument that they were harmed
because the allegedly misbranded products were "legally worthless
and had no economic value," see Opp'n at 13, is insufficient to
save this claim.  Plaintiffs' SAC supports their allegations of
having been harmed by being deceived into buying Products whose
ingredients they specifically wanted to avoid, not that they were
harmed in some non-specific way by purchasing Products that they
later learned were "legally worthless."

Plaintiffs do, however, plausibly allege violations of the FAL
and CLRA, as the Court found in its April 1 Order.  Accordingly,
Plaintiffs' UCL unlawfulness claim survives to the extent that it
is predicated on violations of those laws.
///

**United States District Court**
For the Northern District of California

1    ii.    **"All Natural" and "0 Grams Trans Fat" Claims**

2         Defendant argues that Plaintiffs' claims based on Defendant's

3    "All Natural" and "0 Grams Trans Fat" statements should be

4    dismissed, because Plaintiffs have failed to allege injury,

5    deception, or reliance under Twombly and Rule 9(b).  Reply at 10.

6    Plaintiffs assert that this is an attempt to reargue the motion to

7    dismiss that the Court denied, see Opp'n at 15, 19, but Defendant

8    insists that it is raising new arguments as to the sufficiency of

9    Plaintiffs' pleadings, Reply at 10.

10        The Court agrees with Plaintiffs.  The Court has already found

11   Plaintiffs' pleadings on these points sufficient to survive a

12   motion to dismiss.  If it had not, it would have dismissed them

13   under Twombly and Rule 9(b) in its first Order.  The Court declines

14   to reconsider the matter.  Defendant's motion on this point is

15   DENIED.  Plaintiffs plead enough about having been misled or

16   deceived by these claims to survive a motion to dismiss.

17   iii.    **"No MSG" Claims**

18        In the April 1 Order, the Court found that Plaintiffs' claims

19   based on Defendant's "No MSG" labels were not preempted by federal

20   regulations.  Apr. 1 Order at 19-20.  The regulation in question

21   was actually the FDA's interpretation of its own rules about MSG,

22   made in a November 2012 announcement that the Court found warranted

23   deference.  Id.  However, the Court noted that while the FDA's

24   November 2012 regulatory statement was a binding interpretation of

25   the FDA's own rules, the parties had not explained how (if at all)

26   that interpretation could apply retroactively to Defendant's labels

27   as they appeared during the Class Period, prior to the November

28   2012 statement.  Id. at 21 n.4.  Now the parties dispute whether

19

United States District Court
For the Northern District of California

1 the FDA's binding interpretation applies retroactively, thereby
2 making Defendant's pre-November 2012 "No MSG" labels actionable.
3 Defendant contends that Plaintiffs' claims are preempted because
4 they would impose restrictions that did not exist before November
5 2012.

6     Plaintiffs claim that the November 2012 statement was just an
7 affirmation of an FDA policy that had been in place for decades: in
8 short, any ingredient that is a source of MSG as opposed to being
9 MSG itself (like torula yeast) will bar a food product from being
10 labeled "No MSG," even though that ingredient itself must be
11 labeled by its common name in the product's ingredient box.  See
12 Opp'n at 21-24.  So according to Plaintiffs, any Product labeled
13 "No MSG" prior to November 2012 would still be actionably
14 mislabeled if it contained an ingredient that was a source of MSG.
15 Id.  Plaintiffs point to several FDA warning letters, sent between
16 1990 and 1996, which all inform companies that their food products
17 were mislabeled because the products contained ingredients that
18 were sources of MSG.  See Opp'n at 22-23 (citing Opp'n Exs. 4-5).
19 Plaintiffs also cite an August 31, 1995 FDA Backgrounder that
20 states "the FDA considers foods whose labels say 'No MSG' or 'No
21 Added MSG' to be misleading if the food contains ingredients that
22 are sources of free glutamates, such as hydrolyzed protein."  Opp'n
23 Ex. 15 ("1995 Backgrounder").[3]

24     Defendant first argues that the Court had ruled that
25 Plaintiffs' claims could proceed as to claims based on purchases
26 made after November 19, 2012.  Reply at 13.  That is a misreading

27 _____

28 [3] The Court takes judicial notice of these documents under Federal
Rule of Evidence 201.

