UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARKUS WILSON, ET AL.,<br><br>    Plaintiffs,<br><br>v.<br><br>FRITO-LAY NORTH AMERICA, INC.,<br><br>    Defendant. | Case No.12-cv-01586-JST<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>FILED UNDER SEAL[1]<br><br>Re: ECF No. 163 |

In this putative class action about potato chips,[2] named plaintiffs Markus Wilson and Doug Campen allege that Defendant Frito-Lay placed misleading labels on its potato chip products in violation of California consumer protection statutes. Second Amended Complaint ("SAC"), ECF No. 47.

Defendant Frito-Lay North America, Inc. ("Frito-Lay") has filed a motion for summary judgment. Because the evidence demonstrates that neither Wilson nor Campen relied on Frito-Lay's allegedly objectionable packaging, the Court will grant the motion.

## I. BACKGROUND

Mr. Wilson and Mr. Campen are California residents who purchased Lay's potato chip products between March 29, 2008 to the present. Id. ¶¶ 1-2, 26-27. Although Plaintiffs initially

---

[1] This order is filed under seal provisionally because it refers to sealed material submitted by the parties in connection with the motion. The Court will unseal the order unless one of the parties files a request that the order remain sealed. Any such request must be filed by June 2, 2017 and must demonstrate compelling reasons for the sealing of the order. E.g., Ctr. for Auto Safety v. Chrysler Grp., LLC, 809 F.3d 1092, 1102 (9th Cir.).

[2] Plaintiffs previously filed a motion for class certification, but that motion continues to be stayed pending the Ninth Circuit's decision in Jones v. Conagra Foods, Inc., No. 14-16327 (9th Cir. filed July 14, 2014). See ECF No. 119 (granting stay); ECF No. 159 (partially lifting stay and reinstating motion for summary judgment).

challenged various statements appearing on several Frito-Lay products, the only remaining claims before the Court are: (1) Mr. Wilson's challenge to the "0g Trans Fat" label on Lay's Classic Potato Chips; and (2) Mr. Campen's challenge to both the "0g Trans Fat" label and the "Made with All Natural Ingredients" label on the following products: Lay's Classic Potato Chips, Lay's Honey Barbecue Potato Chips, Lay's Kettle Cooked Mesquite BBQ Potato Chips, Cheetos Puffs, and Frito's Original Corn Chips.[3] See ECF No. 46; ECF No. 73; SAC, ECF No. 47 ¶¶ 2, 5.

In their Second Amended Complaint, Plaintiffs allege that the "0g Trans Fat" label is misleading because the challenged products contained more than 13 grams of fat, and therefore Food and Drug Administration ("FDA") regulations required a disclosure statement referring consumers to the back panel for information regarding total fat content. SAC, ECF No. 47 ¶¶ 88-94. Plaintiffs further allege that, because of this unlawful "0g Trans Fat" label, "Plaintiffs were misled into the erroneous belief that the product only made positive contributions to their diet and did not contain one or more nutrients like total fat at levels in the food that may increase the risk of disease or health related condition." Id. ¶ 103. Mr. Campen also alleges that the "Made with All Natural Ingredients" label is misleading because the challenged products contain artificial and synthetic ingredients, such as yeast extract, caramel color, citric acid, maltodextrin, and chemical preservatives. Id. ¶¶ 45-53, 55-57.

Frito-Lay removed both the "0g Trans Fat" and "Made with All Natural Ingredients" labels from its products in 2012. ECF No. 167 at 7.

Based on these alleged misrepresentations, Plaintiffs assert claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, and the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*. Id. ¶¶ 189-245. The Court[4] dismissed all other claims when ruling on multiple motions to dismiss. See ECF No. 46; ECF No. 73. Plaintiffs seek class certification; damages, restitution or disgorgement to Plaintiffs and the class; and

---

[3] Plaintiffs' opposition clarifies that "Plaintiffs are not challenging a 'Natural' claim on Cheetos Puffs or any Frito's corn chip. Plaintiffs are, however, challenging Frito Lay's use of '0g Trans Fat' on those products." ECF No. 167 at 11, n. 5.
[4] This case was reassigned from Judge Conti to the undersigned on November 3, 2015.