**United States District Court**
For the Northern District of California

1  of the April 1 Order: the Court expressly made no finding as to

2  retroactivity there.  <u>See</u> Apr. 1 Order at 19-21.  The more

3  important parts of Defendant's argument concern the significance of

4  the FDA's 1995 Backgrounder and the mid-1990s warning letters.

5  First, Defendant argues that the 1995 Backgrounder was only

6  evidence of an abandoned rule, not of FDA Policy.  Reply at 13.

7  Second, Defendant argues that the warning letters Plaintiffs cite

8  were sent during 1990 and 1996, when the FDA was considering the

9  rule -- discussed in the 1995 Backgrounder -- that it later

10  abandoned.  <u>Id.</u>  Finally, Defendant claims that in any event, FDA

11  policy until November 19, 2012 only required ingredients containing

12  MSG to be labeled separately from MSG, and nothing more.  <u>Id.</u>

13  Defendant's arguments are underpinned by the Court's conclusion

14  that the FDA's November 2012 statement clarified an ambiguous

15  regulation, and by the Ninth Circuit's holding that retroactive

16  application of such a regulatory clarification contravenes due

17  process.  <u>United States v. AMC Entm't, Inc.</u>, 549 F.3d 760, 770 (9th

18  Cir. 2008).

19       Defendant is correct.  Plaintiffs cite the 1996 proposed

20  rulemaking and several pre-1996 warning letters, but as the Court

21  stated in its April 1 Order, the FDA's regulations between then and

22  November 19, 2012 were ambiguous.  The November 2012 statement

23  resolved that ambiguity.  To insist that Defendant should have been

24  complying with a regulation that was not explicitly clarified until

25  November 19, 2012 would buck due process and Ninth Circuit

26  precedent.  The Court declines to do either.

27       Before the FDA's November 2012 clarification, the only

28  information about the FDA's MSG regulations that would have been

available to Defendant were warning letters based on specific
factual circumstances and a proposed rule that was abandoned.
Defendant was simply not on notice during the Class Period that its
labels did not comply with the FDA rule. <u>AMC Entm't</u>, 549 F.3d at
770.  These amount, as the Court found concerning pre-2012 FDA
regulations generally, to ambiguous statements about the
regulation.  <u>See</u> <u>FCC v. Fox Television Station, Inc.</u>, 132 S. Ct.
2307, 2319 (2012) (holding that an isolated, ambiguous agency
statement did not fulfill the fair notice requirement when the
government wanted to impose a large fine on a television network).
Plaintiffs' claims based on Defendant's "No MSG" labels predating
the November 19, 2012 clarification are DISMISSED WITH PREJUDICE.

### iv.    <u>Plaintiffs' Non-California Purchases</u>

Finally, Defendant states that Plaintiffs' SAC seeks to expand
their case to include a nationwide putative class of consumers.
MTD at 22.  Defendant argues that such claims must fail, because
Plaintiffs sue only based on violations of California law, and the
Supreme Court of California has clarified that state statutes like
the UCL, FAL, and CLRA presumptively do not apply to occurrences
outside California.  <u>Id.</u> (citing <u>Sullivan v. Oracle Corp.</u>, 51 Cal.
4th 1191, 1207 (Cal. 2011)).  Plaintiffs respond that Defendant's
argument is better suited for the class certification stage, not a
motion to dismiss.  Opp'n at 24-25.