2

1  injunctive relief. Id. at 58-59.

Discovery has been closed since February 2015, and Frito-Lay now moves for summary judgment in its favor as to all of Plaintiffs' claims. ECF No. 117; ECF No. 163.

## II. REQUESTS FOR JUDICIAL NOTICE

Federal Rule of Evidence 201(b) authorizes courts to take judicial notice of facts that are "not subject to reasonable dispute" and that are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b); United States v. Ritchie, 342 F.3d 903, 907-09 (9th Cir. 2013). Public records and information on government agency websites are properly subject to judicial notice. See Paralyzed Veterans of Am. v. McPherson, No. C064670SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008); Eidson v. Medtronic, Inc., 981 F. Supp. 2d 868, 878–79 (N.D. Cal. 2013). Courts may also take judicial notice of "court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 749, n. 6 (9th Cir. 2006) (citing Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998)).

Frito-Lay requests that the Court take judicial notice of letters sent between the Center for Science in the Public Interest and the FDA in 2006 (Exhibits A and B), copies of FDA food labeling guidance (Exhibits C, E, H, and I), copies of warning letters sent from the FDA to other companies (Exhibits D and F), and an *amicus curiae* brief filed by Congressman Henry Waxman and former FDA Commissioner David Kessler in California Restaurant Ass'n v. San Francisco, Case No. 08-cv-03247, ECF No. 25-1 (N.D. Cal.). ECF No. 165.

Plaintiffs similarly request that the Court take judicial notice of several FDA warning letters issued to other companies during the relevant time period (Exhibits 14-15, 18, 19-27). ECF No. 169.

The Court grants both requests for judicial notice in their entirety. Courts routinely take judicial notice of similar FDA guidance documents, many of which also appear on the FDA's public website. See, e.g., Gustavson v. Wrigley Sales Co., 961 F. Supp. 2d 1100, 1126, n. 1 (N.D. Cal. 2013) (taking judicial notice of an FDA guidance document about food labeling, an FDA response letter, and an amicus brief). Moreover, the amicus brief is judicially noticeable because

3

it is a court filing from another judicial proceeding. Reyn's, 442 F.3d at 749, n. 6.

Plaintiffs only object to Frito-Lay's request with respect to Exhibit A, on the ground that it is a letter from a public interest group to the FDA, and not the other way around. ECF No. 169. However, the letter from the Center for Science in the Public Interest to the FDA precipitated the FDA's response letter in Exhibit B, and thus provides context for Exhibit B. Moreover, Exhibit A is produced for the purpose of showing that Frito-Lay did not have fair notice of the FDA's requirements during the relevant time period. Therefore, the Court takes judicial notice of Exhibit A to "indicate what was in the public realm at the time, not whether the contents of [the letter] were in fact true." Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010) (internal quotation marks omitted).

## III. SUMMARY JUDGMENT

### A. Legal Standard

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" citing to depositions, documents, affidavits, or other materials. Fed. R. Civ. P. 56(c)(1)(A). A party also may show that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). An issue is "genuine" only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). A fact is "material" if the fact may affect the outcome of the case. Id. at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).

Where the party moving for summary judgment would bear the burden of proof at trial, that party bears the initial burden of producing evidence that would entitle it to a directed verdict if uncontroverted at trial. See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000). Where the party moving for summary judgment would not bear the burden of

4

proof at trial, that party bears the initial burden of either producing evidence that negates an essential element of the non-moving party's claim, or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. If the moving party satisfies its initial burden of production, then the non-moving party must produce admissible evidence to show that a genuine issue of material fact exists. See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir. 2000). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment. Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). Indeed, it is not the duty of the district court to "to scour the record in search of a genuine issue of triable fact." Id. "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." Summers v. Teichert & Son, Inc., 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotation marks omitted). If the non-moving party fails to make this showing, the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**B. Applicable Law**