Defendant is correct.  California law presumes that the
legislature did not intend a statute to be "operative, with respect
to occurrences outside the state, . . . unless such intention is
clearly expressed or reasonably to be inferred from the language of
the act or from its purpose, subject matter or history." <u>Sullivan</u>,

**United States District Court**
For the Northern District of California

1   51 Cal. 4th at 1207 (citations and quotations omitted).  With

2   regard to the UCL, FAL, and CLRA, non-California residents' claims

3   are not supported "where none of the alleged misconduct or injuries

4   occurred in California."  Churchill Village, LLC v. Gen. Elec. Co.,

5   169 F. Supp. 2d 1119, 1126 (citing Norwest Mortg. Inc. v. Super.

6   Ct., 72 Cal. App. 4th 214, 222 (Cal. Ct. App. 1999)); see also In

7   re Toyota Motor Corp., 785 F. Supp. 2d 883, 918 (C.D. Cal. 2011).

8   In determining whether California law should apply to a certain

9   claim, courts consider facts like where the defendant is located,

10  where the class members are located, and where decisions about the

11  behavior in question were made.  See In re Toyota, 785 F. Supp. 2d

12  at 917.  In this case, Plaintiffs are located in California,

13  Defendant is located in Texas, and Plaintiffs have not alleged any

14  activity within California except their own purchase of the

15  Purchased Products.

16      First, the Court is not persuaded by Plaintiffs' argument that

17  this issue should wait until the class certification stage.  Class

18  allegations typically are tested on a motion for class

19  certification, not at the pleading stage.  See Collins v. Gamestop

20  Corp., C10-1210-TEH, 2010 WL 3077671, at *2 (N.D. Cal. Aug. 6,

21  2010).  However, "[s]ometimes the issues are plain enough from the

22  pleadings to determine whether the interests of the absent parties

23  are fairly encompassed within the named plaintiff's claim." Gen.

24  Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982).  Thus, some

25  courts have struck class allegations where it is clear from the

26  pleadings that class claims cannot be maintained.  E.g., Sanders v.

27  Apple Inc., 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009).

28  ///

**United States District Court**
For the Northern District of California

1    Second, at this point, those claims fail as a matter of law

2  because nothing in Plaintiffs' complaint alleges that any of the

3  out-of-state purchases were directed from California or had

4  anything to do with California.  Plaintiffs' allegations on these

5  points amount to nothing more than conclusions of law without any

6  supporting facts.  Non-California citizens who made purchases in

7  California could assert the same California causes of action that

8  Plaintiffs do, but there is no plausible way for a non-California

9  citizen who purchased Defendant's Products outside California to

10  bring these claims.

11    Plaintiffs' California law claims based on activity occurring

12  in other states are all DISMISSED WITH PREJUDICE.  In two amended

13  complaints, Plaintiffs have failed to give a plausible account of

14  how or why a non-California plaintiff could sue under California

15  tort law for purchases made outside the state from a Texan company

16  that, at most, advertises and sells its products in California.

17

18  **V.    CONCLUSION**

19    For the reasons explained above, Defendant Frito-Lay North

20  America, Inc.'s motion to dismiss Plaintiffs Markus Wilson and Doug

21  Campen's second amended complaint is GRANTED in part and DENIED in

22  part.  The Court orders as follows:

23

24    • Plaintiffs' claims based on the Non-Purchased Products

25      are DISMISSED WITH PREJUDICE.

26    • Plaintiffs' claims based on the "All Natural" and "0

27      Grams Trans Fat" statements are undisturbed.  Defendant's

28      motion is DENIED as to those claims.

United States District Court
For the Northern District of California

1       • Plaintiffs' UCL unlawfulness claim is DISMISSED WITH

2         PREJUDICE to the extent that it is based on misbranding

3         laws.

4       • Plaintiffs' "No MSG" claims are DISMISSED WITH PREJUDICE

5         to the extent that those claims are predicated on

6         activity predating the FDA's November 19, 2012 guidance.

7       • Plaintiffs' claims based on purchases that occurred

8         outside California are DISMISSED WITH PREJUDICE.

9

10      IT IS SO ORDERED.

11

12      Dated: October 24, 2013            

13                                      UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28