To prevail on their causes of action under the UCL, FAL, and the CLRA, Plaintiffs must demonstrate that they actually relied on the challenged misrepresentations and suffered economic injury as a result of that reliance. See In re iPhone Application Litig., 6 F. Supp. 3d 1004, 1012–14 (N.D. Cal. 2013) (explaining these elements under the UCL and CLRA); Morgan v. AT & T Wireless Servs., Inc., 177 Cal. App. 4th 1235, 1259 (2009) (explaining these elements under the FAL). To do so, they "must show that the misrepresentation was an immediate cause of the injury-producing conduct." In re Tobacco II Cases, 46 Cal. 4th 298, 326 (2009). "A plaintiff may establish that the defendant's misrepresentation is an immediate cause of the plaintiff's conduct by showing that in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." Id. (internal quotation marks omitted). While a plaintiff is not required to show that the challenged misrepresentation was "the sole or even the predominant or decisive factor influencing his conduct," the misrepresentation must have "played a substantial

5

part . . . in influencing his decision." Id. at 326-27 (internal quotation marks omitted).

"Moreover, a presumption, or at least an inference, of reliance arises wherever there is a showing that a misrepresentation was material"– i.e., "if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question. " Id. at 327 (internal quotation marks omitted). In turn, "materiality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." Id. (internal quotation marks omitted).

### C. Summary Judgment as to Mr. Wilson

Frito-Lay moves for summary judgment on Mr. Wilson's claims on the following grounds: (1) Mr. Wilson did not rely on the "0g Trans Fat" statement in purchasing Lay's Classic Potato Chips; (2) Mr. Wilson provided no factual support for his theory of deception; (3) Mr. Wilson cannot show any entitlement to monetary relief; and (4) Mr. Wilson cannot show any entitlement to injunctive relief. ECF No. 163 at 22-27.

The Court agrees that Mr. Wilson cannot meet his burden of showing that he relied on the "0 grams trans fat" label when purchasing Lay's Classic potato chips, and therefore grants summary judgment to Frito-Lay as to Mr. Wilson's claims on that ground.

The California Supreme Court has explained that the purpose of Proposition 64, which amended the UCL standing requirements, was to discourage "[f]rivolous unfair competition lawsuits," including those in which attorneys "'[f]ile lawsuits where no client has been injured in fact,'[f]ile lawsuits for clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant . . ." Tobacco II, 46 Cal. 4th at 316-17 (emphasis added) (quoting Prop. 64, § 1) ("[T]he intent of California voters in enacting Proposition 64 was to limit such abuses by prohibiting private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact.") (internal quotation marks and emphasis omitted).

In light of this goal, courts have concluded that "requiring nothing more than a token purchase would undermine Proposition 64's reform purposes" in cases where "would-be litigants

at the direction of attorneys deliberately seek out statutory violations." Cattie v. Wal-Mart Stores, Inc., 504 F. Supp. 2d 939, 946-49 (S.D. Cal. 2007) (dismissing plaintiff's claims under the UCL and FAL because she purchased just one set of bed sheets eleven days before filing the lawsuit). The Cattie court explained the problem as follows: "An attorney who became aware of false advertising but who had no client who was harmed by it could easily 'create' a client with standing to sue by directing a willing party who was not deceived by the advertising to make a purchase." Id. Allowing a plaintiff to proceed in such a situation would effectively "omit[] a 'reliance' requirement [and] blunt Proposition 64's intended reforms." Id.

Mr. Wilson's deposition testimony establishes that the challenged Frito-Lay label statements played no part at all in his purchases of Frito-Lay's products. Despite purchasing Lay's Classic potato chips five or six times a year since he was a teenager, Mr. Wilson admitted at his deposition that he "didn't notice" any label statements on Lay's Classic Potato Chips between 2000-2010. Wilson Depo., ECF No. 164-7 at 47:5-12, 48:23-24, 54:25-55:19, 56:3-12. He further testified that he purchased Lay's potato chips for other reasons – namely, because "[t]hey tasted good," he liked the Lay's brand, he liked the "[s]unny, happy" packaging, and "they go good with onion dip . . . or dilly dip." Id. at 47:17-48:3, 48:14-48:18. When asked whether he remembered if the chips had any label statements between 2010 and 2012, Mr. Wilson responded, "I think that's when I bought my chips that had a label statement that said '0 grams trans fat' on the front." Id. at 54:25-55:19, 56:3-12. He further testified, "I do recall that the one that I bought did say '0 grams trans fat.'" Id. But he affirmed that "until that purchase, [he] can't remember what the label statements were or whether there were any label statements on the Lay's Classic products [he] purchased." Id. Mr. Wilson also confirmed that "the only time [he] recall[s] there being a '0 grams trans fat' statement was the last time [he] purchased." Id. at 56:23-57:1. Mr. Wilson's deposition testimony further suggests that the last purchase for which he remembers seeing the "0 grams trans fat" label was a token purchase that he made at the instruction of one of his attorneys, Sparky Lovelace.[5] Specifically, Mr. Wilson testified that he became involved in this

---

[5] In the deposition transcripts in the case, the parties and counsel uniformly refer to Dewitt Marshall Lovelace, Sr., one of Plaintiff's attorneys of record, by his nickname.

7

case after his friend and coworker introduced him to Mr. Lovelace. Id. at 7, 21:4-23. Mr. Wilson spoke with Mr. Lovelace about an "opportunity" related to food labeling, and Mr. Wilson later called Mr. Lovelace to learn more about the case and to get involved. Id. at 23:11-23, 24:13-20, 25:4-22, 26:20-28:1. Later in his deposition, Mr. Wilson testified that, before he filed his complaint, Mr. Lovelace told him to make a purchase and to keep the packaging and his receipt. Id. at 17, 60:18-61:11. Mr. Wilson further testified that he purchased a package of Lay's Classic potato chips after he spoke with Mr. Lovelace over the telephone and knew the basis of the legal claims in the case. Id. at 24, 87:7-22. In sum, Mr. Wilson's deposition testimony shows that he only saw the "0 grams trans fat" label once, on a single package of Lay's Classic potato chips, which he purchased at the instruction of a lawyer for purposes of this lawsuit.

Mr. Wilson attempts to create a triable factual issue by pointing to deposition testimony elicited on re-direct. ECF No. 167 at 16. Specifically, Mr. Wilson points to the following testimony:

> BY MR. GORE:
> . . .
> Q. Did you go out and make a one-time purchase of Lay's Classic Potato Chips on the instruction of your attorney, Sparky Lovelace, for the purpose of filing this lawsuit?
> A. No.
> MR. MELTZER: Objection to form and also calls for privileged testimony, potentially.
> Q. Go ahead.
> A. No, sir.
> Q. You had, in fact, purchased Lay's Classic Potato Chips with the 0 grams trans fat label on a number of occasions before you ever discussed the package with your attorney, Sparky Lovelace; correct?
> MR. MELTZER: Objection to form.
> THE WITNESS: That's correct. And I believe we went over that with him as well. Yes, that is absolutely correct.

Wilson Depo., ECF No. 164-7 at 32, 119:8-120:1. Mr. Gore's questions to his own client were improper leading questions of a non-hostile witness, and the Court therefore properly excludes the answers from its consideration of this motion. Fed. R. Evid. 611(c); Bixby v. KBR, Inc., No. 3:09-CV-632-PK, 2012 WL 4754942, at *4 (D. Or. Oct. 4, 2012) (holding that deposition

testimony was properly "excluded from evidence at trial under Rule 611(c) on the grounds that the testimony was elicited by means of improper leading questions); 2 Lane Goldstein, Trial Technique § 11:39 (3d ed. 2016) (leading questions "include those that suggest to the witness the examiner's version of the proper answer").

In sum, Mr. Wilson's deposition testimony establishes that he did not notice any label statements on Frito-Lay's chips between 2000-2010, and he therefore cannot establish that he relied on the allegedly misleading "0 grams trans fat" label during this time. See Wilson v. Frito-Lay N. Am., Inc., 961 F. Supp. 2d 1134, 1143–44 (N.D. Cal. 2013) (dismissing website labeling claims because "Plaintiffs [] fail to plead that they ever saw, read, or were even aware of any website before this suit," and therefore they could not establish reliance for purposes of their UCL, FAL, or CLRA claims). And although Mr. Wilson testified that he recalled a label statement on his last purchase, which occurred sometime between 2010-2012, the undisputed evidence suggests that this token purchase was made at the direction of his attorney, and therefore he cannot establish reliance as to this single purchase either. Cattie v. Wal-Mart Stores, Inc., 504 F. Supp. 2d at 946-49.

The Court therefore grants summary judgment to Frito-Lay on Mr. Wilson's claims.

**D. Summary Judgment as to Mr. Campen**

Frito-Lay moves for summary judgment on Mr. Campen's claims on the following grounds: (1) Mr. Campen abandoned his "0 grams Trans Fat" claims; (2) Mr. Campen did not rely on the natural label; (3) Mr. Campen is not entitled to monetary relief; (4) Mr. Campen is not entitled to injunctive relief; and (5) Mr. Campen cannot show that reasonable consumers are likely to be deceived by the challenged statements. ECF No. 163.

### 1. "0 grams Trans Fat" Claims

Frito Lay moves for summary judgment on Mr. Campen's claims challenging the "0 grams Trans Fat" statement on the ground that his deposition testimony abandons those claims or otherwise establishes that he cannot satisfy his burden with respect to the reliance and injury elements for those claims. ECF No. 163 at 14-16. The Court agrees and accordingly grants Frito-Lay's motion for summary judgment on those claims.

Mr. Campen abandoned his challenge to the "0 grams Trans Fat" statement, thus narrowing his claims in this lawsuit to those challenging the "all natural" label. Mr. Campen gave the following responses at his deposition:

> Q. What products are you challenging in this case?
> A. Products—the label that says "all natural."
> Q. And are there any other label statements that you are challenging in this case?
> A. No.

Campen Depo., ECF No. 164-6 at 16, 56:9-15. Courts have narrowed a plaintiff's claims in similar circumstances. See, e.g., Alcala v. Monsanto Co., No. C-08-04828 PJH (DMR), 2014 WL 1266204, at *1, n. 2 (N.D. Cal. Mar. 24, 2014) (finding that plaintiff "narrowed his claims in this lawsuit to respiratory problems only" where the plaintiff "unequivocally confirmed" at his deposition that "the only medical condition he claims to have resulted from his exposure to the Roundup products is respiratory problems," despite allegations in his complaint regarding several additional medical problems and plaintiff's subsequent attempt "to keep the door open" to other medical symptoms).

Mr. Campen responds that he identified "0 grams Trans Fat" as a challenged label statement in his responses to Frito-Lay's first set of interrogatories. See ECF No. 167-8 at 5. Mr. Campen also submitted a declaration after his deposition in which he states that he has not abandoned his challenge to the "0 grams trans fat" label. ECF No. 167-2 ¶ 2.

The interrogatory responses are not admissible. Mr. Campen did not sign or verify these interrogatory responses when they were served on Frito-Lay in April 2014. See Rule 33(b). And "all responses to interrogatories and requests for admission must be verified – that is, bear plaintiff's signature attesting under penalty of perjury that his responses are true and correct – in order to be an admissible form at summary judgment or trial." Blevins v. Marin, No. 11-CV-03475-KJN P, 2013 WL 5718869, at *1 (E.D. Cal. Oct. 11, 2013). Although Mr. Campen later corrected this incomplete disclosure, he did not do so until almost three years later, even though Rule 26(e) requires a party who has responded to an interrogatory to "supplement or correct its disclosure or response . . . *in a timely manner* if the party learns that in some material respect the disclosure or response is incomplete or incorrect." ECF No. 167-8 at 14; Fed. R. Civ. P 26(e)(1)

10

(emphasis added). His failure to correct his incomplete interrogatory responses in a timely manner means that Mr. Campen "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Plaintiff fails to show that either of those exceptions apply here. See Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106–07 (9th Cir. 2001) ("[T]he burden is on the party facing sanctions to prove harmlessness."). Therefore, the interrogatory responses are inadmissible.

Moreover, even if the interrogatory responses were admissible, neither those responses nor the declaration are sufficient to revive Mr. Campen's "0 grams Trans Fat" claims or otherwise create a genuine issue of material fact. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) (noting that a contrary rule would "'greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact'") (quoting Foster v. Arcata Associates, 772 F.2d 1453, 1462 (9th Cir. 1985), cert. denied, 475 U.S. 1048 (1986)). Other courts have applied the same rule to interrogatory responses that "contradict sworn deposition testimony from the party that responded to the interrogatories." Triad Capital Mgmt., LLC v. Private Equity Capital Corp., No. 07-C-3641, 2010 WL 3023409, at *1 (N.D. Ill. July 29, 2010) (citing LaFary v. Rogers Group, Inc., 591 F.3d 903, 908 (7th Cir. 2010)). Mr. Campen's post-deposition declaration does not assert "newly-remembered facts, or new facts, accompanied by a reasonable explanation." Yeager v. Bowlin, 693 F.3d 1076, 1081 (9th Cir. 2012). To the contrary, it flatly contradicts both his sworn testimony under oath and his prior interrogatory responses and provides no explanation whatsoever for the contradiction. See id. As a result, the Court disregards both the declaration and the interrogatory responses pursuant to the sham affidavit rule.

Again, even if the Court considered those documents, Frito-Lay would still be entitled to summary judgment on Campen's "0 grams Trans Fat" claims, because there is no evidence that Mr. Campen actually relied on any "0 grams Trans Fat" label in making a purchasing decision.

The In re iPhone Application Litigation decision is instructive. In that case, which was

11

"founded on the premise that Apple's misrepresentations caused Plaintiffs substantial harm," the court described plaintiffs' burden on a UCL or CLRA claim at the summary judgment stage as follows: "Plaintiffs must be able to provide *some* evidence that they saw one or more of Apple's alleged misrepresentations, that they actually relied on those misrepresentations, and that they were harmed thereby." 6 F. Supp. 3d 1004, 1027 (N.D. Cal. 2013) (emphasis in original). The plaintiffs in that case similarly filed "flawed" declarations which contradicted their prior deposition testimony. Id. at 1019. And, although the declarations "allude[d] to a vague 'understanding' regarding Apple's privacy policies," the court concluded that this was "not enough" to survive summary judgment. Id. Rather, the court explained, "Plaintiffs must point to specific facts indicating that Plaintiffs actually saw the misrepresentations about which they complain, and that those misrepresentations were substantial factor[s] in Plaintiffs' decisions to purchase their iPhones." Id. at 1020 (internal quotation marks omitted) (brackets in original). Because "the record [was] simply devoid of any other evidence indicating actual reliance," the court granted defendant's motion for summary judgment. Id. at 1026.

Here, Mr. Campen's declaration and interrogatory response similarly fail to provide any specific facts indicating that he relied on the "0 grams Trans Fat" label. His post-deposition declaration simply states that he is "challenging the 'All Natural' and '0 grams trans fat' labels" and that he has not "waived, abandoned or dismissed either of these claims." ECF No. 167-2 ¶ 2. And his interrogatory responses just include the conclusory statement that "Plaintiff was misled by the statement and reasonably relied on it," which is insufficient to create a genuine dispute of material fact. ECF No. 167-8 at 5-6. Neither of these statements provide specific facts to indicate that the "0 grams Trans Fat" label was a substantial factor in Campen's decision to purchase Frito-Lay's products.

Outside of the declaration and interrogatory responses, which are inadmissible and/or flawed as outlined above, Mr. Campen points to no evidence in the record to show that he in any way relied on, or was injured by, the "0 grams Trans Fat" statement on Frito-Lay's packaging. See ECF No. 167 at 10-11. Because Mr. Campen would bear the burden of proving these elements at trial, the Court grants Frito-Lay's motion for summary judgment as to Campen's "0

12

grams Trans Fat" claims.[6]

### 2. Natural Label Claims

Frito-Lay also moves for summary judgment on Mr. Campen's claims challenging the "Made with All Natural Ingredients" label on the ground that Mr. Campen cannot prove that he relied on that statement when buying Lay's Honey Barbecue and Kettle Cooked Mesquite BBQ potato chips. ECF No. 163 at 16-19. Because the undisputed evidence shows that Mr. Campen did not rely on the "all natural" label, the Court will grant Frito-Lay's motion for summary judgment as to these claims.

Frito-Lay points to several statements throughout Mr. Campen's testimony that strongly suggest that the "all natural" statement was not a substantial factor in his decision to purchase the products. Id. at 17. For example, when asked "Why have you purchased the Lay's Honey Barbecue?" Mr. Campen responded, "Because they taste good." Campen Depo., ECF No. 164-6 at 18, 64:14-16. Similarly, when asked "what do you like about the Kettle Honey Barbecued flavor or chip?" Mr Campen responded, "I like the barbecue flavor. It's – you know, they are good." Id. at 63:10-13. When defense counsel proceeded to ask Mr. Campen whether there are "other things [he] like[s] about the product," he simply responded, "Well, they taste good." Id. at 63:14-16. Later in his deposition, when asked again why he purchased the Lay's Kettle Cooked Mesquite Barbecue chips, Mr. Campen responded, "Because I thought they would taste good as a snack." Id. at 23-24, 85:22-86:3. Frito-Lay also points to Mr. Campen's testimony that he had purchased the Kettle Honey Barbecue and Lay's Honey Barbecue chips since the 1990s, even though the chips did not have "all natural" labels on them during that time. Id. at 24, 86:4-9, 86:21-87:2. When confronted with his prior testimony that he "bought them when they had their natural labels on and [he] bought them when they didn't have their natural labels on," Mr. Campen affirmed that it was "fair to say that the natural label isn't the reason that [he] bought them." Id., 87:17-22. Mr. Campen also affirmed "that things like taste and that it was a good snack were the

---

[6] Neither Mr. Wilson nor Mr. Campen's "0 grams Trans Fat" claims survive summary judgment due to evidentiary deficiencies. As a result, the Court does not need to address Frito-Lay's additional argument that those claims fail as a matter of law.

13

reasons [he] purchased them." Id., 87:23-25. In sum, Mr. Campen testified repeatedly that he did not purchase the products because of the "all natural" label, but rather because of their taste.

In response, Mr. Campen argues that Frito-Lay mischaracterizes his testimony. ECF No. 167 at 11-12. Specifically, he argues that his "testimony was that he did not read and rely on *the natural statement between 2008 and 2010 because it was not on Frito-Lay's products during that time period.*" Id. (emphasis in original). Although one portion of Mr. Campen's testimony was temporally limited in this way, the rest of Mr. Campen's testimony—and all of his testimony as outlined above – was not similarly limited to the 2008-2010 time frame. Therefore, Mr. Campen's mischaracterization argument fails.

Next, Mr. Campen points to the following deposition testimony on re-direct in an attempt to create a triable issue of fact as to whether he relied on the "all natural" label:

> Q. Mr. Campen, on all the Frito-Lay products that you purchased, was the natural label a substantial factor in your purchase decision?
> A. When I saw that on the chip or on the packaging, once I saw that, I thought those would be healthier than another chip without it.

Campen Depo., ECF No. 164-6 at 24, 88:5-10.

Frito-Lay responds that "Mr. Campen's statement about what he thought the labels *meant* – that they were 'healthier' in comparison to other products – is not a statement about reliance." ECF No. 163 at 18 (emphasis in original). Frito-Lay further argues that this statement does not "negate his repeated and unequivocal statements that he did not *rely* on the 'natural' label statement to make a purchase decision." Id. (emphasis in original).

The Court agrees with Frito-Lay. Just because Mr. Campen testified that he thought the "all natural" label meant that the chips were "healthier" than other chips, it does not follow that Mr. Campen relied on the "Made with All Natural Ingredients" label when purchasing the chips. In Major v. Ocean Spray Cranberries, Inc., the plaintiff testified at her deposition that she did not purchase defendant's product because of the allegedly misleading labels. No. 5:12-cv-03067-EJD, 2015 WL 859491 at *3 (N.D. Cal. Feb. 26, 2015) ("[W]hen asked whether [plaintiff] purchased Defendant's 100% Juice product because she thought it was a reduced calorie product, she

14

answered 'no.'"). She argued that her claim nonetheless survived summary judgment "because she thought Defendant's product was 'better' or 'healthier.'" Id. at *4. The court rejected this argument as "unpersuasive" because plaintiff "ha[d] not identified any statements on Defendant's label that proclaim[ed] its products as 'better' or 'healthier'" and "she ha[d] not presented any evidence which shows that Defendant's 100% juice labels make any comparative claim regarding the 'health' or 'healthiness' of the product." Id. In fact, the court noted, this argument was an "attempt[] to change the theory disclosed in [plaintiff's] Amended Complaint," which alleged that the "no sugar added" label misled plaintiff into believing that the product was low-calorie, not generally "healthier". Id. at *3-4. The court reasoned that, "in order for Plaintiff to prevail on her theory of mislabeling . . . Plaintiff must have relied on the 'No Sugar Added' message, not to mean some general level of healthiness, but to mean that the 100% Juice products were low-calorie or low in calories." Id. at *4. Because plaintiff' "admitted that calorie content was not a motivating factor for her purchase" at her deposition, the court granted defendant's motion for summary judgment. See id.[7]

Like the plaintiff in Major, Mr. Campen testified at his deposition that he did not rely on the "all natural" label when making his purchasing decision. Campen Depo., ECF No. 164-6 at 24, 87:17-25 (affirming that it was "fair to say that the natural label isn't the reason that [he] bought them" and "that things like taste and that it was a good snack were the reasons [he] purchased them"). And, like the plaintiff in Major, Mr. Campen attempts to rely on his deposition testimony that he thought the chips were "healthier" to survive summary judgment. However, this is not the theory of deception that Mr. Campen pleaded in the operative complaint. See SAC, ECF No. 47 ¶ 46, 55-57 (alleging that the "all natural" label misled him into thinking that the products were "'made with all natural ingredients' or 'all natural'" when, in fact, they contained ingredients that were artificial or synthetic). The relevant question is whether Mr. Campen relied on the "all natural" label, "not to mean some general level of healthiness," but rather to mean that the

---

[7] The Ninth Circuit recently affirmed the district court's summary judgment order without reaching the question of reliance. Major v. Ocean Spray Cranberries, Inc., No. 15-15880, 2017 WL 1857291, at *1 (9th Cir. May 8, 2017)

products were made with all natural ingredients. Major, 2015 WL 859491 at *4. Therefore, Mr. Campen's testimony in this regard is not sufficient to survive summary judgment.

The Court grants Frito-Lay's motion for summary judgment as to Mr. Campen's claims challenging Frito-Lay's "all natural" label.

## CONCLUSION

For the reasons outlined above, the Court grants Frito-Lay's motion for summary judgment as to all of Plaintiffs' claims challenging Frito-Lay's "0 grams Trans Fat" and "all natural" labels.[8] Defendant is ordered to file a proposed judgment within 14 days.

IT IS SO ORDERED.

Dated: May 26, 2017

_____
JON S. TIGAR
United States District Judge

---

[8] In light of its conclusions regarding Plaintiffs' lack of reliance, the Court does not address Frito-Lay's remaining arguments.